Farimah Brown, City Attorney, SBN 201227
Lynne S. Bourgault, Deputy City Attorney, SBN 180416
BERKELEY CITY ATTORNEY'S OFFICE
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone: (510) 981-6998
Facsimile: (510) 981-6960
Email: LBourgault@cityofberkeley.info

Attorneys for Defendant CITY OF BERKELEY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIARA ROBLES,<br><br>    Plaintiff,<br><br>v.<br><br>IN THE NAME OF HUMANITY, WE REFUSE TO ACCEPT A FASCIST AMERICA (a.k.a. ANTIFA), CITY OF BERKELEY, ET AL.,<br><br>    Defendants. | No. 3:17-cv-04864 MEJ<br><br>**NOTICE OF MOTION AND MOTION TO REVOKE PRO HAD VICE ADMISSION OF LARRY KLAYMAN; MEMORANDUM OF POITNS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: November 2, 2017<br>Time: 10:00 a.m.<br>Crtrm: B, 15th Floor |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HERBY GIVEN THAT on November 2, 2017, at 10:00 a.m., in the courtroom of the Honorable Maria Elena James, located in the United States Courthouse for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA, Defendant City of Berkeley will and hereby does move the Court to revoke the *pro hac vice* admission of Plaintiff's counsel, Larry Klayman.

This Motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Lynne Bourgault in Support of Motion to Revoke *Pro Hac Vice* Admission of Larry Klayman; the pleadings and papers filed in this action; and such further argument and matters as may be offered at the hearing on this Motion.

Dated: September 20, 2017    Lynne Bourgault, Deputy City Attorney

By: /s/
LYNNE BOURGAULT
Attorneys for Defendant CITY OF BERKELEY

**TABLE OF CONTENTS**

Page

INTRODUCTION AND FACTUAL ALLEGATIONS ................................................................ 1

I. INTRODUCTION ............................................................................................................ 1

II. SUMMARY OF ARGUMENT ....................................................................................... 1

III. STATEMENT OF FACTS .............................................................................................. 2

    A. The Instant Action ................................................................................................ 2

    B. Mr. Klayman's Prior Frivolous Action Against the Berkeley Police Department, Berkeley Mayor, Berkeley Police Chief, and George Soros ................................. 3

    C. Mr. Klayman's Prior Frivolous Actions Against prior Co-Defendant George Soros ...................................................................................................................... 3

    D. Facts Not Disclosed in Mr. Klayman's Pro Hac Vice Application That Bear On Mr. Klayman's Fitness To Practice In This Court and Abide By Its Rules ........... 5

IV. ARGUMENT ................................................................................................................... 8

V. CONCLUSION .............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. FBI*,
    186 F.R.D. 197 (D.D.C. 1999) ..........................................................................................6

*Baldwin Hardware Corp. v. FrankSu Enter. Corp.*,
    78 F.3d 550 (Fed. Cir. 1996) ...........................................................................................6

*In re Bundy*,
    840 F.3d 1034 (9th Cir. 2016) ..............................................................................5, 6, 9, 10

*In re Bundy*,
    852 F.3d 945 (9th Cir. 2017) .............................................................................................7

*Daly v. Far E. Shipping Co.*,
    238 F. Supp. 2d 1231 (W.D. Wash. 2003) ........................................................................6

*D.H. Overmyer Co. v. Robson*,
750 F.2d 31, 34 (6th Cir. 1984) ..............................................................................................9

*Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*,
    159 F. Supp. 2d 763 (D.D.C. 2001) ..................................................................................6

*Kampitch v. Lach*,
405 F. Supp. 2d 210, 218 (D.R.I. 2005) ................................................................................11

*Klayman v. ACLU*,
    No. 2:17-cv-01703-JAK-JEM, ECF 1, ¶¶ 37-38 ..........................................................5, 6

*Klayman v. Barmack*,
    No. 08-1005 (JDB), 2009 WL 4722803 (D.D.C. Dec. 4, 2009) .......................................7

*Klayman v. City Pages*,
    No. 5:13-cv-143-Oc-22PRL, 2015 WL 1546173 (M.D. Fla. Apr. 3, 2015) .....................7

*Klayman v. Judicial Watch, Inc.*,
    802 F. Supp. 2d 137 (D.D.C. 2011) ..................................................................................7

*Klayman v. Obama*,
    No. 2:17-cv-00836-JAK-JEM, ECF 1 ...............................................................................5

*Kohlmayer v. Nat'l Railroad Passenger Corp.*,
124 F. Supp. 2d 877, 882 (D. N.J. 2000) ..............................................................................12

*Lasar v. Ford Motor Co.*,
399 F.3d 1101, 1118 (9th Cir. 2005) ......................................................................................8

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*,
 157 F.3d 956, 963 (2d Cir. 1998) ...................................................................................... 6

*Material Supply Int'l, Inc. v. Sunmatch Indus., Co.*,
 No. Civ. A. 94-1184, 1997 WL 243223 (D.D.C. May 7, 1997) .............................................. 6

*Montgomery v. Risen*,
 No. 15-cv-02035-AJB-JLB, 2015 WL 12672703 (S.D. Cal. Oct. 2, 2015) ......................... 7, 8

*Stern v. Burkle*,
 No. 0103916/2007, 2007 WL 2815139 (Sup. Ct. N.Y. Cnty. Sept. 6, 2007) .......................... 6

*In re United States*,
 791 F.3d 945, 957 n.8 (2015) ............................................................................................. 12

*United States v. Bennett*,
 No. 06-00068 SOM-LEK 2006 WL 2793170, at *5 (D. Haw. Sept. 27, 2006) ..................... 12

*United States v. Gonzalez-Lopez*,
 548 U.S. 140, 151 (2006) ..................................................................................................... 8

*United States v. Panzardi Alvarez*,
 816 F.2d 813, 817 (1st Cir. 1987) ........................................................................................ 9

*Wire Rope Importers' Ass'n v. United States*,
 Nos. 93-04-00221, 93-04-00236, 1994 WL 235620 (Ct. Int'l. Trade May 26,
 1994) ................................................................................................................................... 6

**Other Authorities**

Andrew Strickler, Ex-Judicial Watch Attorney Hit With Sanction
 Recommendation, Law 360, June 20, 2017, available at
 https://www.law360.com/articles/936678/ex-judicial-watch-atty-hit-with-
 sanctionrecommendation ............................................................................................. 10, 11

# MEMORANDUM OF POINTS AND AUTHORITIES
# INTRODUCTION AND FACTUAL ALLEGATIONS

## I.  INTRODUCTION

Defendant City of Berkeley respectfully moves this Court to revoke the *pro hac vice* admission of plaintiff's counsel, Larry Klayman ("Mr. Klayman").

## II.  SUMMARY OF ARGUMENT

Larry Klayman, a member of the Florida and District of Columbia bars, was admitted *pro hac vice* to this Court as Plaintiff's counsel on August 23, 2017. Defendant City of Berkeley ("the City") was not served with the Complaint in this case until September 12, 2017, and thus did not have the opportunity to oppose Mr. Klayman's application for admission *pro hac vice*. The City now asks this Court to reverse its prior order and revoke Mr. Klayman's *pro hac vice* admission.

For more than two decades, Mr. Klayman has repeatedly drawn the ire of courts across the country, resulting in sanctions, denials or revocations of *pro hac vice* admissions, and vehement criticism of his behavior by multiple judges. The Ninth Circuit Court of Appeals, in an October 2016 decision, upheld a decision by the District Court for the District of Nevada to deny Mr. Klayman's *pro hac vice* application. In a detailed opinion reviewing Mr. Klayman's professional history, the Ninth Circuit found that Mr. Klayman had, for more than twenty years, demonstrated a pattern of inappropriate and unprofessional behavior that justified denying his *pro hac vice* admission. In fact, on no fewer than fourteen occasions, courts have sanctioned Mr. Klayman, denied or revoked his *pro hac vice* status, and/or admonished him for his behavior. Two district courts have taken the remarkable step of banning Mr. Klayman from their courtrooms for life.

The Ninth Circuit also relied on the fact that Mr. Klayman has recently faced professional discipline by both of the state bars of which he is a member. At the time of the Ninth Circuit's opinion, disciplinary proceedings before the D.C. bar were pending. Since then, a Hearing Committee of the D.C. Court of Appeals Board on Professional Responsibility issued a Report and Recommendation that found multiple ethical violations by Mr. Klayman and recommended that he be suspended from the practice of law for 90 days, with his reinstatement

conditioned on a showing of his fitness to practice law. Moreover, in Florida—the other jurisdiction in which Mr. Klayman is licensed to practice law—he accepted a public reprimand in 2011 from the Florida Supreme Court for violations of Florida's rules of professional conduct.

Mr. Klayman's recent conduct directed specifically at City of Berkeley, UC Regents and other defendants shows that the Ninth Circuit's opinion, like the stream of judicial criticism that came before it, has done nothing to change Mr. Klayman's behavior. During the past 12 months, Mr. Klayman, acting either as plaintiff or counsel, has initiated two separate actions against the City of Berkeley and other defendants in the Northern District of California. In addition to this action (which attempts to hold the City liable for alleged violence by protesters at a protest at the University of California, Berkeley), Mr. Klayman filed a prior nearly identical action on June 5 of this year, but dismissed it without prejudice when the assigned judge, the Honorable Claudia Wilken, declined his request that she recuse herself based on alleged bias consisting of her allegedly having attended UC Berkeley and having been appointed by President Bill Clinton.

Mr. Klayman's conduct is no accident – it is a frequent and predictable pattern that demonstrates why this Court should not allow him *pro hac vice* status. For two decades, Mr. Klayman has used the federal courts to file frivolous, politically-motivated lawsuits and has been abusive and unprofessional toward the federal judiciary. That has not changed. Local Rule 7-3 gives this Court discretion over whether to grant an attorney admission *pro hac vice*. For the foregoing reasons and those set forth more fully below, this Court should revoke Mr. Klayman's *pro hac vice* admission in this case.

**III.    STATEMENT OF FACTS**

    A.    **The Instant Action**

On August 22, 2017, plaintiff filed this action against the City of Berkeley, the UC Regents, "Antifa," and two alleged individual members of "Antifa," alleging that they infringed her First Amendment rights and subjected her to violence and bodily harm based on her political affiliation and sexual orientation during a February 1, 2017 event featuring Milo Yiannopoulos on the UC Berkeley campus. Complaint 1:19-26. Plaintiff alleges that she was "attacked with extremely painful pepper spray and bear mace by masked assailants amongst the 'protesters'

2

Case No. 3:17-cv-04864 MEJ

because she chose to exercise her right to freedom of speech and show support for the planned speaker, Milo Yiannopoulos." Id. 3:8-13. Plaintiff's complaint is almost identical to the earlier complaint she filed arising out of the February 1, 2017 riot, although she has dropped certain parties as defendants, namely George Soros, House Minority Leader Nancy Pelosi, Berkeley Mayor Jesse Arreguin and Berkeley Police Chief Andrew Greenwood.

B. **Mr. Klayman's Prior Frivolous Action Against the Berkeley Police Department, Berkeley Mayor, Berkeley Police Chief, and George Soros**

On June 5, 2017, Plaintiff Kiara Robles ("Plaintiff") filed a complaint in the United States District Court for the Northern District of California, Case No. 4:17-cv-03235 CW naming 16 defendants (including the Berkeley Police Department, Berkeley Mayor Jesse Arreguin, House Minority Leader Nancy Pelosi and George Soros) and alleging 12 causes of action, all arising out of an incident on February 1, 2017 in which Plaintiff was allegedly pepper sprayed on the campus of the University of California, Berkeley. See Case 4:17-cv-03235 CW ECF #1. Plaintiff was represented by Larry Klayman of Freedom Watch and Michael Kolodzi of the Kolodzi Law Firm in that case. Mr. Klayman, who is not admitted to the bar in California, filed a *pro hac vice* application in that case on June 6, 2017. See 4:17-cv-03235 CW ECF # 4. The next day, on June 7, 2017, Mr. Klayman's application for admission *pro hac vice* was granted. See 4:17-cv-03235 CW ECF # 29. One week later, on June 14, 2017, Defendant City of Berkeley was served with the complaint. The complaint contained only scant allegations regarding any alleged conduct by the City of Berkeley Mayor, Police Chief, and police department. Mr. Klayman dismissed the June action without prejudice on July 25, 2017 immediately after Judge Wilken entered an Order Denying Request for Recusal, and while a motion seeking to revoke his *pro hac vice* status in that case was pending. See 4:17-cv-03235 CW ECF # 56, #53.

C. **Mr. Klayman's Prior Frivolous Actions Against prior Co-Defendant George Soros**

Larry Klayman, acting as plaintiff or counsel, has filed four lawsuits against George Soros in a 12 month period. Two of those matters were filed in the Northern District of Texas,

Dallas Division, Klayman v. Obama, 3:16-CV-02010-L (N.D. Tex.) ("Texas Action #1"), filed on July 9, 2016, and Zamarripa v. Farrakhan, 3:16-cv-03109-N (N.D. Tex.) ("Texas Action #2"), filed on November 7, 2016. The third action was filed in the Central District of California, Klayman v. ACLU, 2:17-cv-01703-FFM ("California Action #1").

The two Texas Actions are based on virtually identical factual allegations – 148 of 149 numbered paragraphs are near mirror-images of each other. Those complaints allege that Mr. Soros and numerous other defendants, including President Obama, Hillary Clinton, Eric Holder, and Black Lives Matter engaged in a purported conspiracy to incite a race-based "war on police" that led to the shooting deaths of six Dallas police officers.

In Texas Action #1, Mr. Klayman twice moved to have the presiding judge recuse himself, alleging that because the judge had been appointed by President Clinton, he would necessarily be prejudiced against Mr. Klayman. Obama, 3:16-CV-02010-L at ECF 43, 51. Those motions were denied. On April 14, 2017, in response to additional filings by Mr. Klayman, the Court issued an Order finding that "[t]he record reflects Mr. Klayman's predilection for filing frivolous, nonsensical, and vituperative documents" and that "[t]he court has grown weary of Mr. Klayman's tactics." Obama, 3:16-CV-02010-L at ECF 133. The Court went on to find that "[s]uch shenanigans are degrading to the legal profession and will not be tolerated by this court. If Mr. Klayman files any further frivolous or nonsensical documents in this matter, the court will personally sanction him monetarily." Ultimately, the court dismissed the complaint on the grounds that there was no alleged causal chain between the defendants and Mr. Klayman's alleged injuries, and accordingly Mr. Klayman lacked standing to bring his federal law claims against the federal government-related defendants. The court then declined to exercise supplemental jurisdiction over the remaining state law claims, including those brought against Mr. Soros.

In Texas Action #2, the court granted Mr. Soros' motion to dismiss, finding that "other than conclusory statements, [Plaintiff] has not pled any facts to suggest that [the murder of Dallas police officers] was dependent on the actions of the Defendants." *Zamarripa*, 3:16-CV-03109-N at ECF 63 (internal citations omitted).

Finally, in California Action #1, Mr. Klayman brought claims for assault and intentional infliction of emotional distress, based on an allegation that, while Mr. Klayman was in the baggage claim at Los Angeles International Airport, a protestor who was at the airport protesting President Trump's travel ban allegedly yelled and ran towards Mr. Klayman. *Klayman v. ACLU*, No. 2:17-cv-01703-JAK-JEM, ECF 1, ¶¶ 37-38. Initially, Mr. Klayman named President Obama as the only defendant. *Klayman v. Obama*, No. 2:17-cv-00836-JAK-JEM, ECF 1. The case was assigned to Judge John Kronstadt, *id.* at ECF 4, who was appointed to the federal bench by President Obama. Mr. Klayman voluntarily withdrew the case, *id.* at ECF 10, and, the same day, re-filed the case with virtually the same allegations and claims, but added several new defendants, including Mr. Soros. *Klayman v. ACLU*, 2:17-cv-01703-JAK-JEM, at ECF 1. He alleged, based on entirely conclusory statements, that the defendants had engaged in a conspiracy that led to Mr. Klayman's purported injury. *Id.*, ECF 1 at 2. Once the action was assigned to Judge Kronstadt as a related case to Mr. Klayman's initial filing, Mr. Klayman immediately voluntarily dismissed the suit again. *Id*. at ECF 73, 74.

    D.    **Facts Not Disclosed in Mr. Klayman's *Pro Hac Vice* Application That Bear On Mr. Klayman's Fitness To Practice In This Court and Abide By Its Rules**

           1.    <u>Mr. Klayman's History of Judicial Reprimands and Sanctions</u>

In addition to being the subject of disciplinary proceedings, Mr. Klayman also has a lengthy and well-documented history of abuse of the court system and violation of professional ethics. The District Court for the District of Nevada recently rejected Mr. Klayman's application to appear *pro hac vice* and the Ninth Circuit upheld that decision, finding that "[j]udges have sanctioned, chastised, and rebuked Klayman repeatedly over the past twenty years: in 1997, 1999, 2001, 2003, 2009, 2011, and twice in 2015…'[T]his approach to litigation is the norm and not the exception for [Klayman].'" In re Bundy, 840 F.3d 1034, 1049 (9th Cir. 2016) (quoting Klayman v. City Pages, No. 5:13-cv-143-Oc-22PRL, 2015 WL 1546173, at *8 n.7 (M.D. Fla. Apr. 3, 2015)). The Ninth Circuit found that Mr. Klayman "has shown a pattern of disregard for the local rules, ethics, and decorum; and he has demonstrated a lack of respect for the judicial

process." Id. The Court held that "[b]y any standard, the district court properly denied [Mr. Klayman's] petition to be admitted *pro hac vice*." Id.

In at least fourteen cases, courts have sanctioned Mr. Klayman, criticized his behavior, and/or revoked his *pro hac vice* admission. Among those cases are two courts which have banned Mr. Klayman for life. See MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 157 F.3d 956, 963 (2d Cir. 1998) (affirming Southern District of New York court's ruling that barred Mr. Klayman from appearing *pro hac vice* in perpetuity and sanctioned him for "undignified [and] discourteous conduct that is degrading to [the district court]" by, among other things, making accusations of racial and political bias); Baldwin Hardware Corp. v. FrankSu Enter. Corp., 78 F.3d 550, 555 (Fed. Cir. 1996) (affirming Central District of California court's ruling that revoked Mr. Klayman's ability to appear *pro hac vice* in perpetuity and sanctioned him for accusing the trial judge of anti-Asian bias and "unreasonably and vexatiously multiplying the proceedings"). In addition to these two cases are the following examples:

- A court denied Mr. Klayman's *pro hac vice* application because his "record demonstrates more than an occasional lapse of judgment, it evinces a total disregard for the judicial process." *Stern v. Burkle*, No. 0103916/2007, 2007 WL 2815139 (Sup. Ct. N.Y. Cnty. Sept. 6, 2007).
- Mr. Klayman was sanctioned for filing an untimely complaint and opposing the government's motion with "frivolous filings" that "wasted time and resources of defendant as well as of the court." *Wire Rope Importers' Ass'n v. United States*, Nos. 93-04-00221, 93-04-00236, 1994 WL 235620, at *7 (Ct. Int'l. Trade May 26, 1994).
- A court criticized Mr. Klayman's behavior as "often highly inappropriate" and his argument was "blighted by rude and unprofessional behavior which was directed toward the presiding judge and opposing counsel." *Material Supply Int'l, Inc. v. Sunmatch Indus., Co.*, No. Civ. A. 94-1184, 1997 WL 243223, at *8, *10, n.7 (D.D.C. May 7, 1997).
- Mr. Klayman "apparently misread (or never read) [the local rule]" and the court threatened sanctions for any future failures to comply with the local rules. *Alexander v. FBI*, 186 F.R.D. 197, 199 (D.D.C. 1999).
- Mr. Klayman responded to the district court's orders with a "forked tongue" and made arguments with "malicious glee." *Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*, 159 F. Supp. 2d 763, 764 (D.D.C. 2001).
- Mr. Klayman's arguments regarding the conduct of the district court were criticized by the court as "bizarre" and "beyond far-fetched." *Daly v. Far E. Shipping Co.*, 238 F. Supp. 2d 1231, 1241 (W.D. Wash. 2003).
- Mr. Klayman was sanctioned for failure "to comply with even the most basic of discovery requirements" and the court noted that Mr. Klayman's behavior was "not simply an unexplained hiccup in an otherwise diligently prosecuted case."

*Klayman v. Barmack*, No. 08-1005 (JDB), 2009 WL 4722803, at *1 (D.D.C. Dec. 4, 2009).
- Mr. Klayman was sanctioned on multiple occasions because "[h]is failures to comply with [the] Court's orders have been repeated, flagrant, and unrepentant" and his "conduct rises to a level and pattern of intransigence and disrespect for the Court's authority that is not often witnessed." *Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 150 (D.D.C. 2011).
- A court noted it had "become quite frustrated with [Mr. Klayman's] various tactics to avoid Court rules throughout the course of [the] litigation" and that Mr. Klayman had "routinely shown a disregard for this Court's Local Rules." *Klayman v. City Pages*, No. 5:13-cv-143-Oc-22PRL, 2015 WL 1546173, at *8 n.7 (M.D. Fla. Apr. 3, 2015).
- A court threatened sanctions after Mr. Klayman repeatedly did not "attempt to comply" with local rules. *Montgomery v. Risen*, No. 15-cv-02035-AJB-JLB, 2015 WL 12672703, at *1 (S.D. Cal. Oct. 2, 2015).
- The Ninth Circuit stated that "[Mr.] Klayman has shown such a casual acquaintance with the facts that he is guilty of at least gross negligence in his representations to this court." *In re Bundy*, 852 F.3d 945, 951 (9th Cir. 2017).

### 2. <u>Disciplinary Proceedings in Florida and the District of Columbia</u>

Mr. Klayman is a member of the D.C. and Florida bars and has recently been the subject of disciplinary proceedings in both jurisdictions. Earlier this year, Mr. Klayman was the subject of disciplinary proceedings before the District of Columbia Court of Appeals Board of Professional Responsibility (the "Board"). He was charged with violating the D.C. and Florida rules of professional conduct by – in three separate cases – representing a client against a former client in a matter that is the same or substantially related to a matter in which he represented his former client. On June 19, 2017, the Board issued a Report and Recommendation finding by clear and convincing evidence that Mr. Klayman violated D.C. Rule of Professional Conduct 1.9 in two matters and Florida Rule of Professional Conduct 4-1.9(a) in another matter. (See District of Columbia Court of Appeals, Board on Professional Responsibility, Hearing Committee Number Nine, Report and Recommendation, issued June 19, 2017, attached as Exhibit A to the Declaration of Lynne Bourgault in Support of Motion to Revoke *Pro Hac Vice* Admission of Larry Klayman, filed concurrently herewith ("Bourgault Decl.").)

In addition to finding that Mr. Klayman had violated the rules of professional conduct, the Board found that Mr. Klayman's "conduct in this [disciplinary] proceeding was dishonest and lacked candor in further aggravation of his misconduct." For instance, Mr. Klayman "testified falsely that he acted under the advice of counsel," his "post-hearing brief

repeatedly mischaracterize[d] [witness] testimony," and his "characterizations of the evidence lack[ed] the candor required of an attorney in a disciplinary proceeding." (Id. at 37.) The Board concluded that Mr. Klayman's conduct "raises a serious doubt as to his ability to practice in conformance with the rules." (Id. at 41.)

The Board recommended that Mr. Klayman be suspended from the practice of law for 90 days, with reinstatement conditioned upon a showing of his fitness to practice law. (Id. at 43.)

Separately, in 2011, Mr. Klayman was reprimanded by the Supreme Court of Florida for violating four of Florida's rules of professional conduct in connection with a client dispute. (See Supreme Court of Florida Order dated Aug. 29, 2011, attached as Exhibit B to the Bourgault Decl.) Mr. Klayman's client alleged that Mr. Klayman failed to provide her with legal services despite having received a $25,000 retainer. (See Consent Judgment dated July 14, 2011, attached as Exhibit C to the Bourgault Decl., at ¶ 3A.) After mediation, Mr. Klayman agreed to pay the client $5,000 within 90 days. (Id. at ¶ 3B.) Mr. Klayman failed to uphold the agreement and paid the client only after more than two years had passed, and after Florida bar counsel had sent numerous letters requesting that Mr. Klayman comply. (Id. at ¶¶ 3C-3N.) Mr. Klayman admitted that his conduct violated Florida Rules of Professional Conduct 3-4.3, 4-8.4(a), 4-8.4(g), and 14-5.1(b), and he agreed to a public reprimand. (Id. at ¶¶ 4-5.)

## IV. ARGUMENT

Federal courts have long had the authority to "establish criteria for admitting lawyers to argue before them." United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006). A District Court's revocation of an attorney's *pro hac vice* status "falls within the scope of the inherent power of the federal courts because a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." Lasar v. Ford Motor Co., 399 F.3d 1101, 1118 (9th Cir. 2005) (internal citations omitted). A District Court "need only provide notice and an opportunity to be heard before revoking an attorney's *pro hac vice* status. . . ." Id. at 1112. "Where an out-of-state attorney suggests through his behavior that he will not 'abide by the court's rules and practices,' the district court may reject his *pro hac vice* application." In re

Bundy, 840 F.3d 1034, 1042 (9th Cir. 2016); see also United States v. Panzardi Alvarez, 816 F.2d 813, 817 (1st Cir. 1987) (a court may, in its discretion, deny a *pro hac vice* application because of unethical conduct); D.H. Overmyer Co. v. Robson, 750 F.2d 31, 34 (6th Cir. 1984) (bankruptcy court did not abuse its discretion in revoking attorney's *pro hac vice* status, where the attorney failed to comply with bankruptcy rules requiring disclosure of conflicts).

Rule 11-3 of the United States District Court for the Northern District of California Civil Local Rules provides that "an attorney who is not a member of the bar of this Court may apply to appear *pro hac vice* in a particular action in this district" by submitting an application to the Clerk. The rule provides that the "assigned judge shall have discretion to accept or reject the application." Id. (emphasis added).

The Court should exercise its discretion and revoke the *pro hac vice* admission of Mr. Klayman. When Mr. Klayman's *pro hac vice* motion was originally submitted and granted by this Court, the Court was not made aware of Mr. Klayman's voluminous record of discipline, sanctions, and criticisms from courts across the country, all of which, when added together, easily satisfies the standard for rejecting a *pro hac vice* application established by the Ninth Circuit in Bundy.

In a detailed opinion, the Ninth Circuit recently held that Mr. Klayman's checkered history warranted denial of his *pro hac vice* application. In In re Bundy, the Ninth Circuit reviewed Mr. Klayman's history of discipline, sanctions, and criticism from courts and found that it "is not a flattering record and not one that the district court should ignore," given Mr. Klayman's "unwillingness or inability" to follow local rules. In re Bundy, 840 F.3d at 1046-47. While noting that "the district courts must carefully balance . . . vigorous advocacy against the need for order and decorum in the proceedings," the Ninth Circuit concluded that "[w]herever that line lies, Klayman has crossed it more than once, and the district court did not abuse its discretion – and certainly did not come close to committing clear error – in taking account of Klayman's past behavior and denying him *pro hac vice* status." Id. at 1047. The Ninth Circuit's opinion principally relied on two concerns, both of which are equally applicable here.

*First*, as described in detail above, Mr. Klayman has a long track record of being sanctioned, having his *pro hac vice* status denied or revoked, and having his behavior criticized by numerous courts across the country, all of which illustrates exactly why he should not be given *pro hac vice* status in this case. There are at least fourteen examples of Mr. Klayman's conduct drawing the ire of the court. Two district courts have even taken the extraordinary step of banning Mr. Klayman from their courtrooms for life.

*Second*, Mr. Klayman, who is admitted to the bars of Florida and D.C., has recently been subject to discipline in both jurisdictions for ethical violations. Both instances demonstrate that Mr. Klayman refuses to practice in conformance with court rules and practices. In 2011, the Florida Supreme Court publicly reprimanded Mr. Klayman in connection with a client dispute. Then, less than two weeks after Mr. Klayman was admitted *pro hac vice* in this Court, a Hearing Committee of the D.C. Court of Appeals Board on Professional Responsibility issued a Report and Recommendation that found, by clear and convincing evidence, that in three separate cases, Mr. Klayman took on representations that were clear conflicts of interest. (Bourgault Decl. Exhibit A at 43.) The Board found Mr. Klayman's conduct so egregious that it recommended a penalty even more severe than what the prosecuting bar counsel had requested: a suspension from the practice of law for 90 days with reinstatement conditioned upon a showing of fitness to practice law. Id. At 41-42.

In each case, Mr. Klayman has refused to accept responsibility for his actions or acknowledge that he has done anything improper. The D.C. Board found that Mr. Klayman "does not recognize the seriousness of the misconduct or even agree that it is misconduct at all." (Id. At 42.) In response to the thorough Report and Recommendation issued by the Board in D.C., Mr. Klayman continued his refusal to accept responsibility and indicated that he "strongly disputed the findings" and pledged to appeal. See Andrew Strickler, Ex-Judicial Watch Attorney Hit With Sanction Recommendation, Law 360, June 20, 2017, available at https://www.law360.com/articles/936678/ex-judicial-watch-atty-hit-with-sanctionrecommendation. Similarly, despite having accepted a reprimand in 2011 from the Florida Supreme Court, in the proceedings before the D.C. Board, Mr. Klayman "denie[d]

responsibility for his misconduct" in Florida. (Bourgault Decl. Exhibit A at 37.) Mr. Klayman told the Board that he agreed to the Florida reprimand "to simply put the matter behind [him]" and that his conduct did not involve "any…ethical violation." As the Board noted, "[t]hat simply is not true." Id.

Mr. Klayman's recent behavior in the cases he has filed against the City of Berkeley and George Soros plainly demonstrate that he has not changed his tactics. He continues to use the federal courts as a vehicle for politically-motivated lawsuits that are pure publicity stunts. This is the second case Mr. Klayman has filed against the City of Berkeley in the past three months and each of them are frivolous on their face. Of four cases he filed against George Soros, two were dismissed and Mr. Klayman voluntarily withdrew the third. Klayman v. Obama, 3:16-CV-02010-L (N.D. Tex.) at ECF 145, 146; Zamarripa v. Farrakhan, 3:16-cv-03109-N (N.D. Tex.) at ECF 63; Klayman v. ACLU, 2:17-cv-01703-JAK-JEM at ECF 74.

Moreover, Mr. Klayman has continued his pattern of inappropriate conduct that flouts the court's rules. Judge Sam Lindsay of the Northern District of Texas stated that Mr. Klayman's "shenanigans are degrading to the legal profession" and threatened him with sanctions. Klayman v. Obama, 3:16-CV-02010-L (N.D. Tex.) at ECF 54, 133. That most recent admonishment – the latest in a long-running history of reprimands from the courts – did not stop Mr. Klayman from filing yet another frivolous case in the Central District of California and then twice voluntarily dismissing it when it was assigned to a judge that Mr. Klayman did not like. Klayman v. Obama, No. 2:17-cv-00836-JAK-JEM, at ECF 10; Klayman v. ACLU, No. 2:17-cv-01703-JAK-JEM, ECF 74. It is obvious that no amount of threats, admonishments, or sanctions by the court will cajole Mr. Klayman into following the rules of the court and meeting a basic standard of professionalism. The concerns articulated by the Ninth Circuit, combined with Mr. Klayman's refusal to acknowledge any wrongdoing, give this Court every reason to think that this pattern of conduct will continue, and the Court should not have to "hold its breath for the duration of [the case] in hopes that misconduct will not result." Kampitch v. Lach, 405 F. Supp. 2d 210, 218 (D.R.I. 2005) (quoting Kohlmayer v. Nat'l Railroad Passenger Corp., 124 F. Supp. 2d 877, 882 (D. N.J. 2000)) (denying *pro hac vice* admission based on attorney's history of inappropriate

behavior). The inability to practice in accordance with the court's rules is one of the paradigm bases identified by the Ninth Circuit for rejecting a *pro hac vice* application and the Court should so exercise its discretion here. In re United States, 791 F.3d 945, 957 n.8 (2015) ("A district court would clearly act within its discretion in denying *pro hac vice* admission if, for example, an attorney's actions led the court to conclude the attorney would not 'abide by the court's rules and practices'…"); United States v. Bennett, No. 06-00068 SOM-LEK, 2006 WL 2793170, at *5 (D. Haw. Sept. 27, 2006) (denying application to appear *pro hac vice* based on "questionable conduct" that "does not appear to be isolated or infrequent").

There must be "some point, some line at which an attorney's repeated, documented, instances of uncivilized behavior, whether or not rising to the level of a disbarable offense, strips him of the privilege of *pro hac vice* admission." Kohlmayer, 124 F. Supp. 2d at 883. After two decades of repeatedly inappropriate conduct, Mr. Klayman has surely crossed that line.

## V. CONCLUSION

For the foregoing reasons, Defendant City of Berkeley respectfully requests this Court revoke the *pro hac vice* admission of Larry Klayman.

Dated: September 20, 2017         Respectfully submitted:

                                  LYNNE S. BOURGAULT, Deputy City Attorney

                                  By:  _____/s/ Lynne S. Bourgault_____
                                       LYNNE S. BOURGAULT
                                       Attorneys for Defendant CITY OF BERKELEY