IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIARA ROBLES,<br><br>       Plaintiff,<br><br>   v.<br><br>IN THE NAME OF HUMANITY, WE REFUSE TO ACCEPT A FASCIST AMERICA, et al.,<br><br>       Defendants. | Case No. 17-cv-04864-CW<br><br>NOTICE OF TENTATIVE RULING ON MOTION TO REVOKE PRO HAC VICE<br><br>(Dkt. Nos. 7, 15) |

Plaintiff Kiara Robles filed this suit against Defendants In the Name of Humanity, We REFUSE to Accept a Fascist America, The Regents of the University of California, University of California Police Department, City of Berkeley (Berkeley), Ian Dabney Miller, Raha Mirabdal, and DOES 1-20.  On October 2, 2017, Berkeley filed a motion to revoke pro hac vice admission of Larry Klayman, Robles' attorney.  Docket No. 15.  Having reviewed the papers and the record, the Court issues a tentative ruling granting Berkeley's motion to revoke the pro hac vice admission.

                            BACKGROUND
I.  Klayman's history of judicial reprimands and sanctions
     Over the years, numerous courts have sanctioned Klayman, called his behavior into question, or revoked his pro hac vice admission.  Two courts have banned Klayman from their courts for life.

     For example, the Second Circuit affirmed a Southern District of New York court's revocation of Klayman's pro hac vice status, denial of any future application to appear before the district

court on a pro hac vice basis, and order to provide a copy of the district court's opinion imposing sanctions when applying for pro hac vice admission before any other judge in the Southern District of New York.  MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 157 F.3d 956, 960 n.3 (2d Cir. 1998).  The Second Circuit noted that Klayman made "claims of partisan and racial basis with no factual basis," which were "discourteous, degrading to the court, and prejudicial to the administration of justice." Id. at 960 (internal punctuation and brackets omitted).

Similarly, the Federal Circuit upheld a Central District of California court's decision permanently barring Klayman from appearing before it pro hac vice and requiring him to attach a copy of the order to any pro hac vice applications filed in the same district.  Baldwin Hardware Corp. v. FrankSu Enter. Corp., 78 F.3d 550, 561-62 (Fed. Cir. 1996), as modified on reh'g (May 22, 1996).  The Federal Circuit affirmed the district court's finding that Klayman had acted in bad faith and had made several misrepresentations to the court, including that he had never been sanctioned or denied pro hac vice privileges.  Id. at 562.

In addition, the Ninth Circuit affirmed the District of Nevada's decision to deny Klayman's application for pro hac vice:

> Under our decisions, the district court had more than ample cause to turn down Klayman's application: he is involved in an ethics proceeding before the District of Columbia Bar, and he was not candid with the court about the status of those proceedings; he disclosed that he was twice barred *in perpetuity* from appearing *pro hac vice* before judges in the Central District of California and the Southern District of New York, but he failed to list numerous cases—all available on Westlaw or LEXIS—in which he has been reprimanded, denied *pro hac vice* status, or otherwise sanctioned for violating various local rules; and he has a record of going after judges personally, and

2

> shortly after Chief Judge Gloria Navarro denied his application, Bundy filed a frivolous *Bivens* action against her in her own court. This litany of reasons for denying Klayman *pro hac vice* status demonstrates that the district court did not abuse its discretion, much less commit clear error.

In re Bundy, 840 F.3d 1034, 1036 (9th Cir. 2016), subsequent mandamus proceeding, 852 F.3d 945 (9th Cir. 2017).  The Ninth Circuit collected the following examples of Klayman's "sanctioned, sanctionable, or questionable behavior":

- The Federal Circuit affirmed the district court's revocation of Klayman's ability to appear before the district court pro hac vice in perpetuity and its sanctioning of Klayman for accusing the trial judge of anti-Asian bias and "unreasonably and vexatiously multiplying the proceedings." Baldwin Hardware Corp. v. FrankSu Enter. Corp., 78 F.3d 550, 555 (Fed. Cir. 1996).
- The Second Circuit affirmed the district court's revocation of Klayman's ability to appear before the district court pro hac vice in perpetuity and its sanctioning of Klayman for "undignified and discourteous conduct that was degrading to the [district court] and prejudicial to the administration of justice" by, among other things, making accusations of racial and political bias and acting "abusive[ly] an obnoxious[ly]." MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 994 F.Supp. 447, 455 (S.D.N.Y. 1997), aff'd, 138 F.3d 33 (2d Cir. 1998).
- Klayman was sanctioned for filing an untimely complaint and opposing the government's motion with "frivolous filings" that "wasted time and resources of defendants as well as of the court." Wire Rope Importers' Ass'n v. United States, 18 C.I.T. 478, 485 (Ct. Int'l Trade 1994).
- Klayman exhibited "often highly inappropriate behavior" and his performance "was episodically blighted by rude and unprofessional behavior which was directed toward the presiding judge and opposing counsel." Material Supply Int'l, Inc. v. Sunmatch Indus., Co., No. Civ. A. 94-1184, 1997 WL 243223 at *8, *10 n.7 (D.D.C. May 7, 1997), aff'd in part and reversed in part, 146 F.3d 983 (D.C. Cir. 1998).
- Klayman "apparently misread (or never read) the local rules" and the district court threatened sanctions for any future failures to comply with local rules.  Alexander v. FBI, 186 F.R.D. 197, 199 (D.D.C. 1999).  The district court "gr[ew]

3

- weary of [Klayman's] use—and abuse—of the discovery process" and "ha[d] already sanctioned [Klayman] for making misrepresentations to the court, allowing the court to rely upon those representations in a favorable ruling, and then later contravening those very (mis)representations." Alexander v. FBI, 186 F.R.D. 188, 190 (D.D.C. 1999).
- Klayman responded to the district court's orders with a "forked tongue" and made arguments with "malicious glee." Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice, 159 F. Supp. 2d 763, 764 (D.D.C. 2001).
- Klayman made arguments regarding the conduct of the district court that were "bizarre" and "beyond the far-fetched." Dely v. Far E. Shipping Co., 238 F. Supp. 2d 1231, 1241 (W.D. Wash. 2003).

[ . . . ]

- Klayman's "fail[ure] to comply with even the most basic of discovery requirements" was "not simply an unexplained hiccup in an otherwise diligently prosecuted case" and thus warranted sanctions. Klayman v. Barmack, No. 08-1005 (JBD), 2009 WL 4722803, at *1 (D.D.C. Dec. 4, 2009).
- After "the patent failure of the Court's use of lesser sanctions in the past to have any discernible effect on Klayman's conduct," Klayman's "consistent pattern of engaging in dilatory tactics, his disobedience of Court-ordered deadlines, and his disregard for the Federal Rules of Civil Procedure and the Local Rules of this Court" necessitated further, more severe, sanctions. Klayman v. Judicial Watch, Inc., 802 F. Supp. 2d 137, 138-39 (D.D.C. 2011).
- Klayman repeatedly did not "attempt to comply" with local rules, and the district court threatened sanctions for any further violations. Montgomery v. Risen, No. 15-cv-02035-AJB-JLB, 2015 WL 12672703, at *1 (S.D. Cal. Oct. 2, 2015).

Id. at 1045-46.

II. Disciplinary proceedings in Florida and the District of Columbia

Klayman is a member of both the Florida and District of Columbia bar associations. Both bar associations have brought proceedings against him for violating rules of professional

4

conduct.

On June 19, 2017, the Board of Professional Responsibility of the District of Columbia Court of Appeals issued a Report and Recommendation finding by clear and convincing evidence that Klayman violated D.C. Rule of Professional Conduct 1.9 in two matters and Florida Rule of Professional Conduct 4-1.9(a) in another matter. See Declaration of Lynne Bourgault (Bourgault Decl.), Ex. A (District of Columbia Court of Appeals, Board on Professional Responsibility, Hearing Committee Number Nine, Report and Recommendation (June 19, 2017)). The Board found that Klayman's conduct during the proceeding before it "was dishonest and lacked candor in further aggravation of his misconduct." Id. at 37. The Board cited the following examples of what it deemed to be the "most egregious examples": Klayman "testified falsely that he acted under the advice of counsel" when in fact "[h]e did not," his brief "repeatedly mischaracterized" a witness' testimony, and he lacked "the candor required of an attorney in a disciplinary proceeding." Id. The Board found by "clear and convincing evidence" that Klayman's conduct "raises a serious doubt as to his ability to practice in conformance with the rules." Id. at 41. Thus, the Board recommended that Klayman be "suspended for 90 days, with reinstatement only upon showing his fitness to practice law." Id. at 41-42; see also id. at 43.

In 2011, the Supreme Court of Florida reprimanded Klayman for violating four of Florida's rules of professional conduct. See Bourgault Decl., Ex. B (Supreme Court of Florida Order (Aug. 29, 2011)). Klayman's client alleged that he failed to provide her with legal services after receiving a $25,000 retainer.

5

Bourgault Decl., Ex. C (July 4, 2011 Consent Judgment).  Klayman settled the matter with his client.  Id.  Pursuant to the agreement, Klayman admitted his conduct violated Florida Rules of Professional Conduct, but agreed to a public reprimand.  Id.

III. The instant action

On June 15, 2017, Plaintiff filed a complaint in this Court against sixteen Defendants, including Berkeley, alleging that she was subjected to violence and infringement of her constitutional rights during a protest at a February 1, 2017 event on the UC Berkeley campus featuring speaker Milo Yiannopoulos.  Robles v. The Regents of the University of California, Berkeley et al., Case No. 17-3235-CW (Robles I), Docket No. 1.  Plaintiff was represented by Klayman and Michael Kolodzi, who serves as local counsel.  See id.  Klayman filed a motion to disqualify the undersigned based on the undersigned's graduation from the University of California, Berkeley, and nomination by former President William J. Clinton.  Robles I., Docket No. 50.  On July 25, 2017, this Court denied the motion, noting it was "both unsworn and legally insufficient."  Docket No. 56 at 2.  On the same day, Plaintiff voluntarily dismissed the case.  Docket No. 57.

Plaintiff filed this action on August 22, 2017, alleging nearly identical facts and claims.  Docket No. 1.  Plaintiff was again represented by Klayman and Kolodzi.  Klayman filed a motion for pro hac vice on the same day.  Docket No. 2.  The magistrate judge originally assigned to this case granted Klayman's motion for pro hac vice admission.  Docket No. 6.  On November 20, 2017, Berkeley filed a motion to revoke Klayman's pro hac vice

1  admission before the then-assigned magistrate judge.[1]  See Docket
2  No. 7.  Shortly thereafter, this Court issued an order relating
3  the present action to Robles I, which resulted in the
4  reassignment of this case to the undersigned.  Docket No. 8.
5  Berkeley then brought the present motion to revoke pro hac vice
6  admission.  Docket No. 15.

LEGAL STANDARD

Pursuant to Civil Local Rule 11-3, an "attorney who is not a member of the bar of this Court may apply to appear pro hac vice in a particular action in this district" by submitting a written application, a certificate of good standing issued no more than one year prior to the date of application, and an oath certifying:

> (1)  That he or she is an active member in good standing of the bar of a United States Court or of the highest court of another State or the District of Columbia, specifying such bar;
>
> (2)  That he or she agrees to abide by the Standards of Professional Conduct set forth in Civil L.R. 11-4, and to become familiar with the Local Rules and Alternative Dispute Resolution Programs of this Court and, where applicable, with the Bankruptcy Local Rules;
>
> (3)  That an attorney, identified by name and office address, who is a member of the bar of this Court in good standing and who maintains an office within the State of California, is designated as co-counsel.

The district court has the power to deny or revoke an attorney's pro hac vice status, which is grounded within the court's inherent power "to control admission to its bar and to discipline attorneys who appear before it."  Lasar v. Ford Motor

---

[1] Because that motion is duplicative of the present motion, that motion is terminated as moot.

1    Co., 399 F.3d 1101, 1118 (9th Cir. 2005).  The court's decision
2    to do so is reviewed for abuse of discretion.  See id.  "[A]
3    court's decision to deny pro hac vice admission must be based on
4    criteria reasonably related to promoting the orderly
5    administration of justice or some other legitimate policy of the
6    courts."  Bundy, 840 F.3d at 1042 (citation omitted).

                              DISCUSSION

8         As an initial matter, Klayman's motion for leave to appear
9    in pro hac vice did not attach a certificate of good standing
10   issued no more than one year prior to the date of application, as
11   required by Civil Local Rule 11-3.  See Docket No. 2.  This alone
12   justifies revoking Klayman's pro hac vice admission.
13        More importantly, however, Klayman continues to demonstrate
14   a lack of candor and respect for the orderly administration of
15   justice.  In opposition to this motion, Klayman asserts that the
16   District of Columbia proceeding is still pending and that he "has
17   never been actually found to have acted unethically in this
18   matter."  Opp. at 4; see also id. at 1 ("Mr. Klayman has never
19   been found by any bar association--whose function it is to govern
20   attorney conduct--to have acted unethically or improperly for his
21   conduct before any judge.").  Klayman does not even attempt to
22   address the June 19, 2017 Report and Recommendation of the Board
23   of Professional Responsibility of the District of Columbia Court
24   of Appeals.  He instead states that "the prior attempted
25   negotiated discipline never entered into effect because [he]
26   chose to withdraw it after having thought the better of having
27   signed the affidavit and agreeing to negotiated discipline since
28   he felt strongly that he acted ethically at all times."  Id.

                                    8

This is the same argument Klayman advanced in Bundy, which the Ninth Circuit noted was "woefully misleading" because Klayman's affidavit was not withdrawn, it was rejected. Bundy, 840 F.3d at 1044. The Court explained:

> Klayman was not forthcoming with the district court. In his "renewed application," Klayman corrected the record—but only in part. He told the district court that the stipulation was of no effect because he had "thought the better of having signed the affidavit and agreeing to negotiated discipline." Klayman may have had second thoughts about stipulating to his "public censure," but his statement was woefully misleading. In fact, a Hearing Committee for the D.C. Bar had rejected that stipulation on behalf of the Bar because it was "unduly lenient." That prompted the hearings in January 2016, a Hearing Committee recommendation, and Klayman's March 2016 brief to the D.C. Bar.

Id. The fact that Klayman has again provided false information about the District of Columbia Bar Proceeding, even after the Ninth Circuit's reprimand in Bundy, indicates that he continues to take no responsibility for his actions and is likely to continue to present false and misleading information to the Court. This justifies denying Klayman's application for pro hac vice admission. Id. at 1045.

It is clear that Klayman has engaged in a pattern of flouting local and federal rules, making misrepresentations and omissions, and accusing judges of bias without adequate factual basis. Id. Based on this behavior, "numerous" courts have found "that he is unfit to practice based on his 'inappropriate and unethical behavior.'" Id. Klayman has continued his pattern in this case. As discussed previously, he has made the same misrepresentations he made in other cases. He also voluntarily dismissed Robles I, on the same day that the Court denied his

disqualification motion, only to file essentially the same case less than a month later.  Klayman did not file a motion to consider whether the present case should be related to Robles I, as required by Civil Local Rule 3-12.  This evinces both a failure to follow the court's local rules, as well as an attempt at "judge shopping, a practice that abuses the integrity of the judicial system by impairing public confidence in the impartiality of judges." Keilholtz v. Superior Fireplace Co., No. C 08-00836 SI, 2008 WL 5411497, at *2 (N.D. Cal. Dec. 29, 2008).  Klayman also failed to follow the local rules when he failed to file Plaintiff's opposition to Berkeley's motion to dismiss by the deadline and then filed a motion to extend time that was not compliant with Civil Local Rule 6-1.  See Docket No. 25.  And, even after the Court denied the disqualification motion as "legally insufficient," Klayman continues to suggest the undersigned is biased.  See Opp. at 1 (asserting that Berkeley brought the present motion "only because they believe that Judge Wilken will favor them and grant it" because she "attended UC Berkeley's Boalt Hall School of Law and taught there for six years").  In sum, Klayman has demonstrated "a pattern of disregard for local rules, ethics, and decorum; and he has demonstrated a lack of respect for the judicial process," which justifies revoking his pro hac vice admission.  Bundy, 840 F.3d at 1049.

Klayman argues that he is merely zealously advocating for the right of his client to secure counsel of choice under the Sixth Amendment.  But the Sixth Amendment does not apply to civil cases.  See City and County of San Francisco v. Cobra Solutions,

Inc., 38 Cal. 4th 839, 846 (2006) (in considering disqualification motion as involving "a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility"). And the "Sixth Amendment right to chosen counsel is not absolute," but "can be abrogated to serve a 'compelling purpose,'" which includes "[e]nsuring the ethical and orderly administration of justice." United States v. Ries, 100 F.3d 1469, 1471 (9th Cir. 1996). Additionally, as the Ninth Circuit noted in Bundy, which was a criminal case, Klayman has every right to be "persistent, vociferous, contentious, and imposing, even to the point of appearing obnoxious when acting in [his] client's behalf," but does not have the right to "cross[] the line," which he had done on multiple occasions. Id. at 1047.

## CONCLUSION

The Court issues a tentative ruling granting Berkeley's motion to revoke pro hac vice admission of Larry Klayman (Docket No. 15). Klayman has seven days to request a hearing on this motion by filing a request for hearing on the docket, at which point the Court will set a hearing date and briefing schedule. If Klayman does not timely file a request for a hearing, then the Court's tentative ruling shall become final.

IT IS SO ORDERED.

Dated: May 23, 2018

CLAUDIA WILKEN
United States District Judge