# EXHIBIT 1

DISTRICT OF COLUMBIA COURT OF APPEALS
BOARD ON PROFESSIONAL RESPONSIBILITY

February 6, 2018

Board on Professional
Responsibility

In the Matter of: :
:
LARRY E. KLAYMAN, :
: Board Docket No. 13-BD-084
Respondent. : Bar Docket No. 2008-D048
:
A Member of the Bar of the :
District of Columbia Court of Appeals :
(Bar Registration No. 334581) :

REPORT AND RECOMMENDATION OF THE
BOARD ON PROFESSIONAL RESPONSIBILITY

Respondent Larry E. Klayman represented individual clients in three separate lawsuits against Judicial Watch, Inc., a nonprofit organization that previously employed him as General Counsel.

Disciplinary Counsel (formerly Bar Counsel) asserts that Respondent had a "prior client" conflict of interest in all three cases, and charges him with violating Rule 1.9 of the District of Columbia Rules of Professional Conduct ("Rules") and its analogue, Florida Rule of Professional Conduct 4-1.9(a) ("Florida Rule"). Respondent is also charged with seriously interfering with the administration of justice, and thus violating Rule 8.4(d), in one of those matters.

Hearing Committee Number Nine sustained all of the charges and recommended that Respondent be suspended for ninety days, with readmission contingent upon a showing of his fitness to practice law. Respondent timely filed exceptions to the Hearing Committee's Report.

**EXHIBIT**

**1**

The Hearing Committee's factual findings are supported by substantial evidence (with the exception of its finding that Respondent gave false testimony during the hearing, discussed *infra*, p. 16).  HC Rpt. 5-15.[1]  We adopt them as our own, supplementing them with our own findings denoted by direct citations to the record.[2]

We also agree with the Hearing Committee's well-reasoned analysis of the conflict of interest charges.  HC Rpt. 16-29.  We therefore adopt that portion of the report as our own, and abridge our own discussion of the conflict issues.

On the other hand, we conclude that Disciplinary Counsel failed to prove the Rule 8.4(d) allegation, and disagree with the Hearing Committee's finding that Respondent violated it.  HC Rpt. 34-35.

Finally, based on our own review of the evidence, we recommend that Respondent be suspended for ninety days with no fitness requirement.

---

[1]     The Hearing Committee's Report and Recommendation are designated "HC Rpt. ___" and its Findings of Fact are designated "FF __."  Disciplinary Counsel's and Respondent's exhibits are designated "DCX" and "RX" respectively.  The disciplinary hearing transcript is designated "Tr. __."  Respondent's Brief to the Board is designated "Resp. Br. __."

[2]     Respondent has filed various materials with the Board as an appendix to his Brief.  We decline to supplement the Record to consider them.  Respondent has not demonstrated the exceptional circumstances which would justify our accepting evidence (some of which was created after the Hearing Committee report) that Disciplinary Counsel had no opportunity to challenge at the hearing.  *See* Board Rule 13.7 ("Review by the Board shall be limited to the evidence presented to the Hearing Committee, except in extraordinary circumstances determined by the Board.").

2

## I.   FACTUAL BACKGROUND

Respondent was formerly employed by Judicial Watch as its in-house General Counsel. The disciplinary charges in this case relate to three matters in which Respondent represented Judicial Watch in that capacity.

A.   <u>Sandra Cobas's Dispute with Judicial Watch  (HC Rpt. 7-9)</u>

Sandra Cobas was director of Judicial Watch's Miami Regional Office. In 2003, she complained to Respondent (its General Counsel) that she was subject to a hostile work environment.  Tr. 44, 49, 226, 251, 264-65.  Judicial Watch relied on Respondent for legal advice in employment matters, and he advised Judicial Watch's management to take action against another employee who was the subject of her complaints.

Respondent and Cobas both subsequently left Judicial Watch's employ, and Cobas filed a complaint against Judicial Watch in Florida state court, reiterating the same complaint she had earlier made to Respondent.

The Florida trial court dismissed the case on Judicial Watch's motion. Thereafter, without seeking the consent of Judicial Watch, Respondent appeared in the case as attorney for Cobas and moved the trial court to vacate the dismissal order.  Unsuccessful, Respondent later filed a notice of appeal and an appellate brief on Cobas's behalf.  The Florida District Court of Appeal summarily affirmed the dismissal.

B.    Louise Benson's Dispute with Judicial Watch  (HC Rpt. 9-13)

In 2002, Judicial Watch undertook a major capital fund-raising campaign, the goal of which was to purchase a headquarters building.  Judicial Watch relied on Respondent, as its General Counsel, to protect its legal interests in all aspects of that effort.

As part of the capital campaign, Respondent sent a letter to Louise Benson seeking a substantial donation from her. He signed the letter as Judicial Watch's "Chairman & General Counsel." In response to the letter, Benson pledged $50,000 to the building fund, of which she paid $15,000.

Judicial Watch did not purchase the building, and Benson filed a civil action against it in D.C. Superior Court.  Relying on the promises in Respondent's solicitation letter, Benson sought damages for fraudulent misrepresentation, breach of contract, and unjust enrichment.

Judicial Watch returned $15,000 to Benson.  Yet even though no substantial dispute remained between the parties, the litigation persisted.  Without seeking Judicial Watch's consent, Respondent appeared in the case as co-counsel for Benson.  Judicial Watch, citing Rule 1.9, demanded that Respondent withdraw, noting that the capital fundraising campaign had been "organized and coordinated by [Respondent] during his tenure as General Counsel." DCX 28 at 167. Respondent refused to withdraw, and Judicial Watch moved to disqualify him. That motion was never decided because the parties agreed to dismiss the case.

4

C.   Peter Paul's Dispute with Judicial Watch  (HC Rpt. 13-15)

In 2001, Judicial Watch entered into contracts with Peter Paul, agreeing to assess the propriety of fundraising activities engaged in by Paul during an election campaign, and to provide legal counsel to Paul in related securities investigations and litigation.  Respondent drafted, edited, and approved the contracts on behalf of Judicial Watch, signing as its "Chairman and General Counsel."

Pursuant to the agreement, Judicial Watch provided Paul with legal counsel in a civil lawsuit brought in California state court, but withdrew from the matter after Respondent left the organization.  Paul then sued Judicial Watch in the U.S. District Court for the District of Columbia, claiming that it had breached the contract that Respondent had negotiated.   Without seeking Judicial Watch's consent, Respondent appeared as an attorney for Paul, and Judicial Watch moved to disqualify him.

The District Court granted the motion, finding that Respondent's representation of Paul violated Rule 1.9.  Judge Lamberth concluded that, as Judicial Watch's General Counsel, Respondent had "directed and supervised negotiation and drafting" of the contract with Paul, and that the subject matter of the litigation was "*at least* substantially related to, if not the very same" as his prior work.  DCX 52 at 5 (emphasis in original).  Respondent's representation of Paul was thus "the very type of 'changing of sides in the matter' forbidden by Rule 1.9." *Id*.  Noting some ambiguity in the case law as to the standard for disqualification, the court nevertheless granted the motion and disqualified Respondent.  *Id*. at 5-15.

5

## II.   DISCUSSION

A.   Respondent Had a Conflict of Interest in Three Matters.

Absent consent, a lawyer may not represent a client who is "materially adverse" to a former client in a matter that is the "same or a substantially related" to a matter in which the lawyer represented the former client.  Rule 1.9.[3]  The purpose of Rule 1.9 is to "assure the preservation of attorney-client confidences gained in the prior representation and to preserve the reasonable expectations of the former client that the attorney will not seek to benefit from the prior representation at the expense of the former client."  D.C. Bar Legal Ethics Opinion 272 (1997).  The solicitude for the duty of confidentiality is so strong that where "two matters, handled by the same counsel, are substantially related, there is an *irrebuttable presumption* that counsel received information during the first representation that is relevant to the second."  *Derrickson v. Derrickson*, 541 A.2d 149, 151-52 (D.C. 1988) (quoting *Brown v. District of Columbia Bd. of Zoning Adjustment*, 486 A.2d 37, 42 n.5 (D.C. 1984)) (emphasis in original).

Respondent does not contend that his clients' interests were not materially adverse to Judicial Watch in the three lawsuits.  Nor is there any claim that Judicial Watch consented to his appearances.  Thus, to prove a Rule 1.9 violation, Disciplinary Counsel had only to prove that an attorney-client relationship formerly existed between Respondent and Judicial Watch, and that the later litigations were substantially related to a prior representation.  *See id.* at 152.

---

[3]      Florida Rule of Professional Conduct 4-1.9(a) is to the same effect.  HC Rpt. 19-20.

6

Respondent argued to the Hearing Committee and reiterates to the Board that, while at Judicial Watch, his interactions with Cobas, Benson, and Paul were in his capacity as Judicial Watch's Chairman, not as its lawyer. He also claims that the matters he dealt with at Judicial Watch were not the same, or even substantially related to, the subject matter of the lawsuits in which he later appeared. The Hearing Committee rejected those arguments, and properly so.

     1.    <u>Respondent acted as a lawyer for Judicial Watch in all three matters.</u>

Respondent argues that he was not acting as Judicial Watch's counsel in any relevant respect, and criticizes the Hearing Committee for purportedly basing its contrary finding on an "overly broad presumption" that a lawyer whose job title is Chairman and General Counsel "must therefore be acting . . . as a lawyer . . . in everything he does." Resp. Br. 6.

The Hearing Committee acknowledged a "presumption that a company's general counsel is most often acting in his legal capacity." HC Rpt. 24 (citing *Boca Investerings Partnership v. United States*, 31 F. Supp. 2d 9, 12 (D.D.C. 1998) ("There is a presumption that a lawyer in the legal department . . . is most often giving legal advice, while the opposite presumption applies to a lawyer . . . who works for the . . . management or business side of the house.")). Although we have no quarrel with that reasonable proposition, we need not rely on any presumption in this case, because the direct evidence cited by the Hearing Committee

7

convincingly establishes that Respondent acted as Judicial Watch's lawyer in all three matters.[4]

Our assessment of whether Respondent was acting as lawyer for Judicial Watch is to be determined by a "totality of the circumstances." *In re Fay*, 111 A.3d 1025, 1030 (D.C. 2015) (per curiam). "All that is required [to create an attorney-client relationship] is that the parties explicitly or by their conduct, manifest an intention" to create it. *In re Dickens*, 174 A.3d 283, 296 (D.C. 2017) (alteration in original) (quoting *In re Ryan*, 670 A.2d 375, 379 (D.C. 1996)) (internal quotation marks and citation omitted). The perception of Judicial Watch is an "important consideration in determining whether [an] attorney-client relationship existed." *In re Bernstein*, 707 A.2d 371, 375 (D.C. 1998) (citing *In re Lieber*, 442 A.2d 153, 156 (D.C. 1982)).

Here, Respondent was employed by Judicial Watch as its General Counsel (1) when Cobas complained to him about the conditions of her employment and he recommended that Judicial Watch take action against another employee, (2) when he advised Judicial Watch regarding its fundraising effort, and (3) when he negotiated Judicial Watch's representation agreements with Paul. HC Rpt. 6, 7, 9, 13, 14. If he were *not* continuing to act as its legal counsel in those matters, Respondent should have told Judicial Watch executives as much, so they would "not mistakenly suppose [he was] looking after [its] affairs when [he] ha[d] ceased

---

[4]     Because the facts clearly and convincingly establish that Respondent was acting as Judicial Watch's legal counsel at all relevant times, Respondent's argument that a corporation's lawyer may sometimes not act as legal counsel is irrelevant.

8

to do so." *Dickens*, 174 A.3d at 297 (quoting Rule 1.3, cmt. [9]).   Because Respondent never informed them that he was not acting as Judicial Watch's lawyer in connection with any of the three matters, Judicial Watch's executives reasonably believed that Respondent was acting as its lawyer.   This evidence alone establishes that the attorney-client relationship persisted as to all the matters at issue.   Yet there is more.

As to Cobas, Respondent *admitted* in his post-hearing filings that he provided legal advice to Judicial Watch about Cobas's employment claim.   FF 6.[5] The Hearing Committee also noted that contemporaneous memoranda suggested Respondent's involvement as Judicial Watch's lawyer.   *Id.*   More compelling, however, was the testimony by both Judicial Watch's president and another of its in-house counsel that Respondent explicitly told them he was relaying Cobas's claim in his capacity as General Counsel.   Tr. 54-55 (Respondent "was a lawyer [Judicial Watch] relied on for advice on personnel matters" who provided "legal advice" in the Cobas matter), 264-65 (Respondent "gathered information from Ms. Cobas in [his] capacity as General Counsel to the organization" and conveyed that information to Judicial Watch officers).

---

[5]        In his post-hearing brief, Respondent admitted a Proposed Finding of Disciplinary Counsel that stated: "In his capacity as General Counsel, Respondent provided legal advice to Judicial Watch about Ms. Cobas's hostile work environment claim and he advised Judicial Watch to take action against the employee Ms. Cobas had complained about." Respondent asks us to disregard his admission as "mistaken and over inclusive" because it was purportedly more comprehensive than other evidence in the record.   Resp. Br. 22.   We will not do so. Respondent's admission was not inadvertent: it appeared in a highly specific and detailed analysis of Disciplinary Counsel's filings by a *pro se* respondent.   In addition, the admission was entirely consistent with Respondent's testimony to the same effect ("I was representing Judicial Watch in addition to [other] clients . . . ." Tr. 444-45.).

9

Similarly, the Hearing Committee found that Respondent acted as legal counsel to Judicial Watch in connection with its capital campaign, of which his solicitation letter to Louise Benson was but a part. FF 10 & n.3. Respondent identified himself in the letter as the organization's General Counsel, and the Hearing Committee credited the testimony of Judicial Watch's president attesting that Respondent had used his legal skills to ensure that all Judicial Watch fundraising materials were accurate, complied with IRS and other governmental requirements, and did not undercut positions Judicial Watch had taken in unrelated litigation matters. FF 10; Tr. 66-67. Respondent "ma[d]e sure there were no legal issues" with Judicial Watch's fundraising materials, and thus necessarily acted as its lawyer in connection with the fundraising campaign, including the solicitation letter that was part of that campaign. Tr. 66.

Finally, Respondent raises no serious challenge to the Hearing Committee's conclusion that he acted as Judicial Watch's lawyer with respect to the Paul representation, FF 23, and we agree with Judge Lamberth's identical conclusion.

2. <u>The three lawsuits were substantially related to Respondent's prior representation of Judicial Watch.</u>

Respondent violated Rule 1.9 if there was a substantial relationship between his prior representation of Judicial Watch and his subsequent representations of

10

clients who were materially adverse to it.  *Brown*, 486 A.2d at 42.  The law in Florida is to the same effect. [6]

The Hearing Committee concluded that, as to all three matters in question, the relationship was not only substantial, but direct and obvious.  HC Rpt. 20. We agree.

In the Cobas matter, Respondent appeared in a lawsuit asserting the very same complaint *against* Judicial Watch he had earlier fielded *on behalf of* Judicial Watch. *Id.* at 21.  Florida's Rule 4-1.9(a) prohibited Respondent from taking on that later representation. *Id.*

Similarly, Respondent represented Benson and asserted fraud in the fundraising campaign and letter with which Respondent had been "directly involved" as Judicial Watch's attorney. *See* Rule 1.9, cmt. [2] ("When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited.").  In advising Judicial Watch regarding its fundraising campaign and in preparing and transmitting his letter to Benson, Respondent had been in a position to receive client information from Judicial Watch that bore on Benson's later claim that Respondent's solicitation had defrauded her.  His later representation of her was thus prohibited. HC Rpt. 21-22.

---

[6]     The conduct in the Cobas matter is governed by Florida Rule of Professional Conduct 4-1.9(a) because the misconduct took place in connection with a matter pending before a Florida tribunal. Rule 8.5(b)(1). We deny Respondent's motion to dismiss that charge for the reasons stated by the Hearing Committee. HC Rpt. 4-5.

11

Finally, Respondent represented Paul, claiming that Judicial Watch breached the representation agreement that Respondent, as Judicial Watch's attorney, had negotiated and signed. His conflict of interest in doing so was evident. HC Rpt. 22-23.

For these reasons, we agree with the Hearing Committee's conclusion that Respondent violated Florida Rule 4-1.9(a) in the Cobas matter, and D.C. Rule 1.9 in the Benson and Paul matters.

B.      Respondent Did Not Violate Rule 8.4(d).

Respondent is also charged with violating Rule 8.4(d) in the Paul matter. A lawyer violates Rule 8.4(d) when his conduct (1) is improper; (2) bears directly upon the judicial process with respect to an identifiable case or tribunal; and (3) taints the judicial process in more than a *de minimis* way; that is, it potentially impacts the process to a serious and adverse degree. *In re Hopkins*, 677 A.2d 55, 60-61 (D.C. 1996). The Hearing Committee concluded that Respondent violated the Rule by appearing as counsel for Paul against Judicial Watch and forcing it to move for his disqualification; by obtaining extensions of time to oppose the motion; by lodging "meritless arguments" in opposition to the motion; and by filing a notice of appeal that he did not prosecute.[7] HC Rpt. 34-35.

---

[7]      Respondent moved for three extensions of time in which to respond to the disqualification motion. HC Rpt. 35. Although it appears that Judicial Watch opposed one or more of those motions (*see* DCX 45), the court granted them. There is no evidence that these motions for extension were "improper" within the meaning of Rule 8.4(d), and they cannot therefore underpin a violation of that Rule.

We conclude that, although this case presents a close question, Disciplinary Counsel did not prove a Rule 8.4(d) violation.

On the one hand, Respondent's conflict in the Paul litigation was obvious, and he should have recognized it. Respondent also knew that Judicial Watch – which had earlier moved to disqualify him in the Benson case – would not consent to his appearance in the Paul litigation. Rather than raising the issue with the court in the first instance, Respondent forced Judicial Watch to move for his disqualification, and forced the court to rule on that motion. We thus agree with the Hearing Committee that Respondent acted improperly with respect to a specific case, and that Disciplinary Counsel established the first two elements of a Rule 8.4(d) violation. The question remains, however, whether Respondent's conduct unacceptably "tainted" the Paul case.

The Board has long been concerned about the scope of Rule 8.4(d) in litigation-related disciplinary matters. In *In re White*, 11 A.3d 1226 (D.C. 2011) (per curiam), the Board concluded that even though a court (coincidentally, Judge Lamberth) had disqualified the respondent due to a prior client conflict (pursuant to Rule 1.11), a successful "disqualification motion, without more, does not support a finding that the conduct was a serious interference with the administration of justice." *Id.* at 1247 (appended Board report). The Board found no Rule 8.4(d) violation because it was concerned about "a pernicious effect on the administration of justice" since lawyers might "withdraw unnecessarily, rather than risk exposure to disciplinary charges." *Id.*

13

The Court disagreed with the Board's rationale, but did not find a Rule 8.4(d) violation based on the disqualification alone.  Rather, it assessed not only the outcome of the disqualification motion, but also considered other misconduct of the respondent along with the views of the trial court in the matter.  *Id.* at 1232.

Application of the broader assessment contemplated by *White* to the facts of this case leads us to conclude that Respondent did not violate Rule 8.4(d).  This case presents the extraordinary situation in which Judge Lamberth, the trial court judge, testified to the Hearing Committee that in his view the disqualification motion presented a "fairly unusual circumstance"; that "there was a legitimate debate about the conduct" of Respondent; and that Paul was "a very needy client who needed services, who could not otherwise afford services."  Tr. 658-59.  For those reasons, and despite ordering Respondent's disqualification, Judge Lamberth did not refer the matter to Disciplinary Counsel because "the public comments that I made [in the disqualification opinion] were sufficient to make sure that counsel in the future understood the Court's view of a motion to disqualify like that."  Tr. 659.

Unlike *White*, any Rule 8.4(d) violation in this case would be premised solely upon the Rule 1.9 conflict and disqualification; in effect, it would be derivative of the conflict of interest finding.  Respondent engaged in no other consequential misconduct before the tribunal.  In that context, Judge Lamberth's supportive testimony takes on extra significance.  We are unable to conclude that

14

Respondent's behavior sufficiently tainted the judicial process to a degree adequate to sustain the Rule 8.4(d) charge.

### III.   SANCTION

Our sanction recommendation should protect the public and the courts, maintain the integrity of the profession, and deter other attorneys from engaging in similar misconduct. *See In re Reback*, 513 A.2d 226, 231 (D.C. 1986) (en banc). It must also be consistent with sanctions for comparable misconduct (*see* D.C. Bar R. XI, § 9(h)(1)) and take into account (1) the nature of the violation; (2) mitigating and aggravating circumstances; (3) the need to protect the public, the courts, and the legal profession; and (4) the moral fitness of the attorney. *In re Cleaver-Bascombe*, 986 A.2d 1191, 1195 (D.C. 2010) (per curiam) (quoting *In re Goffe*, 641 A.2d 458, 464 (D.C. 1994) (per curiam)).

As discussed below, the range of sanctions previously imposed for engaging in conflicts of interest varies from informal admonition to suspension, and suspensions have ranged from thirty to ninety days, with the more severe terms premised upon significant other violations. Respondent urges that his misconduct warrants only an informal admonition. We disagree.

A.   <u>The Hearing Committee's Recommendation</u>

The Hearing Committee concluded that Respondent's conduct was "at the serious end of the spectrum." It concluded that Respondent:

> repeatedly represented clients against his former client as part of a prolonged and acrimonious dispute over how Judicial Watch was run after Respondent left the organization; it is hard to see Respondent's

15

actions as anything other than improper attempts to prolong litigation, increase costs for Judicial Watch, and further his personal crusade against the organization.

HC Rpt. 40.

The Hearing Committee also found that Respondent testified falsely in the hearing and misrepresented his testimony in his brief. HC Rpt. 41.  It concluded that Respondent's testimony and argument falsely claimed that he relied on his co-counsel's advice that he could ethically appear in the litigations. *Id.* at 29-30.  The Hearing Committee also decided that a fitness requirement was necessary, in considerable part because of (1) Respondent's dishonesty before the Committee and (2) a disciplinary matter in Florida, which suggested that Respondent will not act ethically after his period of suspension has run. *Id.* at 42; *see In re Cater*, 887 A.2d 1, 24 (D.C. 2005).

Since the Hearing Committee's findings of uncharged falsehoods were material to the sanction recommendation, we must review them *de novo. See In re Bradley*, 70 A.3d 1189, 1194 (D.C. 2013) (per curiam).  The Committee relied virtually entirely on the testimony of Respondent's co-counsel in the Benson matter, who testified that he did not endorse Respondent's appearance.  However, the forcefulness of that testimony was undercut by the witness's repeated, yet understandable, inability to recall the substance of key conversations in which he had participated with Respondent more than eight years earlier. *See* Resp. Br. 39-41; Tr. 677-79.  For example, when asked if he had advised Respondent if he could enter his appearance on behalf of Ms. Benson, he testified "I don't recall."  Tr.

676; *see* Tr. 688.  Moreover, a contemporaneous court filing quoted him as stating that there "was no ethical issue" arising from Respondent's representation of Benson.  DCX 29 at 5.  The witness, who co-signed Respondent's opposition to the disqualification motion, testified in the disciplinary hearing that he did not think the opposition was frivolous (Tr. 689) and would not have "put [his] name on a pleading that [he] thought was in violation of any pleading rule or ethical rule." Tr. 696.

The Court has noted that in disciplinary proceedings the passage of time "dims memories and so distorts the truthfinding process" such that mitigation, rather than enhancement of proposed sanctions, is "particularly suitable."  *In re Williams*, 513 A.2d 793, 798 (D.C. 1986) (per curiam).  Here, the witness's diminished recollection and his prior, apparently inconsistent, statements convince us that Disciplinary Counsel (who did *not* argue to the Hearing Committee that Respondent was dishonest) failed to prove dishonesty by clear and convincing evidence.  *See In re Downey*, 162 A.3d 162, 168-69 (D.C. 2017).

The Hearing Committee also found that Respondent's misconduct was aggravated by a prior discipline in Florida.  In 2011, the Florida Supreme Court of Florida reprimanded Respondent for violating four of Florida's Rules of Professional Conduct in connection with a client dispute.  DCX 53.  The parties mediated the dispute through a Bar program.  Respondent agreed to pay the client $5,000 but failed to do so for more than two years, and then only after Florida Bar Counsel had sent numerous letters requesting that he comply.  *Id.* at 11-15.

17

Respondent agreed to a public reprimand. *Id.* at 5, 18. Though we acknowledge that violation, we do not give it much weight because the matter indicates that Respondent's delayed payment was affected by a serious auto accident and significant financial difficulties. *Id.* at 12-14.

B.    Respondent Should Be Suspended for Ninety Days Without a Fitness
      Requirement.

Respondent's misconduct was not isolated, innocent, or inadvertent. Rather, he deliberately and repeatedly disregarded his fundamental duty of confidentiality to Judicial Watch, his former client and employer, as part of his crusade against that organization. Although there was no proof that he actually disclosed Judicial Watch confidences, he flagrantly violated Rule 1.9 on three separate occasions, and throughout this proceeding has refused to acknowledge those improprieties. Thus, the informal admonition cases cited by Respondent in his brief to the Board (*In re Killingham*, *In re Lunsford*, and *In re Sofaer*) do not involve misconduct comparable to this case.

A thirty-day suspension was imposed in *In re Long*, 902 A.2d 1168, 1172 (D.C. 2006) (per curiam) where the respondent unknowingly engaged in a conflicting representation with the good intention of helping a friend, among other misconduct. Respondent's misconduct is more serious that *Long*, and also more serious than *In re Butterfield*, 851 A.2d 513, 514 (D.C. 2004) (per curiam), where the respondent was suspended for thirty days for his failure to perform a conflicts check and failure to withdraw once he learned of a conflict because he was

18

concerned about losing a new, potentially profitable client. *See In re Butterfield*, Bar Docket No. 264-99 at 29 (BPR June 10, 2003).

We find that Respondent's conduct is most similar to that in *In re Shay*, 756 A.2d 465, 466, 480-83 (D.C. 2000) (per curiam) (appended Board Report), where the respondent was suspended for ninety days for persisting in a conflicting representation for six years, compounded by dishonesty and lack of remorse, and *In re Jones-Terrell*, 712 A.2d 496, 500-02 (D.C. 1998) where the respondent was suspended for sixty days for a conflicting representation at a vulnerable client's expense coupled with dishonesty.

Although Respondent did not engage in dishonesty in either the underlying events or these proceedings, his conduct was as serious as that in *Shay* and *Jones-Terrell* because it was motivated by animus toward Judicial Watch. These were not three innocent mistakes by a busy lawyer who lost track of an old client. Indeed, Respondent never claimed that the conflict resulted from mistake, carelessness, or inadvertence. He also shows no remorse for his obvious misconduct. Instead, he argued to the Hearing Committee that he engaged in these three obviously conflicting representations pursuant to his ethical obligation under Rule 1.3 to zealously represent his new clients, who had been abandoned by Judicial Watch and would have been without representation were if not for him. The Hearing Committee rejected this argument, as do we. HC Rpt. 31.

To advance his personal crusade against Judicial Watch, Respondent "switched sides," and represented three individuals after representing Judicial

19

Watch in the same matters involving those same three people.  This vindictiveness strikes at the very heart of the attorney-client relationship, and deserves a serious sanction of ninety-day suspension.  We expect that this suspension will send a message to Respondent and others who may be similarly tempted to turn on former clients to whom they owe a continuing duty of confidentiality.

The Hearing Committee's fitness recommendation relied heavily on its finding that Respondent testified dishonestly and its consideration of prior discipline in Florida.  As discussed above, we do not find clear and convincing evidence that Respondent testified falsely, and we see the Florida discipline as less serious than the Hearing Committee saw it.  Although we find Respondent's lack of remorse troubling, it does not rise to the level of clear and convincing evidence of a serious doubt as to Respondent's ability to practice law following his suspension.  *See Cater*, 887 A.2d at 24.  We thus reject the Hearing Committee's recommendation that we impose a fitness requirement.

20

## IV.   CONCLUSION

Respondent violated Florida Rule 4-1.9(a) in Count I, and D.C. Rule 1.9 in Counts II and III of the Amended Specification of Charges.  We recommend that Respondent be suspended from the practice of law for ninety days.


BOARD ON PROFESSIONAL RESPONSIBILITY

By: _____
       Robert C. Bernius
       Chair


All members of the Board concur in this Report and Recommendation except Messrs. Bernstein and Kaiser, who are recused.

21