1

2

3

4

5

6

7

8

9          IN THE UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   KIARA ROBLES,                    Case No. 17-cv-04864-CW

13          Plaintiff,

14      v.                            ORDER GRANTING THE REGENTS'
                                      MOTION TO DISMISS; GRANTING
15   IN THE NAME OF HUMANITY, WE      BERKELEY'S MOTION TO DISMISS;
     REFUSE TO ACCEPT A FASCIST       AND GRANTING IN PART
16   AMERICA, et al.,                 MIRABDAL'S MOTION TO DISMISS
                                      OR STRIKE PURSUANT TO ANTI-
17          Defendants.               SLAPP STATUTE

18                                    (Dkt. Nos. 11, 16, 43)

19

20        Plaintiff Kiara Robles filed this suit against Defendants In

21   the Name of Humanity, We REFUSE to Accept a Fascist America

22   (ANTIFA), The Regents of the University of California (Regents),

23   University of California Police Department (UCPD), the City of

24   Berkeley (Berkeley), Ian Dabney Miller, Raha Mirabdal, and DOES

25   1-20.  Docket No. 15.  On October 2, 2017, Berkeley moved to

26   dismiss the complaint.  Docket No. 11.  On October 4, 2017, the

27   Regents also moved to dismiss the complaint.  Docket No. 16.  On

28   February 8, 2018, Mirabdal moved to dismiss the complaint or to

United States District Court
Northern District of California

strike it pursuant to the anti-SLAPP statute.  Docket No. 43.
The Court found these motions to dismiss suitable for disposition
on the papers.  Having reviewed the papers and the record, the
Court GRANTS Berkeley's motion to dismiss, GRANTS the Regents'
motion to dismiss, and GRANTS IN PART Mirabdal's motion to
dismiss or strike.

BACKGROUND

I.   Factual Background

Unless otherwise noted, the factual background is taken from
the complaint, which is assumed to be true for purposes of
Defendants' motions to dismiss or strike.

Robles is a resident of Oakland, California.  Complaint at
3.  On February 1, 2017, she planned to attend a speech by Milo
Yiannopoulos, a conservative gay media personality and political
commentator, which was hosted at the University of California
Berkeley (UC Berkeley) by a registered student organization.  Id.
3-4, ¶ 44.  The Regents controls, administers, and manages UC
Berkeley.  Id. ¶ 6.  Robles and others arrived at UC Berkeley's
Sproul Plaza to hear Yiannopoulos speak.  Id. at 3.

Around 1,500 protestors associated with ANTIFA also gathered
at Sproul Plaza.  Id.  According to Robles, ANTIFA is "a radical
American, left wing, anti-Trump, non-profit organization that
organizes demonstrations to achieve its political agenda."  Id.
at 4.  ANTIFA protestors soon "erupted into violence."  Id. at 3.
ANTIFA orchestrated the violence in order to disrupt the
Yiannopoulos event.  Id. ¶ 48.  While Robles was being
interviewed by news station KGO-TV about her thoughts related to
the event, protestors surrounded her "combatively" and yelled

2

United States District Court
Northern District of California

that she was a "fascist." <u>Id.</u> ¶ 49.  Robles was attacked by both masked and unmasked assailants with pepper spray and bear mace. <u>Id.</u> at 3, ¶¶ 50-51.

At the time of the attack, there were "no campus police close enough to Robles to protect her from her assaulter." <u>Id.</u> ¶ 52.  Robles alleges that "nearly 100 campus police and SWAT members waited in the Student Union building, within eyesight of the violence happening outside, watching the protestors become more belligerent and dangerous." <u>Id.</u> (emphasis omitted).  Robles alleges that officers from UCPD and the City of Berkeley Police Department (BPD) could see the attacks, yet they did not act to protect any of the victims.  <u>Id.</u> ¶ 54.

Soon after, Robles and others were again attacked by protestors.  Miller, an ANTIFA protestor, "struck" Robles "in the face and body with flagpoles" until she "was forced to escape by jumping over a metal barrier."  <u>Id.</u> ¶ 55.  Mirabdal, another ANTIFA protestor, and several unknown assailants "surrounded" her "combatively," and Mirabdal "shined a flashlight aggressively" in Robles' face, "blinding" her and "placing her in fear and apprehension of harm."  <u>Id.</u> ¶ 64.  Again, neither the UCPD or BPD assisted Robles or apprehended her attackers.  <u>Id.</u> ¶ 66.

II.  Procedural Background

On June 5, 2017, Robles filed a related suit, <u>Robles I</u>, against nearly all of the Defendants in the present suit -- the Regents, UCPD, BPD, ANTIFA, Miller and Mirabdal -- as well as several others -- Janet Napolitano, President of the University of California; Monica Lozano, Chair of the Regents; Nicholas Dirks, Chancellor of UC Berkeley; the Coalition to Defend

United States District Court
Northern District of California

Affirmative Action, Integration, & Immigrant Rights, and Fight
for Equality by Any Means Necessary; Jesse Arreguin, mayor of
Berkeley; Margo Bennett, Chief of the UCPD; Andrew Greenwood,
Chief of the BPD; John Burton, California Democratic Party
Chairman; Nancy Pelosi, Minority Leader of the House of
Representatives; George Soros, an individual; and DOES 1-20.
Robles I, Case No. 17-3235, Docket No. 1.  Id.  In her Robles I
complaint, she asserted claims for: (1) violation of First
Amendment rights under 42 U.S.C. § 1983; (2) violation of Equal
Protection rights under 42 U.S.C. § 1983; (3) negligence;
(4) gross negligence; (5) premises liability; (6) negligent
infliction of emotional distress; (7) intentional infliction of
emotional distress; (8) assault; (9) battery; and (10) violation
of Bane Act, California Civil Code section 52.1.  Id.  On July
13, 2017, BPD, Arreguin, and Greenwood moved to dismiss the
complaint.  Id., Docket No. 46.  On July 17, 2017, the Regents,
Bennett, Dirks, Lozano, and Napolitano also moved to dismiss the
complaint.  Id., Docket No. 51.  One day later, Soros moved to
dismiss the complaint.  Id., Docket No. 52.  Before the motions
could be decided, Robles requested that the undersigned
voluntarily recuse from the case.  Id., Docket No. 50.  This
request was denied on July 25, 2017.  Id., Docket No. 56.  On
that same day, Robles voluntarily dismissed the case.  Id.,
Docket No. 57.

Less than a month later, on August 22, 2017, Robles filed
the instant suit, Robles II, against the Regents, Berkeley, UCPD,
ANTIFA, Miller, and Mirabdal.  Docket No. 1.  Robles II involves
the same set of facts as Robles I and nearly the same set of

4

asserted claims, adding only one additional claim for a violation of the Ralph Act, California Civil Code section 51.7.  <u>Id.</u> Berkeley filed a motion to relate the two cases, which the Court granted.  <u>Robles I</u>, Case No. 17-3235, Docket Nos. 58, 59. Berkeley, the Regents, and Mirabdal have moved to dismiss or strike the complaint.  Docket Nos. 11, 16, 43.  On October 24, 2017, Miller filed an answer to the complaint.  Docket No. 26. The UCPD and ANTIFA have not filed an answer or motion to dismiss.[1]

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. <u>Twombly</u>, 550 U.S. at 555.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.

In considering whether the complaint is sufficient to state

[1] As Robles has not filed proof of service for these entities, the Court cannot determine whether these parties have been served within the ninety-day time limit of Federal Rule of Civil Procedure 4(m).  Robles shall file proof of service within fourteen days of this order.

United States District Court
Northern District of California

United States District Court
Northern District of California

a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1061 (9th Cir. 2008). The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the court may take judicial notice. Id. at 1061. However, the court need not accept legal conclusions, including threadbare "recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

DISCUSSION

I.   The Regents' Motion to Dismiss

Robles asserts nine claims against the Regents: violation of her First Amendment rights based on the Regents' alleged withholding of police protection; violation of equal protection based on her sexual orientation and political viewpoint; negligence; gross negligence; premises liability; negligent infliction of emotional distress; intentional infliction of

emotional distress; violation of California's Bane Act; and a claim for injunctive relief.  The Regents contend that all of these claims should be dismissed.

A.   Eleventh Amendment

The Regents first asserts that Robles' First Amendment and equal protection claims are barred by the Eleventh Amendment. Robles brings both of these claims pursuant to 42 U.S.C. § 1983, which creates a federal right of action against "[e]very person" who, under color of law, deprives a person of federal constitutional rights.  See 42 U.S.C. § 1983; Will v. Michigan Dep't of State Police, 491 U.S. 58, 68 (1989).  It is well-established that states and governmental entities considered "arms of the State" are immune from suits brought in federal court under the Eleventh Amendment and are not "persons" subject to suit under § 1983.  Will, 491 U.S. at 70-71; Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 (1984).  The Ninth Circuit has ruled on multiple occasions that the "Regents, a corporation created by the California constitution, is an arm of the state for Eleventh Amendment purposes, and therefore is not a 'person' within the meaning of section 1983."  Armstrong v. Meyers, 964 F.2d 948, 949-50 (9th Cir. 1992).  See also BV Eng'g v. Univ. of California, Los Angeles, 858 F.2d 1394, 1395 (9th Cir. 1988) (quoting Jackson v. Hayakawa, 682 F.2d 1344, 1360 (9th Cir. 1982)) (holding that the Regents is "considered to be an instrumentalit[y] of the state, and therefore enjoy[s] the same immunity as the state of California.") (internal quotation marks and citations omitted).  Thus, Robles' § 1983 claims against the Regents cannot be sustained.

The Eleventh Amendment also bars Robles' state law claims against the Regents.  The Eleventh Amendment bars state law claims which are brought into federal court under pendent jurisdiction.  Pennhurst State Sch. & Hosp., 465 U.S. at 121. This is because pendent jurisdiction, a judge-made doctrine of discretion based on considerations of efficiency, cannot override the Eleventh Amendment, a "constitutional limitation on the authority of the federal judiciary to adjudicate suits against the State."  Id. at 121-23.  Accordingly, Robles' state law claims against the Regents are also barred.

Robles argues that the Regents is not entitled to immunity under the Eleventh Amendment in this case because it was not functioning as an arm of the state.  Relying on the Ninth Circuit's decision in Doe v. Lawrence Livermore Nat. Lab., 65 F.3d 771, 775 (9th Cir. 1995), which was reversed by the Supreme Court in Regents of the Univ. of California v. Doe, 519 U.S. 425 (1997), Robles argues that the Regents "is an enormous entity which functions in various capacities and which is not entitled to Eleventh Amendment immunity for all of its functions."  Opp. at 6.  Robles contends that the Regents' intentional withholding of police protection during the event had nothing to do with any official functions, but rather the Regents' own personally held beliefs.

Robles' argument is misguided.  Even assuming that it was not overruled by the Supreme Court in Regents, the holding in Doe cited by Robles merely notes that there are exceptions to immunity for certain types of actions.  Doe, 65 F.3d at 775.  For example, the Doe court cited cases where immunity did not apply

United States District Court
Northern District of California

to the Regents because "Congress has abrogated [its] immunity from suit in federal court for violation of patent law" and it "waived its Eleventh Amendment immunity by signing a government contract that contemplated possible suits against it in federal court and by entering into a federally regulated area."  Id. Robles fails to explain why an exception applies to this situation.  Indeed, as discussed above, controlling Ninth Circuit precedent holds that the Regents "is an arm of the state for Eleventh Amendment purposes," "is not a 'person' within the meaning of section 1983," and therefore is immune to § 1983 claims.  See Armstrong, 964 F.2d at 949–50.  Robles does not provide any reason to depart from this precedent.  Her argument is about the Regents' intent in allegedly withholding police protection, but the Regent's intent is not relevant to the analysis.

Accordingly, the Eleventh Amendment bars all of Robles' claims against the Regents, which are dismissed from the case. The Court therefore need not discuss the Regents' other grounds for dismissal.

In a footnote, Robles seeks leave to amend her claims "to add the individual decision and policy makers responsible for ordering the stand-down to UCPD during the Mr. Yiannopoulos event."  Opp. at 6 n.14.  The Regents argues that amendment would be futile because Robles already named several individual defendants in Robles I, alleging no facts showing that these individuals acted in their personal capacities, and then did not name the individual defendants at all in Robles II.  Because it is not clear that amendment would be futile, Robles' request for

United States District Court
Northern District of California

leave to amend her claims against the Regents is granted.  Robles may attempt to avoid Eleventh Amendment immunity by alleging these claims against individual actors in their personal capacities.

II.  Berkeley's Motion to Dismiss

Berkeley moves to dismiss Robles' claims based on the following grounds: (1) with respect to the first and second claims, failure to state a claim for Monell liability; (2) with respect to the sixth, seventh, and tenth claims, failure to exhaust administrative remedies; and (3) with respect to the twelfth claim, failure to state a claim for injunctive relief.

A.  Monell liability

Robles brought her first and second claims against Berkeley pursuant to 42 U.S.C. § 1983, alleging that Berkeley violated her First and Fourteenth Amendment rights by willfully withholding police protection at the Yiannopoulos event.

Berkeley contends that Robles' § 1983 claims are not tenable because she does not allege that they were carried out according to a municipal policy or custom.  It is well-established that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Instead, a municipality only faces liability under § 1983 when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. Robles alleges that Berkeley police officers, at the direction of the Regents, chose to withhold their aid to the attendees of the

United States District Court
Northern District of California

event due to the officers' animus against those who do not subscribe to their "ultra-leftist, radical philosophies."  Opp. at 3-4 (quoting Complaint ¶¶ 25, 27-42).  Robles gives two alternative reasons for the Berkeley police officers' actions: they either followed the direction of the Regents or had personal animus against the event participants.  Neither shows that Berkeley implemented a custom or policy that caused Robles' constitutional injury.  Nor does Robles allege that Berkeley was deliberately indifferent to the fact that training or supervision was required to prevent constitutional violations.  Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 407 (1997). Accordingly, Robles' first and second claims must be dismissed.

B.   Government Tort Claims Act

Berkeley contends that Robles did not present her state law claims to the city prior to filing them in federal court, and thus did not administratively exhaust her claims.  Under the California Tort Claims Act, "a plaintiff must timely file a claim for money or damages with the public entity" before bringing suit against that entity."  California v. Superior Court of Kings County (Bodde), 32 Cal. 4th 1234, 1237 (2004) (citing Cal. Gov. Code § 900 et seq.).  "The failure to do so bars the plaintiff from bringing suit against that entity."  Id.  Moreover, because this is not only a procedural requirement, but "a condition precedent to plaintiff's maintaining an action against defendant," the plaintiff must plead compliance with this condition precedent in her complaint.  Id. at 1240.

Robles does not contest that she did not comply with the California Tort Claims Act.  Instead, she argues that she was not

required to do so because it would have been futile.  "A plaintiff need not pursue administrative remedies where the agency's decision is certain to be adverse." <u>Howard v. Cty. of San Diego</u>, 184 Cal. App. 4th 1422, 1430 (2010).  According to Robles, it would have been futile to seek administrative relief because a "favorable decision would force BPD to admit that they willfully ignored their sworn duties and withheld their services based on political and other biases." Opp. at 5.  This is insufficient to establish application of the futility exception, which requires a plaintiff to show "that the agency has declared what its ruling will be on a particular case." <u>Howard</u>, 184 Cal. App. 4th at 1430 (internal quotation marks and brackets omitted). Robles does not allege that Berkeley ever declared that it would reject her claims.  Berkeley's actions giving rise to Robles' claims cannot also serve as Berkeley's rejection of those same claims.  Thus, the futility exception does not apply here and Robles' state law claims against Berkeley must be dismissed.

C.   Injunctive Relief Claim

Berkeley correctly contends that Robles' twelfth claim, for injunctive relief, is improper because injunctive relief is a remedy, not a cause of action.  <u>Ajetunmobi v. Clarion Mortg. Capital, Inc.</u>, 595 F. App'x 680, 684 (9th Cir. 2014). Accordingly, it must be dismissed.

In sum, all of Robles' claims against Berkeley must be dismissed.  The Court grants Robles leave to amend her first and second claims to attempt to state a claim for <u>Monell</u> liability. Because Robles concedes that she did not present her claims to the city pursuant to the California Tort Claims Act, and the

12

Court has already found that it would not have been futile to do so, amendment of her sixth, seventh, and tenth claims would appear to be futile.  Thus, the Court will not grant leave to amend these claims.[2]  The Court also will not grant leave to amend the twelfth claim for injunctive relief because amendment would be futile.

## III. Mirabdal's Motion to Dismiss or Strike

### A.   Motion to Dismiss

Mirabdal asserts that the complaint fails sufficiently to plead the assault, battery, and Bane Act claims asserted against her.  The only factual allegations in the complaint that directly refer to Mirabdal are as follows:

> 62. Mirabdal was also present at the Milo Yiannopoulos event.

> 63. Mirabdal is a member of the radical American, left wing, anti-Trump, non-profit organization funded by George Soros, ANTIFA, and carried out the assault on Plaintiff Robles at the direction of ANTIFA and in concert with each and every Defendant.

> 64. After Mirabdal and several unknown assailants surrounded Plaintiff Robles combatively, Mirabdal shined a flashlight aggressively in Plaintiff Robles' face, blinding Plaintiff Robles and placing her in fear and apprehension of harm.

> 65. Mirabdal further beat peaceful Milo Yiannopoulos supporters with a wooden sign post during the UC Berkeley riot.

In short, Robles alleges only that Mirabdal "surrounded" her "combatively" and "shined a flashlight aggressively" in her face, "blinding" her and "placing her in fear and apprehension of

---

[2] Robles may, however, seek leave to amend if she can allege new facts showing compliance with the California Tort Claims Act. Cf. California, 32 Cal. 4th at 1243-44 (discussing mechanisms to present a late claim).

United States District Court
Northern District of California

harm."

### 1. Battery

In California, the elements of battery are: "(1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching." Lawrence v. City & Cty. of San Francisco, 258 F. Supp. 3d 977, 998 (N.D. Cal. 2017) (quoting So v. Shin, 212 Cal. App. 4th 652, 669 (2013)).

Mirabdal contends that the complaint fails to state a claim for battery because it does not allege that Mirabdal actually touched Robles. Robles responds that a defendant need not directly touch the plaintiff; rather, "any forcible contact brought about by an object or substance thrown or launched or set in motion by a defendant" could satisfy the touch requirement. Inter-Ins. Exch. of Auto. Club of S. Cal. v. Lopez, 238 Cal. App. 2d 441, 445 (1965). Robles' theory of liability is that Mirabdal caused the flashlight's beam to "touch" Robles.

Robles' theory appears to raise an issue of first impression: whether shining a light beam at someone constitutes touching sufficient to satisfy the first element of battery under California law. Courts have held that tobacco smoke, as "particulate matter," has the physical properties capable of making contact. See, e.g., Leichtman v. WLW Jacor Communications, 92 Ohio App. 3d 232, 235 (1994). Mirabdal argues, however, that light, unlike smoke, is intangible. She further argues that tort law "has long distinguished between

United States District Court
Northern District of California

tangible and intangible invasions and has deemed invasions by light to be the latter." In re WorldCom, Inc., 546 F.3d 211, 219 (2d Cir. 2008). Thus, "it is not trespass to project light, noise or vibrations" -- i.e., intangible invasions -- "across or onto the land of another." Id.

The Court does not find Mirabdal's distinction between light and smoke to be persuasive. The Supreme Court has stated in the context of criminal battery that common-law battery may be accomplished by using an intangible substance, such as light. See United States v. Castleman, 134 S. Ct. 1405, 1414-15 (2014) ("'[A] battery may be committed by administering a poison or by infecting with a disease, or even by resort to some intangible substance,' such as a laser beam.").

A Virginia Court of Appeals case considering a similar issue is instructive. In Adams v. Virginia, the court considered whether shining a laser at someone constitutes touching for the purpose of the crime of battery. 33 Va. App. 463, 469 (2000). There, the court noted:

> Because substances such as light or sound become elusive when considered in terms of battery, contact by means of such substances must be examined further in determining whether a touching has occurred. Such a test is necessary due to the intangible nature of those substances and the need to limit application of such a principle (touching by intangible substances) to reasonable cases. Because the underlying concerns of battery law are breach of the peace and sacredness of the person, the dignity of the victim is implicated and the reasonableness and offensiveness of the contact must be considered. Otherwise, criminal convictions could result from the routine and insignificant exposure to concentrated energy that inevitably results from living in populated society.

Id. at 469-70. Accordingly, the court held that "for purposes of determining whether a battery has occurred, contact by an

United States District Court
Northern District of California

intangible substance such as light must be considered in terms of its effect on the victim" and "to prove a touching, the evidence must prove that the substance made objectively offensive or forcible contact with the victim's person resulting in some manifestation of a physical consequence or corporeal hurt." Id. at 470.

The same reasoning applies to the tort of battery, which should be limited to reasonable cases. Thus, because the contact here was effected by an intangible substance, light, the Court will closely scrutinize whether the substance "made objectively offensive or forcible contact with the victim's person resulting in some manifestation of a physical consequence or corporeal hurt," which goes to the third and fourth elements of battery. See id. It is conceivable that an intangible substance could cause "some manifestation of physical consequence or corporeal hurt"; for example, a high-intensity laser directed at a person's eye could cause lasting physical harm to the eye. Where an intangible substance causes no physical harm, however, it is unlikely to be offensive in a reasonably objective way.

Here, Robles alleges that Mirabdal shined a flashlight beam at her, "blinding" her. Complaint ¶ 64. If Robles was "blinded" such that she suffered serious, permanent physical eye injury, then that would undoubtedly constitute physical harm, as Robles suggests. Opp at 4. However, this allegation appears to be figurative rather than literal. As a result, Robles has not plead that she was harmed by the contact. Accordingly, Robles' battery claim must be dismissed with leave to amend.

United States District Court
Northern District of California

2.   Assault

In California, a claim for assault requires a plaintiff to show: "(1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm." Lawrence, 258 F. Supp. 3d at 998 (quoting So, 212 Cal. App. 4th at 668–69).

Mirabdal contends that the complaint does not allege that she intentionally threatened to touch Robles in a harmful or offensive manner, nor does it allege that Robles reasonably believed she was about to be touched in a harmful or offensive manner or that it reasonably appeared to her that Robles was about to carry out the threat.  Robles responds that the complaint alleges Mirabdal aggressively shined a flashlight in her eyes and that Mirabdal, along with others, "surrounded" her "combatively."[3]  These allegations do not, however, show that Mirabdal committed a "demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present." Plotnik v. Meihaus, 208 Cal. App. 4th 1590, 1603–04 (2012).  In Plotnik, defendants approached the plaintiff

---

[3] Robles' allegation that Mirabdal beat other individuals with a wooden sign post is inapposite because Robles does not contend that Mirabdal did so in a way that threatened Robles.

United States District Court
Northern District of California

"aggressively" and threatened to beat and kill him.   Id. at 1604.
The court held that, while the defendants' "actions and words
were aggressive and threatening," they did not commit an act that
"could or was intended to inflict immediate injury on Plotnik."
Id. (internal punctuation and brackets omitted).   The defendants
did not display a weapon, take a swing at him, or otherwise
attempt to touch him.   Id.

     The same is true here.   Robles's allegations do not
establish that Mirabdal committed an act that could or was
intended to inflict immediate injury on Robles.   Mirabdal's
alleged acts surrounding Robles "combatively" and shining a
flashlight in her face were not intended to inflict immediate
injury on Robles.   Nor were those acts threats to do so.
Moreover, as discussed above, Robles has not established that
shining a flashlight at her constitutes harmful contact or
contact that is offensive in an objectively reasonably way.   It
follows that Mirabdal's acts leading up to shining the flashlight
at Robles cannot constitute an act with intent to cause harmful
or offensive contact, or a threat to touch Robles in a harmful or
offensive manner.   Thus, this claim must be dismissed with leave
to amend.

          3.   Bane Act

     The Bane Act authorizes a civil action for damages,
injunctive relief, and other appropriate equitable relief against
a person who "interferes by threat, intimidation, or coercion, or
attempts to interfere by threat, intimidation, or coercion, with
the exercise or enjoyment by any individual or individuals of
rights secured by the Constitution or laws of the United States,

or of the rights secured by the Constitution or laws of this state."  Cal. Civ. Code § 52.1(a) and (b).  The Bane Act "was intended to address only egregious interferences with constitutional rights, not just any tort."  Shoyoye v. Cty. of Los Angeles, 203 Cal. App. 4th 947, 959 (2012).  "The act of interference with a constitutional right must itself be deliberate or spiteful."  Id.

Robles alleges that Mirabdal's acts of surrounding her and thus preventing her escape and shining a flashlight at her interfered with her right to assemble peacefully.  Mirabdal challenges that the allegations involving herself do not rise to the level of "threat, intimidation, or coercion" sufficient to state a claim under the Bane Act.  But Mirabdal cites no case supporting her argument.  Mirabdal's motion to dismiss this claim must be denied.

B.   Motion to Strike

The California anti-SLAPP statute provides for a "special motion to strike" for a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech," "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Code Civ. Proc. § 425.16.  The anti-SLAPP statute applies in federal court.  U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 973 (9th Cir. 1999).

To resolve an anti-SLAPP motion, the court engages in a two-step process.  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action

United States District Court
Northern District of California

is one arising from protected activity." <u>Jarrow Formulas, Inc.</u> <u>v. LaMarche</u>, 31 Cal. 4th 728, 733 (2003).  The defendant has the burden to show that her acts were "taken in furtherance of [her] right of petition or free speech under the United States or California Constitution in connection with a public issue." <u>Id.</u> "If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." <u>Id.</u>

Mirabdal asserts that she was engaging in a protected activity, protesting against Yiannopoulos.  Section 425.16(e) of the anti-SLAPP statute provides for four types of protected activity.  Mirabdal's alleged conduct, shining a flashlight at Robles or surrounding her combatively, was not a written or oral statement, and so it does not qualify under subsections one through three, leaving only the possibility of subsection four. § 425.16(e).  Mirabdal does not explain how shining a flashlight at Robles or surrounding her combatively constitutes "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e).  As a result, she has not satisfied her burden of showing that she engaged in a protected activity and her motion must be denied.

CONCLUSION

The Court GRANTS Berkeley's motion to dismiss (Docket No. 11), GRANTS the Regents' motion to dismiss (Docket No. 16), and GRANTS IN PART Mirabdal's motion to dismiss or strike (Docket No. 43).  Robles may file an amended complaint as permitted by this

order within twenty-one days.

    Robles shall file proof of service within fourteen days of this order.

    IT IS SO ORDERED.


Dated: June 4, 2018

_____
CLAUDIA WILKEN
United States District Judge