1

BRADLEY S. PHILLIPS (SBN 85263)
brad.phillips@mto.com

2

MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue

3

Fiftieth Floor
Los Angeles, California 90071-3426

4

Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

5

6

BRYAN H. HECKENLIVELY (SBN 279140)
bryan.heckenlively@mto.com

7

ELIZABETH A. KIM (SBN 295277)
elizabeth.kim@mto.com

8

MUNGER, TOLLES & OLSON LLP
560 Mission Street

9

Twenty-Seventh Floor
San Francisco, California 94105-2907

10

Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

CHARLES F. ROBINSON (SBN 113197)
charles.robinson@ucop.edu
MARGARET L. WU (SBN 184167)
margaret.wu@ucop.edu
UNIVERSITY OF CALIFORNIA
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA  94607-5200
Telephone:     (510) 987-9800
Facsimile:     (510) 987-9757

11

12

Attorneys for Defendants THE REGENTS OF
THE UNIVERSITY OF CALIFORNIA, JANET
NAPOLITANO, AND NICHOLAS DIRKS

13

UNITED STATES DISTRICT COURT

14

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

15

16

KIARA ROBLES,

17

Plaintiff,

18

vs.

19

IN THE NAME OF HUMANITY, WE
REFUSE TO ACCEPT A FASCIST

20

AMERICA (A.K.A. ANTIFA), et al.,

21

Defendants.

22

23

Case No. 4:17-cv-04864 CW

**NOTICE OF MOTION AND MOTION TO
DISMISS FIRST AMENDED
COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

Date:       Sept. 4, 2018
Time:       2:30 p.m.
Judge:      Hon. Claudia Wilken

Trial Date:        None Set

24

25

26

27

28

3:17-cv-04864

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................1

I.      INTRODUCTION................................................................................................................1

II.     BACKGROUND..................................................................................................................3

        A.      Factual Background................................................................................................3

        B.      Procedural Background ..........................................................................................5

III.    LEGAL STANDARD ..........................................................................................................5

IV.     ARGUMENT .......................................................................................................................6

        A.      Plaintiff's Section 1983 Claims and State-Law Claims Against UCPD and
                the UC Defendants in Their Official Capacities Are Barred..................................6

                1.      Plaintiff's Section 1983 Claims Against UCPD and the UC
                        Defendants in Their Official Capacities Are Barred....................................6

                2.      All State-Law Claims Against UCPD and the Individual Defendants
                        in Their Official Capacities Are Barred by the Eleventh Amendment .........7

        B.      Plaintiff's State-Law Claims Must Be Dismissed Under State Law........................8

        C.      Plaintiff Fails to Plead Facts Sufficient to State a First Amendment Claim ...........11

        D.      Plaintiff Fails to Plead Facts Sufficient to State an Equal-Protection Claim ..........13

        E.      Plaintiff's Claims Against UC Defendants in Their Personal Capacities
                Must Be Dismissed................................................................................................15

                1.      Plaintiff Does Not Allege Facts Sufficient to Show that UC
                        Defendants Acted in Their Personal Capacities ..........................................15

                2.      The UC Defendants Are Entitled to Qualified Immunity from
                        Damages Claims........................................................................................16

        F.      Plaintiff Fails to State a Claim for Punitive Damages..............................................18

        G.      Plaintiff's Claims Should Be Dismissed with Prejudice ..........................................19

V.      CONCLUSION ...................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Actmedia, Inc. v. Stroh*,
   830 F.2d 957 (9th Cir. 1986) .................................................................................7

*Alexander v. Univ. of N. Fla.*,
   39 F.3d 290 (11th Cir. 1994) (per curiam) ...........................................................18

*Almond Hill Sch. v. U.S. Dep't of Agric.*,
   768 F.2d 1030 (9th Cir. 1985) ...............................................................................7

*Armstrong v. Meyers*,
   964 F.2d 948 (9th Cir. 1992) .................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................................6, 11

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994), overruled on other grounds *by Galbraith v. Cnty.*
   *of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ...................................................3

*BV Eng'g v. Univ. of Cal., L.A.*,
   858 F.2d 1394 (9th Cir. 1988) ...........................................................................6, 7

*Carvalho v. Equifax Info. Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010) ...............................................................................19

*City of Newport v. Fact Concerts, Inc.*,
   453 U.S. 247 (1981) .............................................................................................18

*Clark v. Ca. Dep't of Forestry & Fire Prot.*,
   212 F. Supp. 3d 808 (N.D. Cal. 2016) ................................................................15

*Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*,
   644 F. Supp. 2d 1177 (N.D. Cal. 2009) ..............................................................17

*Cousins v. Lockyer*,
   568 F.3d 1063 (9th Cir. 2009) ...............................................................................5

*Davison ex rel. Sims v. Santa Barbara High Sch. Dist.*,
   48 F. Supp. 2d 1225 (C.D. Cal. 1998) ...............................................................8, 9

*DeShaney v. Winnebago County Department of Social Services*,
   489 U.S. 189 (1989) ..................................................................................11, 12, 17

*Edelman v. Jordan*,
   415 U.S. 651 (1974) ...............................................................................................7

1

## **TABLE OF AUTHORITIES**
### (Continued)

2

**Page**

3   *FDIC v. Henderson*,
        940 F.2d 465 (9th Cir. 1991)................................................................13

4

5   *Felarca v. Birgenau*,
        891 F.3d 809 (9th Cir. 2018)................................................................16

6

7   *Found. v. Covino*,
        No. 16-CV-03474 (C.D. Cal. Dec. 12, 2016), Dkt. No. 87.........................12

8   *Fresquez v. Cnty. of Stanislaus*,
        No. 13-cv-1897-AWI-SAB, 2014 WL 1922560 (E.D. Cal. May 14, 2014) ...............9

9

10  *Gant v. Cnty. of L.A.*,
        772 F.3d 608 (9th Cir. 2014)................................................................5

11  *Gina v. Las Vegas Metro. Police Dept.*,
        40 F.3d 1041 (9th Cir. 1994)................................................................12

12

13  *Hafer v. Melo*,
        502 U.S. 21 (1991)................................................................15

14

15  *Haitian Refugee Ctr., Inc. v. Baker*,
        953 F.2d 1498 (11th Cir. 1992)................................................................12

16  *Harlow v. Fitzgerald*,
        457 U.S. 800 (1982) ................................................................16

17

18  *Hope v. Pelzer*,
        536 U.S. 730 (2002) ................................................................16

19

20  *Icon Groupe, LLC v. Wash. Cnty.*,
        948 F. Supp. 2d 1202 (D. Or. 2013)................................................................14

21  *Ileto v. Glock Inc.*,
        349 F.3d 1191 (9th Cir. 2003)................................................................6

22

23  *Jackson v. Hayakawa*,
        682 F.2d 1344 (9th Cir. 1982)................................................................6

24

25  *Kisela v. Hughes*,
        138 S. Ct. 1148 (2018) (per curiam) ................................................................16

26  *Krainski v. Nev. ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*,
        616 F.3d 963 (9th Cir. 2010)................................................................16

27

28  *Lopez v. Cnty. of L.A.*,
        No. 15-01745 MMM, 2015 WL 3913263 (C.D. Cal. June 25, 2015)........................9

1

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

2

<u>Page</u>

3

*Love v. Hensley*,
   No. 09cv1788 BTM (NLS), 2010 WL 1626117 (S.D. Cal. Apr. 21, 2010).............................13

4

5

*Melendez-Garcia v. Sanchez*,
   629 F.3d 25 (1st Cir. 2010) .........................................................................................17

6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008).......................................................................................5

7

8

*Mihan v. Regents of the Univ. of California*,
   No. 16-cv-01390-KJM, 2016 WL 6875911 (E.D. Cal. Nov. 21, 2016).......................6

9

10

*Mitchell v. Dupnik*,
   75 F.3d 517 (9th Cir. 1996) .........................................................................................18

11

*Nelson v. Streeter*,
   16 F.3d 145 (7th Cir. 1994) .........................................................................................12

12

13

*Nicole M. ex rel. Jacqueline M. v. Martinez Unified Sch. Dist.*,
   964 F. Supp. 1369 (N.D. Cal. 1997) .............................................................................9

14

15

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ....................................................................................................16

16

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ........................................................................................................7

17

18

*Peralta v. Cal. Franchise Tax Bd.*,
   124 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................................15

19

*Pietrangelo v. Alvas Corp.*,
   664 F. Supp. 2d 420 (D. Vt. 2009), *aff'd*, 487 F. App'x 629 (2d Cir. 2012) ............12

20

21

*Rosenbaum v. City & Cnty. of S.F.*,
   484 F.3d 1142 (9th Cir. 2007)......................................................................................14

22

23

*Saucier v. Katz*,
   533 U.S. 194 (2001) ...............................................................................................16, 17

24

25

*Scott v. Cal. State Lotto*,
   19 F.3d 1441 (9th Cir. 1994)........................................................................................15

26

*Smith v. Wade*,
   461 U.S. 30 (1983) .......................................................................................................19

27

28

*Steshenko v. Albee*,
   42 F. Supp. 3d 1281 (N.D. Cal. 2014) ..........................................................................7

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Switzer v. Weaver*,
  No. 5:12cv00057, 2012 WL 6964863 (W.D. Va. Nov. 5, 2012), *aff'd*, 521 F.
  App'x 208 (4th Cir. 2013) ........................................................................13

*Tan v. Univ. of Cal. S.F.*,
  No. 06-04697 TEH, 2007 WL 963223 (N.D. Cal. Mar. 29, 2007) ...........................18

*Tater-Alexander v. Amerjan*,
  No. 1:08-cv-00372 OWW SMS, 2011 WL 319012 (E.D. Cal. Jan. 28, 2011) ........................12

*United States ex rel. Juan v. Regents of the University of California*,
  No. 4:16-cv-04934-CW, slip op. (N.D. Cal. July 3, 2018) ...................................6, 7

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) ........................................................................13

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) ........................................................................18

*White v. Pauly*,
  137 S. Ct. 548 (2017) (per curiam) .........................................................16

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) .................................................................6, 7, 18

*Yassin v. Corr. Corp. of Am.*,
  No. 11cv0421 LAB (JMA), 2011 WL 4501403 (S.D. Cal. Sept. 27, 2011) ...........................13

*Ex Parte Young*,
  209 U.S. 123 (1908) .........................................................................7

**STATE CASES**

*Austin B. v. Escondido Union Sch. Dist.*,
  149 Cal. App. 4th 860 (2007) ...............................................................11

*Gates v. Superior Court*,
  32 Cal. App. 4th 481 (1995) ..............................................................9, 10

*Miklosy v. Regents of the Univ. of Cal.*,
  44 Cal. 4th 876 (2008) .......................................................................8

*Palmer v. Regents of the Univ. of Cal.*,
  107 Cal. App. 4th 899 (2003) .................................................................8

*Zelig v. Cnty. of L.A.*,
  27 Cal. 4th 1112 (2002) .....................................................................10

# TABLE OF AUTHORITIES
**(Continued)**

**Page**

**FEDERAL STATUTES**

42 U.S.C. § 1983 ................................................................................ *passim*

**STATE STATUTES**

Cal. Civ. Code § 52 ...............................................................................10

Cal. Civ. Code § 52.1 ...................................................................4, 7, 8, 10

Cal. Civ. Code § 3294 .............................................................................19

Cal. Gov't Code § 811.2............................................................................8

Cal. Gov't Code § 815(a) ..........................................................................8

Cal. Gov't Code §§ 815(a), 820.2, and 845 .............................................19

Cal. Gov't Code § 818...........................................................................18, 19

Cal. Gov't Code § 820.2...........................................................................8, 9

Cal. Gov't Code § 845 ...........................................................................8, 9, 10

**OTHER AUTHORITIES**

May, Patrick, *UC Berkeley Riot Raises Questions About Free Speech*, The Mercury
    News, Feb. 2, 2017................................................................................3

Sommerfeldt, Chris, *Violent Protests at Berkeley College Prompt Cancellation of
    Speech by Right-Wing Writer Milo Yiannopoulos*, N.Y. Daily News, Feb. 2,
    2017 ..................................................................................................4

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on Sept. 4, 2018, at 2:30 p.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Claudia Wilken, located at 1301 Clay Street, Oakland, California, Defendants Janet Napolitano, Nicholas Dirks, and The Regents of the University of California will and hereby do move to dismiss Plaintiff's First Amended Complaint. This motion is made pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, all pleadings and papers on file, and such other matters as may be presented to this Court.

## STATEMENT OF RELIEF SOUGHT

Defendants seek an order pursuant to Rule 12(b)(6) dismissing with prejudice the First Amended Complaint and each of its causes of action for failure to state a claim for relief.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This Court dismissed Plaintiff Kiara Robles' original Complaint against The Regents on June 4, 2018.  ("MTD Order," Dkt. 51).  More specifically, the Court held that "the Eleventh Amendment bars all of Robles' claims against The Regents, which are dismissed from the case." (MTD Order at 9.)  The Court granted Plaintiff leave to amend to add "individual decision and policy makers," to "attempt to avoid Eleventh Amendment immunity."  (*Id.* at 9-10.)  Robles has failed to do so.  The FAC adds no relevant factual allegations, but instead merely names Janet Napolitano, the President of the University of California, and Nicholas Dirks, the former Chancellor of the University of California, Berkeley, as defendants in their "individual" capacities. But the FAC alleges no facts showing that either Napolitano or Dirks acted in anything other than their official capacities.  Nor can Robles evade the Court's clear conclusion that the Eleventh Amendment bars all of her claims against The Regents by naming the University of California Police Department ("UCPD") as a defendant.  UCPD is merely a component of The Regents and is therefore also entitled the Eleventh Amendment immunity.  Despite being afforded an opportunity to amend, Plaintiff has not and cannot state a claim against the UC Defendants. Plaintiff's claims against the UC Defendants must therefore be dismissed with prejudice.

1    As set forth in the Court's June 4, 2018 order, Plaintiff asserts that the UC Defendants,

2  among others, are liable for failing to protect her during a violent protest that occurred on the UC

3  Berkeley campus in February 2017.  According to Plaintiff, the UC Defendants' failure to provide

4  adequate police protection during the protests caused her to be attacked by assailants.  She alleges

5  that the UC Defendants violated her First Amendment and equal-protection rights and a variety of

6  state law rules.

7    This is the second time she has been before this Court asserting claims against the UC

8  Defendants arising from the same incident.  *See Robles v. The Regents of the University of*

9  *California et al.*, No. 17-cv-03235 (N.D. Cal. filed June 5, 2017) ("*Robles I*").  The UC

10  Defendants (along with a number of other University of California officials named as defendants

11  in *Robles I*) prepared and filed a motion to dismiss Robles' complaint in that action.  As is the case

12  here, Robles named Defendants Napolitano and Dirks, but failed to allege any facts demonstrating

13  that either Napolitano or Dirks acted in their personal capacities.  Before Robles' response was

14  due, the Court denied Robles' request for voluntary recusal by the Court.  Robles voluntarily

15  dismissed that action within hours of the Court's order denying recusal and then filed the present

16  action less than a month later.

17    Just as they were in *Robles I* and in Plaintiff's original Complaint in this action, all of

18  Plaintiff's claims against UCPD, and by extension The Regents, are barred by the Eleventh

19  Amendment and/or the text of 42 U.S.C. § 1983 for the reasons the Court cited in the June 4 order.

20  Plaintiff asserts new claims against Defendants Napolitano and Dirks in their personal capacities,

21  but she fails to allege sufficient facts to state such a claim.  Even if she could, the individual UC

22  Defendants are entitled to qualified immunity.  To the extent Plaintiff's claims against the

23  individual UC Defendants could be construed as claims against them in their official capacities, all

24  of her damages claims are also barred.

25    There are also several other, independent grounds for dismissal of particular claims.  *First*,

26  Plaintiff's state-law claims are barred by California's Government Claims Act.  *Second*, Plaintiff

27  fails to state a claim for relief, on the merits, under the First Amendment and the equal-protection

28  clause of the Fourteenth Amendment.  Her First Amendment claim fails because the UC

1    Defendants had no constitutional obligation to prevent third parties from interfering with

2    Plaintiff's First Amendment rights, and her equal-protection claim fails because she does not

3    allege any instance involving similar circumstances in which the UC Defendants acted differently.

4    *Third*, Plaintiff fails to state a claim against the individual UC Defendants in their personal

5    capacities.  *Fourth*, Plaintiff's prayer for punitive damages should be dismissed as legally

6    unavailable and insufficiently pled.

7            Plaintiff has now demonstrated multiple times that she cannot cure these legal deficiencies

8    by amendment and the FAC should be dismissed with prejudice.  Plaintiff did not cure any of

9    these legal deficiencies when she filed her original complaint in this action, even though UC had

10   raised all of them in a motion to dismiss the nearly identical complaint in *Robles I*.  Now the Court

11   has given her yet another opportunity to amend, and Plaintiff has made no changes other than to

12   drop The Regents and re-add two of the defendants from *Robles I*.  She has amply demonstrated

13   that further amendment would be futile, and her claims should be dismissed with prejudice.

14   **II.    BACKGROUND**

15          **A.    Factual Background**

16          Assuming that all facts alleged in Plaintiff's FAC are true for purposes of this motion only,

17   the Berkeley College Republicans invited Milo Yiannopoulos, a well-known conservative

18   commentator, to speak on the UC Berkeley campus on February 1, 2017.  (FAC at 3; *id.* ¶ 47.)  On

19   the evening of Yiannopoulos's scheduled speech at UC Berkeley, "nearly 100 police officers and

20   SWAT officers" secured the Student Union building.  (*Id.* ¶ 57.)  Over 1,500 protestors gathered at

21   Sproul Plaza, outside the Student Union building where Yiannopoulos was scheduled to speak.

22   (*Id.* ¶ 50.)  The protest became violent, with reports of skirmishes, and protestors setting fires and

23

24

25

26

27

28

1   throwing commercial-grade fireworks at police officers.[1]  In light of the escalating violence, the

2   University cancelled the speech.[2]

3       Plaintiff was on the UC Berkeley campus to attend the Yiannopoulos event.  (FAC ¶ 46.)

4   Plaintiff alleges that, during the violent protest, unknown assailants sprayed her in the face with

5   pepper spray and bear mace and other protestors, including Defendant Ian Miller, struck her with

6   flagpoles.  (*Id.* ¶¶ 53-55.)  According to Robles, there were no police officers in the immediate

7   vicinity to protect her, arrest her assailants, or offer assistance after she was attacked.  (*Id.* ¶ 56.)

8   Plaintiff asserts that the UC Defendants, acting in concert with the other Defendants, intentionally

9   withheld police protection because of her sexual orientation and political views.  (*Id.* ¶¶ 75-76, 79,

10  87, 89.)  Plaintiff further claims that The Regents, acting in concert with the other Defendants,

11  directed unknown and unnamed assailants to attack her during the protests.  (*See, e.g.*, *id.* ¶ 121.)

12      Robles purports to state six claims for relief against the UC Defendants.  First, she pleads a

13  claim for violation of the First Amendment, pursuant to 42 U.S.C. § 1983, based on the UC

14  Defendants' alleged withholding of police protection during the Yiannopoulos protests.  (FAC

15  ¶¶ 85-92.)  Second, she pleads a claim for violation of equal protection, pursuant to 42 U.S.C.

16  § 1983, alleging that the UC Defendants withheld police protection on the basis of her sexual

17  orientation and political viewpoint.  (*Id.* ¶¶ 93-101.)  Third, she pleads claims for negligence,

18  gross negligence, and intentional infliction of emotional distress—all without statutory basis—

19  based on the UC Defendants' alleged withholding of police protection.  (*Id.* ¶¶ 102-117.)  Fourth,

20  she pleads a claim for violation of California's Bane Act, Cal. Civ. Code § 52.1, alleging that the

21  UC Defendants acted in concert with Defendants Miller, Mirabdal, In the Name of Humanity, We

22  Refuse to Accept A Fascist American ("ANTIFA"), and unknown assailants to threaten and attack

23

24  ───────────────

25  [1] *See* Patrick May, *UC Berkeley Riot Raises Questions About Free Speech*, The Mercury News, Feb. 2, 2017.  The Court may consider documents "whose contents are alleged in [the] complaint and whose authenticity no party questions." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994),

26  *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Plaintiff relies on the contents of this article in her FAC.  (FAC at 21 n.68.)

27  [2] *See* Chris Sommerfeldt, *Violent Protests at Berkeley College Prompt Cancellation of Speech by Right-Wing Writer Milo Yiannopoulos*, N.Y. Daily News, Feb. 2, 2017.  Plaintiff also relies on the

28  contents of this article.  (FAC ¶ 63 n.61.)

her.  (*Id.* ¶¶ 134-41.)  Robles further requests general, special, actual, compensatory, and punitive damages; and equitable, declaratory, and injunctive relief.

### B.   Procedural Background

Plaintiff filed the related action *Robles I* on June 5, 2017.  Defendants City of Berkeley, Jesse Arreguin, and Andrew Greenwood filed a motion to dismiss on July 13, 2017.  On July 17, 2017, Plaintiff filed a request for voluntary recusal.  The Regents and other University officials named as defendants filed a motion to dismiss the next day, and Defendant George Soros filed a motion to dismiss and a motion to revoke Plaintiff's counsel's pro hac vice admission on July 19, 2017.  On July 20, 2017, the Court notified the parties that all three motions to dismiss and the motion to revoke pro hac vice admission would be decided on the papers and vacated the hearing dates.  On July 25, 2017, the Court denied Plaintiff's request for voluntary recusal, and Plaintiff filed a notice of voluntary dismissal within hours of the Court's order.

Less than a month later, on August 22, 2017, Plaintiff filed the instant action.  On September 20, 2017, Defendant City of Berkeley filed a motion to revoke Plaintiff's counsel's pro hac vice admission.  On September 20, 2017, The Regents filed an administration motion to relate the instant case to *Robles I*, based on the nearly identical complaints and substantial overlap in named Defendants.  Plaintiff failed to oppose the motion, and the Court granted The Regents' motion on September 28, 2017.

The Regents moved to dismiss Plaintiff's original Complaint on October 4, 2017 (Dkt. 11).  The Court granted The Regents' motion on June 4, 2018.  (Dkt. 51.)  Plaintiff filed the FAC on June 25, 2018 (Dkt. 58).

## III.   LEGAL STANDARD

A defendant is entitled to dismissal under Rule 12(b)(6) "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a complaint must plead facts "to state a claim to relief that is plausible on its face."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009).

1      In evaluating a Rule 12(b)(6) motion, the Court accepts as true all material facts alleged in

2  the complaint and construes them in the light most favorable to the non-moving party. *Gant v.*

3  *Cnty. of L.A.*, 772 F.3d 608, 614 (9th Cir. 2014). The Court does not accept as true "unreasonable

4  inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v.*

5  *Glock Inc*., 349 F.3d 1191, 1200 (9th Cir. 2003). "Threadbare recitals of the elements of a cause of

6  action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662,

7  678 (2009).

## IV.   <u>ARGUMENT</u>

### A.   <u>Plaintiff's Section 1983 Claims and State-Law Claims Against UCPD and the UC Defendants in Their Official Capacities Are Barred</u>

#### 1.   **Plaintiff's Section 1983 Claims Against UCPD and the UC Defendants in Their Official Capacities Are Barred**

12      Robles purports to bring her First Amendment and equal-protection claims against the UC

13  Defendants under 42 U.S.C. § 1983, which creates a right of action against "[e]very person" who,

14  under color of state law, violates a party's federal rights. State entities are not "persons" subject to

15  suit under section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And, as this

16  Court's June 4 order recognized, it is firmly settled that The Regents is an arm of the State of

17  California and is therefore not subject to suit under section 1983. *See, e.g.*, *Armstrong v. Meyers*,

18  964 F.2d 948, 949-50 (9th Cir. 1992) (per curiam) (The Regents "is an arm of the state for

19  Eleventh Amendment purposes, and therefore is not a 'person'" under section 1983); *BV Eng'g v.*

20  *Univ. of Cal., L.A.*, 858 F.2d 1394, 1395 (9th Cir. 1988) (same); *Jackson v. Hayakawa*, 682 F.2d

21  1344, 1350 (9th Cir. 1982) (same). As UC noted in the first motion to dismiss, UCPD is not a

22  separate legal entity from The Regents. (Dkt. No. 16 at 7 n.3). Plaintiff does not dispute that fact,

23  nor can she. *See United States ex rel. Juan v. Regents of the University of California*, No. 4:16-cv-

24  04934-CW, slip op. at 2-3 (N.D. Cal. July 3, 2018) (UCSF is not a legal entity separate from The

25  Regents and cannot be sued); *Mihan v. Regents of the Univ. of California*, No. 16-cv-01390-KJM,

26  2016 WL 6875911, at *3 (E.D. Cal. Nov. 21, 2016) ("the real party in interest in all suits against

27  components of the U.C. system is the Regents"). Plaintiff's first and second claims for relief

28  against UCPD, and by extension, The Regents, must be dismissed with prejudice in their entirety.

Similarly, to the extent Plaintiff seeks relief under section 1983 from the individual UC Defendants in their official capacities, her claims are also barred.  Section 1983 does not allow claims against state officials acting in their official capacities, because such officials, like the State itself, are not "persons" within the meaning of section 1983.  *Will*, 491 U.S. at 71.  Accordingly, section 1983 claims against state officials acting in their official capacities are barred.[3]  *Cf. Juan*, *supra*, slip op. at 3-4 (collecting cases and holding that The Regents is not a "person" under the False Claims Act).

### 2.    All State-Law Claims Against UCPD and the Individual Defendants in Their Official Capacities Are Barred by the Eleventh Amendment

Plaintiff also purports to bring negligence, gross-negligence, intentional-infliction-of-emotional-distress and Bane Act claims against the UC Defendants.  These claims are barred by the Eleventh Amendment.  The Eleventh Amendment bars state-law claims in federal court against state officials, including claims for declaratory and injunctive relief, because "the relief sought and ordered has an impact directly on the State itself."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984).  In *Pennhurst*, the Supreme Court ruled that the Eleventh Amendment's protection extends to state-law claims against state officials "brought into federal court under pendent jurisdiction."  *Id*. at 121.  Allowing such a claim to proceed in federal court would "not vindicate the supreme authority of federal law" and would greatly intrude on state sovereignty.  *Actmedia, Inc. v. Stroh*, 830 F.2d 957, 964 (9th Cir. 1986) (quoting *Pennhurst*, 465 U.S. at 106).  As The Regents is "considered to be [an] instrumentalit[y] of the state . . . and therefore enjoy[s] the same immunity as the state of California" for purposes of the Eleventh Amendment, Plaintiff's state-law claims against The Regents and the individual UC Defendants are also barred.  *BV Eng'g*, 858 F.2d at 1395 (citation omitted); *see also Steshenko v. Albee*, 42 F. Supp. 3d 1281, 1288-89 (N.D. Cal. 2014) (dismissing Bane Act and state-law tort claims as barred by the

---

[3] Plaintiff's claims against UCPD and the individuals in their official capacities for damages are also independently barred by the Eleventh Amendment. *Ex Parte Young*, 209 U.S. 123 (1908). The Eleventh Amendment would permit only claims for prospective injunctive relief against individual state officials, *Almond Hill Sch. v. U.S. Dep't of Agric.*, 768 F.2d 1030, 1034 (9th Cir. 1985)(citing *Edelman v. Jordan*, 415 U.S. 651, 676-77 (1974)), and Plaintiff has not pleaded any basis for prospective injunctive relief against either individual UC Defendant.

Eleventh Amendment).  Plaintiff's third, fourth, fifth, and eighth claims for relief against the UC Defendants must therefore be dismissed.

Because the Eleventh Amendment and/or the text of § 1983 is a complete bar to Plaintiff's claims against UCPD, Plaintiff's state law claims, and any potential claims against the individual UC Defendants in their official capacities, these claims must be dismissed.  For reasons explained below, every one of Plaintiff's claims would also fail for multiple, independent reasons, and amendment would be futile.

### B.   Plaintiff's State-Law Claims Must Be Dismissed Under State Law

Even apart from Eleventh Amendment issues, Plaintiff's state-law claims must be dismissed because (1) they are barred by California's Government Claims Act; (2) they are barred by Cal. Gov't Code § 845; and (3) Plaintiff fails to state a claim under the Bane Act.

First, California's Government Claims Act bars Plaintiff's common-law tort claims against The Regents.  The Act provides that: "Except as otherwise provided by statute ... [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Cal. Gov't Code § 815(a).  It is well-settled that this provision "abolishes common law tort liability for public entities" and that the University of California is a public entity protected by section 815(a).  *Miklosy v. Regents of the Univ. of Cal.*, 44 Cal. 4th 876, 899 (2008); *see also* Cal. Gov't Code § 811.2 (defining a public entity to include The Regents of the University of California); *see also Palmer v. Regents of the Univ. of Cal.*, 107 Cal. App. 4th 899 (2003) (noting that common-law torts not expressly authorized by statute may not be asserted against The Regents).

This statutory immunity to common-law tort claims also extends to the individual UC Defendants exercising the discretion vested in them as the President of the University of California and former Chancellor of the University of California, Berkeley.  *See* Cal. Gov't Code § 820.2.  Section 820.2 provides that "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Here, the sole basis on which Plaintiff purports to sue Defendants Napolitano and Dirks is that

they allegedly "abused their authority under state law and intentionally withheld the police support of UCPD." (FAC ¶ 72.) The discretion to "withhold" or otherwise "direct" university police and security details are precisely the types of discretionary acts protected by section 820.2. *See, e.g.*, *Davison ex rel. Sims v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1231-32 (C.D. Cal. 1998). In *Davison*, for example, section 820.2 barred claims for negligent and intentional infliction of emotional distress against a high school principal and vice principal. The gravamen of the plaintiff's claims was that the school officials had "created, encouraged, accepted and tolerated the racially hostile environment," by "'intentionally failing to take appropriate actions to remedy it.'" *Id.* at 1226-27. But decisions about how to maintain the safety of the educational environment "necessarily … require the exercise of judgment or choice," and are therefore discretionary acts within the meaning of the statute. *See id.* at 1232 (quoting *Nicole M. ex rel. Jacqueline M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389 (N.D. Cal. 1997)). Here too, Plaintiff makes only the conclusory allegations that the individual UC Defendants "abused their authority under state law" to withhold police protection, which then allegedly caused her assault by unknown third parties. (FAC ¶ 75.) Plaintiff's barebones allegations, at best, assert that President Napolitano and former Chancellor Dirks should have made *different* decisions about how to prevent or quell the violent riots at the Yiannopoulos event. Plaintiff's claims are clearly barred under section 820.2.

Plaintiff also fails to identify any express statutory authorization for any of her common-law tort claims against The Regents. Those claims must therefore be dismissed. *See, e.g.*, *Fresquez v. Cnty. of Stanislaus*, No. 13-cv-1897-AWI-SAB, 2014 WL 1922560, at *10-11 (E.D. Cal. May 14, 2014) (dismissing negligence, intentional and negligent infliction of emotional distress and contract claims against County and county officials where plaintiff "identified no specific provision permitting her to bring any of her common law claims"); *Lopez v. Cnty. of L.A.*, No. 15-01745 MMM (MANx), 2015 WL 3913263, at *3 (C.D. Cal. June 25, 2015) (dismissing state-law claims for failure to "allege any specific statutory basis for either direct or vicarious liability").

1    Second, even if Plaintiff could identify a statutory basis for her common-law tort claims,

2 all of her state-law claims against the UC Defendants are barred by Cal. Gov't Code § 845, which

3 provides absolute immunity for failure to provide adequate police protection. *See* Cal. Gov't Code

4 § 845 ("Neither a public entity nor a public employee is liable for failure to establish a police

5 department or otherwise to provide police protection service or, if police protection service is

6 provided, for failure to provide sufficient police protection service."); *Gates v. Superior Court*, 32

7 Cal. App. 4th 481, 495-96 (1995). The California Court of Appeal's decision in *Gates* is

8 illustrative. In *Gates*, the plaintiffs alleged that the Los Angeles Police Department had withheld

9 police protection during violent riots because of plaintiffs' race and sought damages for their

10 injuries. *Id.* at 503-04, 510 (describing alleged "failure to properly train and mobilize officers"

11 and "absence of a police response to acts of violence" in minority neighborhoods). The *Gates*

12 plaintiffs alleged claims under federal and state law, including Cal. Civ. Code § 52. The Court of

13 Appeal held that, because "[a]ll of plaintiffs' claims are premised upon a failure to provide

14 adequate police protection at the intersection where they were attacked," the trial court should

15 have sustained defendants' demurrer without leave to amend, because defendants were entitled to

16 "absolute immunity" under Cal. Gov't Code § 845. *Id.* at 494, 507; *see also Zelig v. Cnty. of L.A.*,

17 27 Cal. 4th 1112, 1141-44 (2002) (holding that section 845 provided immunity to purported

18 claims for negligence, negligent infliction of emotional distress, and premises liability).

19    Here too, all of Plaintiff's state-law claims are premised on the UC Defendants' alleged

20 failure to provide police protection to Plaintiff during the Yiannopoulos protest. (*See, e.g.*, FAC

21 ¶¶ 105 (Defendants "breached their duty of care to Plaintiff Robles by withholding effective police

22 protection"), 106 (same), 107 (alleging "negligence in ordering campus police not to intervene and

23 defend Plaintiff Robles"), & 115 (Defendants "with[e]ld proper [police] protection").) Whatever

24 label Plaintiff may attach to her various state-law claims, the essence of all of those claims is that

25 the UC Defendants should have provided additional or different police protection, and that the UC

26 Defendants' failure to do so resulted in her assault and battery by protestors. But, as the *Gates*

27 court held, any failure to provide adequate police protection falls squarely within the absolute

28 immunity provided by Cal. Gov't Code § 845. *Gates*, 32 Cal. App. 4th at 507; *see also Zelig*, 27

1   Cal. 4th at 1141-44.  Plaintiff's third, fourth, fifth, and eighth claims for relief against the UC

2   Defendants must therefore be dismissed with prejudice.

3          Third, even if Cal. Gov't Code § 845 did not bar her Bane Act claim, Plaintiff fails to plead

4   a claim under the Act.  To allege a violation of the Bane Act, a plaintiff must show that (1) the

5   defendant interfered with or attempted to interfere with a constitutional or statutory right by

6   threatening or committing violent acts; (2) the plaintiff reasonably believed the defendant would

7   commit violence if the plaintiff exercised her rights; (3) the defendant injured the plaintiff or her

8   property to prevent her from exercising her constitutional rights; (4) the plaintiff suffered injury;

9   and (5) the defendant's conduct was a substantial factor in causing that injury.  *Austin B. v.*

10  *Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 882 (2007).  While Plaintiff alleges that actors

11  other than the UC Defendants threatened or committed violent acts against her, she fails to make a

12  single such allegation with respect to the UC Defendants (or any University official).  Plaintiff's

13  conclusory assertion that Defendants Napolitano and Dirks "act[ed] in concert with each and every

14  Defendant" to threaten or commit violent acts against her is insufficient to demonstrate that they

15  or The Regents engaged in any wrongful conduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

16  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

17  statements, do not suffice.").  Plaintiff's eighth claim for relief against the UC Defendants should

18  be dismissed for this additional reason as well.

19          **C.      Plaintiff Fails to Plead Facts Sufficient to State a First Amendment Claim**

20          Even apart from all of the clear procedural defects with Plaintiff's claims under section

21  1983, she fails to state a First Amendment claim on the merits.  The gravamen of Plaintiff's First

22  Amendment claim is that the UC Defendants "withheld police officers to protect pro-President

23  Trump/pro-Milo Yiannopoulos attendees" like Robles during the violent protest that prevented the

24  Yiannopoulos event from going forward.  (FAC ¶ 89; *see also id.* ¶ 58 ("UCPD … did not act to

25  protect any of the victims")).  Thus, Plaintiff alleges in her first claim that "Defendants' refusal to

26  adequately secure and monitor a known hostile campus environment … prohibits Plaintiff Robles

27  from the free exercise of her speech and political beliefs."  (*Id.* ¶ 91.)

28

Government actors are not, however, liable for failure to protect individuals from interference by third parties with their exercise of First Amendment rights. This is clear from *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), in which the Supreme Court held that the Due Process Clause does not impose an affirmative duty on the state to protect a person from private violence unless that person is in state custody. *Id.* at 197-200. The Court reasoned that the Due Process Clause, like the First Amendment, is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id*. at 195. Thus, the clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id*. at 196.

Courts have applied *DeShaney*'s reasoning in the First Amendment context, holding that neither the state nor state officials have any obligation to assist citizens in exercising their First Amendment rights or to prevent others from interfering with those rights. For example, in *Pietrangelo v. Alvas Corp.*, 664 F. Supp. 2d 420 (D. Vt. 2009), *aff'd*, 487 F. App'x 629 (2d Cir. 2012), plaintiff alleged that he was assaulted while picketing and sued the city for failing to protect his exercise of First Amendment rights. *Id.* at 432-33. The court, construing the complaint as asserting a substantive due process claim, held that the state had no duty to protect the individual against private violence, regardless of whether he was exercising his First Amendment rights at the time. *Id.*; *see also* Mem. at 6-7, *Young Am.'s Found. v. Covino*, No. 16-CV-03474 (C.D. Cal. Dec. 12, 2016), Dkt. No. 87 (under *DeShaney*, "the First Amendment … limits a state's power to deprive individuals of free speech rights (rather than creating an affirmative obligation to ensure such rights are not harmed through other means)"); *Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1513-14 (11th Cir. 1992) ("[t]he Constitution … does not require the Government to assist the holder of a constitutional right in the exercise of [the] right" of freedom of association); *Tater-Alexander v. Amerjan*, No. 1:08-cv-00372 OWW SMS, 2011 WL 319012, at *13 (E.D. Cal. Jan. 28, 2011) (police officers do not have an "affirmative obligation to investigate a crime in a particular way or to protect one citizen from another even when one citizen deprives the other of liberty of property" in order to protect the citizen's First Amendment right to petition the

Government for a redress of grievances (quoting *Gina v. Las Vegas Metro. Police Dept.*, 40 F.3d 1041, 1045 (9th Cir. 1994)); *see also Nelson v. Streeter*, 16 F.3d 145, 150 (7th Cir. 1994) (suggesting that *DeShaney* implies "that the police do not have a constitutionally enforceable duty to protect an artist and the populace from a mob" angry about the content of the artist's work). As these cases make clear, the UC Defendants had no duty under the Constitution to protect Plaintiff from interference by third parties with her First Amendment rights. Plaintiff's first claim for relief should therefore be dismissed for the additional reason that it fails to plead facts sufficient to state a claim.

### D.  Plaintiff Fails to Plead Facts Sufficient to State an Equal-Protection Claim

Plaintiff alleges, in conclusory terms, that the UC Defendants denied her equal protection by failing to provide police protection due to her sexual orientation and political viewpoint and failing to enforce UC Berkeley's anti-discrimination policies. (*See, e.g.*, FAC ¶¶ 93-101.) Plaintiff alleges no facts whatsoever with respect to the UC Defendants' provision of police protection or enforcement of university anti-discrimination policies in any similar circumstances involving individuals with either the same or different sexual orientations or political viewpoints. Nowhere does Plaintiff allege that, in another situation involving a large number of violent protestors, the UC Defendants acted differently than they did here. Nor does Plaintiff allege any facts demonstrating that the UC Defendants even knew her sexual orientation or political beliefs. The failure to make such factual allegations is fatal to her equal-protection claim.

"[C]onclusory allegations of discrimination are insufficient unless they are supported by facts that may prove invidious discriminatory intent or purpose." *Love v. Hensley*, No. 09cv1788 BTM (NLS), 2010 WL 1626117, at *4 (S.D. Cal. Apr. 21, 2010) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). Therefore, "when an equal protection violation is alleged, the plaintiff must plead facts to show that the defendant 'acted in a discriminatory manner and that the discrimination was intentional.'" *Love*, at *4 (quoting *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991)); *see also Yassin v. Corr. Corp. of Am.*, No. 11cv0421 LAB (JMA), 2011 WL 4501403, at *6 (S.D. Cal. Sept. 27, 2011) ("[C]onclusory

1    allegations of discrimination are insufficient to withstand a motion to dismiss, unless they are

2    supported by facts that may prove invidious discriminatory intent or purpose.").

3         To state an equal-protection claim, "the plaintiff must set forth non-conclusory allegations

4    of discrimination supported by reference to particular acts, practices, or policies demonstrating

5    that he [or she] has been treated differently from others with whom he [or she] is similarly situated

6    and that such unequal treatment was the result of intentional or purposeful discrimination."

7    *Switzer v. Weaver*, No. 5:12cv00057, 2012 WL 6964863, at *6 (W.D. Va. Nov. 5, 2012), *aff'd*,

8    521 F. App'x 208 (4th Cir. 2013); *see also Icon Groupe, LLC v. Wash. Cnty.*, 948 F. Supp. 2d

9    1202, 1207 (D. Or. 2013) ("[T]o state a claim under the Equal Protection Clause, a plaintiff must

10   establish that he [or she] was treated differently from other similarly situated individuals with

11   respect to a governmental act, statute, or regulation.").  "In addition to the showing of

12   discriminatory purpose and effect, plaintiffs seeking to enjoin alleged selective enforcement must

13   demonstrate the police misconduct is part of a 'policy, plan, or a pervasive pattern.'" *Rosenbaum*

14   *v. City & Cnty. of S.F.*, 484 F.3d 1142, 1153 (9th Cir. 2007).

15        Thus, in *Icon Groupe* the court dismissed the plaintiff's equal-protection claim because

16   there was no non-conclusory allegation of different treatment.  There, the plaintiff, a company

17   engaged in the sign business, alleged that it had been discriminated against in the County's

18   enforcement of an ordinance that required a permit to erect freestanding signs.  948 F. Supp. 2d at

19   1205, 1208.  The court dismissed the plaintiff's equal-protection claim because it had not alleged,

20   other than in conclusory terms, that the County would have approved a permit for any similarly

21   situated company. *Id*. at 1208.  "[A]lthough [the plaintiff] generally state[d] that it[] believe[d]

22   substantially-similar applications . . . have, or would have been, approved, it fail[ed] to allege any

23   facts to support this conclusory statement." *Id.*  The court held that, "in the absence of factual

24   allegations establishing that Defendants have approved other applications under the safety-sign

25   exemption, [plaintiff] has failed to state a viable claim for violation of the Equal Protection

26   Clause." *Id.*

27        Here, similarly, Plaintiff has failed to allege facts to support her conclusory assertions that

28   the UC Defendants discriminated against her based on her sexual orientation or political

viewpoint.  As a threshold matter, Plaintiff fails to allege any facts demonstrating that any of the UC Defendants actually knew her sexual orientation or political views, much less those of the protestors and supporters on campus.  While Plaintiff alleges the fact of violent riots at UC Berkeley in 1969 and 2011, (FAC at 8-9), and baldly asserts that "UC Berkeley has hosted countless politically-charged rallies and protests in the past, and the Regents have provided effective police presence without incident," (*id.* ¶ 34), Plaintiff fails to allege any facts demonstrating that the UC Defendants acted differently in circumstances that were similar but that involved individuals with sexual orientations or political viewpoints different from Plaintiff's, or that the UC Defendants' conduct was part of any policy, plan, or pervasive pattern.  In the absence of factual allegations establishing that the UC Defendants acted differently in similar circumstances involving over 1,500 violent protestors, Plaintiff fails to state an equal-protection claim.

**E.      Plaintiff's Claims Against UC Defendants in Their Personal Capacities Must Be Dismissed**

**1.      Plaintiff Does Not Allege Facts Sufficient to Show that UC Defendants Acted in Their Personal Capacities**

Plaintiff purports to sue Napolitano and Dirks in their "individual" capacities (FAC  ¶¶ 5-6.)  But, "[t]o state a claim against state officials in their individual capacities, the complaint must set forth allegations from which the court can infer that the individuals acted in their individual capacities."  *Peralta v. Cal. Franchise Tax Bd*., 124 F. Supp. 3d 993, 1001 (N.D. Cal. 2015) (citing *Scott v. Cal. State Lotto*, 19 F.3d 1441 (9th Cir. 1994)).  To determine whether a defendant is properly sued in his or her individual or personal capacity, "the court must examine the specifics of the conduct involved and not merely look at the caption of the complaint."  *Id.* (internal quotation marks omitted); *see also Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device.") (internal quotation marks omitted).

A plaintiff "is required to plead specific facts regarding each individual Defendant's conduct sufficient to plausibly state a cause of action against that Defendant individually."  *Clark v. Ca. Dep't of Forestry & Fire Prot.*, 212 F. Supp. 3d 808, 814-15 (N.D. Cal. 2016).  To

determine whether a defendant is properly sued in her personal capacity, "the court must examine the specifics of the conduct involved and not merely look at the caption of the complaint." *Peralta*, 124 F. Supp. 3d at 1001 (internal quotation marks omitted).

Plaintiff fails to allege any facts that support an inference that these UC Defendants were acting their personal capacities at UC.  Indeed, there are no allegations at all of any actions or decisions made by Defendants Dirks or Napolitano.  None of Plaintiff's allegations are remotely sufficient to support a finding that they acted in their personal capacities.

Plaintiffs' claims against UC Defendants in their individual or personal capacities should therefore be dismissed.

### 2.     The UC Defendants Are Entitled to Qualified Immunity from Damages Claims

Plaintiff's damages claims against the UC Defendants in their personal capacities must be dismissed for the separate and independent reason that the UC Defendants are entitled to qualified immunity.  "State officials are entitled to qualified immunity from suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Krainski v. Nev. ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Felarca v. Birgenau*, 891 F.3d 809, 815-16 (9th Cir. 2018).  The Supreme Court has recently emphasized the breadth of qualified immunity, holding that, to defeat a defendant's qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (*per curiam*) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (*per curiam*)).  "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law."  *Id.*

To determine whether an official is entitled to qualified immunity to damages claims against them in their personal capacities, courts ask: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional (or statutory) right; and (2) if so, whether the right was clearly established in light of the specific context of the case.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "For a constitutional

1   [or statutory] right to be clearly established, its contours must be sufficiently clear that a

2   reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*,

3   536 U.S. 730, 739 (2002) (internal quotation marks omitted).  It is within a court's "sound

4   discretion" to address these two prongs in any sequence it sees fit.  *Pearson v. Callahan*, 555 U.S.

5   223, 236 (2009).

6        Here, for the reasons explained above, Plaintiff satisfies neither step of the *Saucier*

7   analysis.  The UC Defendants are entitled to qualified immunity under the first step because

8   Plaintiff fails to allege any facts demonstrating a duty to protect them from third-party violence or

9   interference with their rights, as required for her First Amendment claim, nor does she allege

10   sufficient facts to state an equal-protection claim.  *See, e.g.*, *Comm. for Immigrant Rights of*

11   *Sonoma Cnty. v. Cnty. of Sonoma*, 644 F. Supp. 2d 1177, 1201-02 (N.D. Cal. 2009) ("[P]laintiffs'

12   vague and conclusory assertions of wrongdoing … are insufficient to establish the requisite factual

13   predicate to demonstrate that the … defendants personally violated any of the plaintiffs'

14   constitutional rights" under *Saucier*); *see supra* pp. 18-22.  Though the Court need not reach the

15   second step, *see Comm. for Immigrant Rights*, 644 F. Supp. 2d at 1201-02, Plaintiff fares no better

16   there, as she has not alleged that any UC Defendant violated any clearly established right.  A

17   reasonable official in the position of either of the individual UC Defendants would have had no

18   reason to think his or her conduct violated any constitutional rights.  Far from its being clearly

19   established that the UC Defendants had a constitutional duty to provide police protection to

20   prevent others from interfering with Plaintiff's speech, it was clearly established that they had no

21   such duty.  Nor was it clearly established that the UC Defendants were, in their efforts to protect

22   the safety and rights of all concerned, forbidden to make the tactical decisions that they did during

23   what is alleged to have been a full-scale riot on the UC Berkeley campus.

24        Courts have found that university officials have qualified immunity from various

25   constitutional claims that are based on allegations that the officials have failed to protect the

26   plaintiffs from violent interference with their rights by third parties.  For example, in *Melendez-*

27   *Garcia v. Sanchez*, 629 F.3d 25 (1st Cir. 2010), an ROTC officer was assaulted during a student

28   protest at the University of Puerto Rico and sued university officials under section 1983 for

1    alleged failure to adequately provide security for the ROTC.  The First Circuit held that the

2    university officials were entitled to qualified immunity on the plaintiffs' constitutional claims

3    because, under *DeShaney*, "a State's failure to protect an individual against private violence

4    simply does not constitute a violation of the Due Process Clause."  *Id.* at 36 (quoting *DeShaney*,

5    489 U.S. at 197). The court recognized that "a university, like a local government, must choose

6    how to use limited resources," and thus it would not have been clear to a reasonable official that

7    the university's security decisions violated the plaintiff's constitutional rights.  *Id.* at 37.

8    Similarly, the Eleventh Circuit held that university officials were entitled to qualified immunity

9    against a claim that they deprived a student killed in a school shooting of due process rights by

10   failing to protect him from the known threats of another student.  *Alexander v. Univ. of N. Fla.*, 39

11   F.3d 290, 292 (11th Cir. 1994) (per curiam).

12         In light of the controlling precedent that government actors owe no duty to protect

13   members of the public from violence or interference with their rights by third parties and that, in

14   the context of a riot, police officers can be liable only where their actions are taken with a purpose

15   to harm the plaintiffs that is unrelated to legitimate law enforcement objectives, it would certainly

16   not have been clear to a reasonable official that the UC Defendants' alleged withholding of police

17   protection to Plaintiff violated her rights.  *See supra* pp. 18-22.  Plaintiff's claims for damages

18   should be dismissed.

19         **F.     Plaintiff Fails to State a Claim for Punitive Damages**

20         Plaintiff's prayer for punitive damages should again be dismissed because such damages

21   are unavailable against The Regents under either section 1983 or state law and because Plaintiff

22   fails to allege the requisite malice or evil intent to support such a claim against Defendants

23   Napolitano and Dirks in their individual capacities.

24         It is well established that punitive damages may not be awarded under section 1983 against

25   a government entity.  *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784-

26   85 (2000) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 262-63 (1981)).  State

27   officials acting in their official capacities are also immune from punitive damages.  *Will*, 491 U.S.

28   at 71; *see also Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996).  Plaintiff's claims for punitive

1   damages pursuant to section 1983 against UCPD (that is, The Regents) must therefore be

2   dismissed with prejudice.

3          Punitive damages also may not be awarded based on Plaintiff's state-law claims.  Under

4   Cal. Gov't Code § 818, public entities are immune to claims for punitive damages.  *See* Cal. Gov't

5   Code § 818 ("Notwithstanding any other provision of law, a public entity is not liable for …

6   damages imposed primarily for the sake of example and by way of punishing the defendant.");

7   *Tan v. Univ. of Cal. S.F.*, No. 06-04697 TEH, 2007 WL 963223, at *1 (N.D. Cal. Mar. 29, 2007)

8   (citing Cal. Gov't Code § 818 and granting motion to strike punitive damages claims based on

9   state law against The Regents).

10         Plaintiff's claim for punitive damages against the UC Defendants in their personal

11  capacities must also be dismissed, even assuming she has adequately pleaded the substantive

12  claims (she has not), because Plaintiff fails to allege that the individual UC Defendants' conduct

13  was "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the

14  federally protected rights of [Plaintiff]" as required to support a claim for punitive damages under

15  section 1983.  *Smith v. Wade*, 461 U.S. 30, 56 (1983); Cal. Civ. Code § 3294.

16         **G.      Plaintiff's Claims Should Be Dismissed with Prejudice**

17         The Court should dismiss all of Plaintiff's claims with prejudice.  As set forth above,

18  Plaintiff has had notice of each of the asserted grounds for dismissal since UC filed its motion to

19  dismiss in *Robles I* on July 18, 2017.  Plaintiff not only had ample opportunity to amend her

20  complaint before filing the original complaint in this action, but the Court granted her further leave

21  to amend in its June 4, 2018 Order.  Despite now having had multiple opportunities to amend,

22  Plaintiff has continued to fail to state a cognizable claim against either The Regents or against the

23  newly re-named individual UC Defendants.  As amendment is demonstrably futile, the Court

24  should dismiss Plaintiff's claims with prejudice.   *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d

25  876, 892-93 (9th Cir. 2010).  Among other issues, Plaintiff cannot amend her claims to avoid the

26  Eleventh Amendment bar to her claims, nor can she avoid the legislative immunity set forth in

27  Cal. Gov't Code §§ 815(a), 820.2, and 845.

28

1    **V.      CONCLUSION**

2           For the reasons set forth above, and because Plaintiff has already had not just one, but two

3    opportunities to cure the deficiencies in her pleadings based on the prior motions to dismiss in

4    *Robles I* and in the instant action, all of Plaintiff's claims against the UC Defendants should be

5    dismissed with prejudice.

6
     DATED:  July 9, 2018                       MUNGER, TOLLES & OLSON LLP
7                                                  BRADLEY S. PHILLIPS
                                                   BRYAN H. HECKENLIVELY
8                                                  ELIZABETH A. KIM

9

10                                             By:        */s/ Bryan H. Heckenlively*
                                                   BRYAN H. HECKENLIVELY
11                                             Attorneys for The Regents of the University of
                                               California, Janet Napolitano, and Nicholas Dirks
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28