Farimah Brown, City Attorney, SBN 201227
Lynne S. Bourgault, Deputy City Attorney, SBN 180416
Jessica Mar, Deputy City Attorney, SBN 293394
BERKELEY CITY ATTORNEY'S OFFICE
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone:  (510) 981-6998
Facsimile:  (510) 981-6960
Email:  LBourgault@cityofberkeley.info

Attorneys for Defendant CITY OF BERKELEY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIARA ROBLES,<br><br>           Plaintiff,<br><br>v.<br><br>IN THE NAME OF HUMANITY, WE REFUSE TO ACCEPT A FASCIST AMERICA (a.k.a. ANTIFA), CITY OF BERKELEY, ET AL.,<br><br>           Defendants. | No.  4:17-cv-04864 CW<br><br>**REPLY IN SUPPORT OF CITY OF BERKELEY'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:    September 4, 2018<br>Time:    2:30 p.m.<br>Crtrm:   TBD |

## INTRODUCTION

Plaintiff Kiara Robles has agreed to dismiss her Fifth and Eighth Causes of Action against the City for intentional infliction of emotional distress, and violation of the California Bane Act.  Opp. at 2:14-17.  However, based on threadbare allegations, she claims that she has adequately pleaded her two *Monell* claims against the City for (1) alleged violation of the First Amendment and (2) violation of her right to equal protection.  The Court must grant the City's motion to dismiss plaintiff's claims against the City for all of the reasons set forth in the City's opening brief, and below.

//

### I. Plaintiff Fails to Plead Sufficient Facts to Bring *Monell* Claims Against the City

Plaintiff rests her *Monell* claims upon a single allegation in her Amended Complaint, based upon a newspaper report, that Berkeley "provided '500 officers' for a protest against President Trump in August of 2017" (Opp. at 1:25-26), but had "Berkeley police officers wait[] in the Student Union building" on UC campus on February 1, 2017 while "Plaintiff and others were being violently attacked." Opp. at 1:21-24. She claims that this "dichotomy . . . shows a clear custom and practice by Berkeley to withhold police protection" for conservative events. Opp. at 1:27-2:2. Not only do plaintiff's allegations fail to describe a City "custom and practice," but they are not even "a dichotomy." Although plaintiff alleges in Paragraph 83 of the FAC that Berkeley provided "500 officers" in August, 2017, her FAC contains no allegations about how many City of Berkeley officers were on duty for the Yiannopoulos event on February 1, 2017. Her failure to identify in the FAC the number of officers in attendance at both events prevents her from arguing that there is any direct correlation between the two events, and highlights the fact that plaintiff is merely speculating when she claims that Berkeley withheld police protection to plaintiff at the Yiannopoulos event, based on the number of officers on duty or otherwise.[1]

Additionally, in her opposition, plaintiff invents allegations that are not contained in the FAC, arguing that the FAC alleges that Berkeley officers "stood by idly inside" a UC campus building and "could plainly see pro-conservative, pro-gay attendees of the Yiannopoulos event being viciously attacked." Opp. at 5:13-22. Plaintiff cites to Paragraphs 56, 57 and 58 of the FAC to support this argument, but those paragraphs do not contain any allegations that officers watched attacks against "pro-conservative, pro-gay" protesters, and it is not clear how officers would be able to withhold police protection from conservative, gay protesters while providing it

---

[1] In her opposition, plaintiff points to allegations that she claims are contained in her First Amended Complaint, that are in fact nowhere to be found in the FAC. *See* Opp. at 5:3-11. Plaintiff cites to "Fn.72" of the FAC, which cites a news article by James Queally in the August 28, 2017 edition of the Los Angeles times, but the specific assertions allegedly set forth in the newspaper story are not set forth in the FAC, and may not be considered "allegations" of her FAC.

1   to liberal, straight protesters, given the FAC admits that "over 1,500 'protesters'" attended the
2   February 1, 2017 event which "erupted into violence" just minutes after plaintiff arrived on
3   campus.  FAC at 1:5-7.
4         Plaintiff attempts to rely upon a Florida district court case (*Rauen v. City of Miami*, 2007
5   WL 686609 (March 2, 2007)) to argue that the Court must deny the City's motion to dismiss
6   plaintiff's *Monell* claims.  However, as plaintiff's opposition highlights, the issue before the
7   *Rauen* court was whether the plaintiffs' inability to identify specific individual alleged
8   tortfeasors barred their claims, not whether they had pleaded sufficient factual allegations to
9   state a plausible claim.  *Id*. at *4.  Additionally, in *Rauen*, the court noted that plaintiffs
10  specifically identified a city ordinance and adoption of a "joint operational security plan" that
11  were alleged to be designed to limit First Amendment activities and opportunities.  *Id*. at *8.
12  Plaintiff in this case fails to identify in the FAC any specific ordinances or plans by the City of
13  Berkeley that were designed to inhibit First Amendment activities.  Therefore, *Rauen* is
14  inapposite.
15        Plaintiff's assertion that the City is requiring plaintiff to "show definitive evidence" of
16  City policies and customs at the pleading stage is without merit.  The City's position is that
17  plaintiff fails to point to any allegations in her complaint regarding an official policy or custom
18  of the City that was "the moving force" closely linked to the alleged constitutional violations.
19  Plaintiff's position is that, based on entirely conclusory allegations against the City, she should
20  be able to engage in discovery, otherwise known as a "fishing expedition."
21
22  **II.     Plaintiff Fails to Point to Any Specific Allegations That Would Support Her Equal Protection Claim Against the City**
23        Plaintiff asserts that her conclusory allegations that Berkeley police withheld police
24  protection from her because she is gay and female are sufficient to state an equal protection
25  claim.  Plaintiff concedes that her claim requires that she plead "intentional discrimination."
26  Opp. at 6:10-12.  Plaintiff attempts once again to rely on allegations in Paragraph 83 relating to
27  the number of officers ("500") that were allegedly provided for an August, 2017 "anti-Trump"
28  rally to support her claims that police intentionally discriminated against her because she is gay

1  and female.  However, Paragraph 83 does not identify the gender or sexual orientation of the
2  protesters who allegedly attended the August, 2017 protest, and plaintiff's attempt to compare
3  the two events is therefore without merit, especially given the lack of allegations about how
4  many Berkeley officers were on duty for the February 1, 2017 Yiannopoulos event.  Plaintiff's
5  argument that Berkeley supported one event over the other based on gender and sexual
6  orientation animus is purely speculation given the lack of context and other information about
7  the two events.  For instance, it could just as easily be inferred that Berkeley police had greater
8  staffing in August, 2017 because the August event was held at a City park, rather than on the UC
9  campus, or because Berkeley police learned from prior protests that making a "show of force"
10 reduced opportunities for violence.
11         Plaintiff's allegation regarding the number of officers that supposedly staffed the two
12 events has nothing to do with the equal protection injuries that plaintiff alleges she suffered.
13 Plaintiff's Fourteenth Amendment claim is based on allegations that the City "discriminated
14 against Plaintiff Robles on the basis of her sexual orientation and gender by withholding police
15 protection" on February 1, 2017, because "Yiannopoulos and a large number of his supporters"
16 are "gay and female."  FAC at ¶ 96.  However, the focus of plaintiff's FAC is that Berkeley
17 police withheld protection to conservative attendees at conservative events.  Plaintiff now claims
18 that the staffing of a conservative event (February 1, 2017) versus a liberal event (August, 2017)
19 evidences this disparity.  For plaintiff to also argue, based on an alleged disparity in the number
20 of Berkeley City officers provided at the February 1 and August, 2017 events, that police were
21 denying their services to gays and females (rather than conservatives versus liberals) strains
22 reason and credulity, and fails to state a plausible equal protection claim.

### III.   Plaintiff Concedes That Berkeley Police Had No Duty to Provide Her a Venue to Exercise Her First Amendment Rights

25         Plaintiff argues that she has sufficiently pleaded a claim for First Amendment retaliation
26 because she alleges the City "actively" worked with other defendants to deprive her of her rights
27 of free expression.  Opp. at 7:12-14.  First, even if the FAC alleged that the City "actively"
28 worked with others to violate plaintiff's constitutional rights, which it does not, such an

1  allegation would not cure the purely conclusory nature of plaintiff's allegations.  *See* FAC ¶¶ 15.
2  28.  Plaintiff's FAC does not specifically allege any particular action by any particular City
3  representative aimed at intentionally depriving her of her free speech rights, or rights of
4  association, as required.  As stated in the City's opening brief, and as plaintiff concedes,
5  Berkeley police had no duty to provide a "safe venue" for plaintiff to exercise her First
6  Amendment rights, and therefore her First Amendment claim must be dismissed with prejudice.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the City's motion to dismiss the claims against the City in plaintiff's First Amended Complaint, with prejudice.

Dated:  July 27, 2018                    Respectfully submitted:

BERKELEY CITY ATTORNEY'S OFFICE

By:  _____/s/ Lynne S. Bourgault_____
     LYNNE S. BOURGAULT
     Attorneys for Defendant