LARRY E. KLAYMAN (D.C. BAR NO. 334581)
KLAYMAN LAW GROUP, PA
2020 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006
Telephone: 561.558.5536
Email: leklayman@gmail.com

MICHAEL D. KOLODZI (CAL. BAR NO. 255772)
THE KOLODZI LAW FIRM
433 North Camden Drive, Suite 600
Beverly Hills, California 90210
Telephone: 310.279.5212
Facsimile: 866.571.6094
Email: mdk@mdklawfirm.com

*Attorneys for Plaintiff*
KIARA ROBLES

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIARA ROBLES, | Case No.: 4:17-cv-04864-CW |
| Plaintiff, | |
| v. | **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT** |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, BERKELEY, et al. | Date: September 4, 2018<br>Time: 2:30 p.m.<br>Crtrm: TBD |
| Defendants. | |

Plaintiff Kiara Robles ("Plaintiff"), through her counsel Mr. Larry Klayman ("Mr. Klayman") hereby submit the following in opposition to Janet Napolitano, Nicholas Dirks, and The University of California Police Department's Motion Dismiss the Amended Complaint.

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

LEGAL STANDARD ..................................................................................................................... 3

THE LAW ........................................................................................................................................ 5

    The First Amended Complaint Properly Alleges that the Individual Regents Defendants Were Acting in their Individual Capacities ....................................................... 5

    The Eleventh Amendment Does Not Apply to Individual Capacity Suits ......................... 6

    The Individual Regents Defendants Do Not Enjoy Qualified Immunity ......................... 6

        First Amendment Claim ............................................................................................ 7

        Equal Protection Claim ............................................................................................. 8

        State Law Claims .................................................................................................... 11

    Plaintiff is Entitled to Punitive Damages .......................................................................... 11

CONCLUSION .............................................................................................................................. 11

# TABLE OF AUTHORITIES

*Cases*

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .................................................................................. 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 4

*Cotrell, Ltd. V. Biotrol Int'l, Inc.*, 191 F.3d 1248 (10th Cir. 1999_ ......................................... 4, 5

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..................................................................................... 4

*Hafer v. Melo*, 112 S. Ct. 358 (1991) .......................................................................................... 6

*Krainski v. Nev. ex rel. Bd. of Regents of the Nev. Sys. Of Higher Educ.*, 616 F.3d 963 (9th Cir. 2010) ............................................................................................................................................ 6

*Lopez v. S. Cal. Rapid Transit Dist.,* 40 Cal. 3d 780 (1985) ..................................................... 10

*Smith v. Wade*, 461 U.S. 30 (1983) ........................................................................................... 11

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) .................................................................... 4

*Zuniga v. Hous. Auth.*, 41 Cal. App. 4th 82 (1995) .................................................................... 9

*Statutes*

Fed. R. Civ. P. 8(a)(2) .................................................................................................................. 3

Fed R. Civ. P. 12(b)(6) .............................................................................................................. 3, 4

Cal. Civ. Code § 3294 ................................................................................................................ 11

Cal. Gov't Code § 815(a) ............................................................................................................. 9

Cal. Gov't Code § 845 ............................................................................................................. 9, 10

# MEMORANDUM OF LAW

## I. INTRODUCTION

This Amended Complaint is based on the Defendants' steadfast refusal to permit speech and other expression that they do not agree with. Allegedly acting in concert, in their individual capacities, with We Refuse to Accept a Fascist America ("ANTIFA"), Defendants Janet Napolitano and Nicholas Dirks (the "Individual Regents Defendants") have subjected UC Berkeley students and invitees who do not subscribe to the radical, left wing philosophies sanctioned by each and every one of them to severe violence and bodily harm for merely expressing a differing viewpoint and sexual preference, in clear contravention of their rights under the First Amendment to the U.S. Constitution.[1] The Individual Regents Defendants, whose leftist bent makes them sympathetic to groups such as ANTIFA, as part of their role in the concerted misconduct amongst each and every Defendant, have protected and shielded ANTIFA – a domestic terror group – by allowing them to roam free on U.C. Berkeley's campus and cause havoc and mayhem against persons who happened to share differing political and other viewpoints. This is the same ANTIFA that has trained its members on how to violently incapacitate their "foes," including law enforcement officers.[2] ANTIFA members were caught on video saying, "[i]f you get a good liver or kidney shot, it's pretty much crippling them. They're going to be doubled over and in a lot of pain. If you break one of the floating ribs, which are small and right down here. Those are also very painful. It's hard to move after that, to catch a breath…[s]o one good body shot could potentially give you all the time in the world to run away while they're doubled over in pain, or really put a beating on them after that if you really want to make it personal."[3]

On February 1, 2017, Plaintiff Kiara Robles ("Plaintiff" or "Robles") attended a planned speech by Milo Yiannopoulos ("Yiannopoulos"), a media personality and conservative political

---

[1] Robles hereby dismisses the University of California Police Department ("UCPD") without prejudice from her First Amended Complaint.

[2] Bob Unruh, *O'Keefe catches antifa teaching activists to inflict pain,* WND, Aug 2, 2018, available at: https://www.wnd.com/2018/08/okeefe-catches-antifa-teaching-activists-to-inflict-pain/#iDBgE55SMJXAbFEs.99

[3] *Id.*

commentator and writer, hosted on the UC Berkeley campus. On the day of Yiannopoulos' speech, however, over 1,500 "protestors" gathered at UC Berkeley's Sproul Plaza and the "protestors" erupted into violence just fifteen minutes after Plaintiff's arrival onto the UC Berkeley campus. The violence was primarily orchestrated by ANTIFA and its members, in an effort to disrupt, if not kill, the event. Am. Comp. ¶ 21. Several people, including Plaintiff, were intentionally and violently attacked by both masked and unmasked Defendant assailants, including Ian Dabney Miller and Raha Mirabdal, and the UC Berkeley campus incurred over $100,000 worth of damage. Plaintiff was attacked with extremely painful pepper spray and bear mace by masked assailants amongst the "protestors" because she chose to exercise her right to freedom of speech and show support for Yiannopoulos:

> Defendants ANTIFA, Mirabdal, Miller, and Does 1-20 ("ANTIFA Defendants") organized, plotted, planned, and executed the violent shutdown of the Milo Yiannopoulos event. Members of ANTIFA, including Defendants Miller and Mirabdal rioted at the Milo Yiannopolous event and viciously attacked attendees, including Plaintiff Robles, because of their political beliefs, sex, and sexual preference, such as Plaintiff Kiara Robles….
>
> Thus, each of the ANTIFA Defendants are equally, jointly, and severally liable for each others' actions, as they were all performed in concert, and as part of their conspiracy to violently shut down the Yiannopolous event using, among other dangerous objects, pepper spray and bear mace, flag poles, signs, and flashlight. Am. Comp. ¶¶ 21-22.

Shockingly, while Plaintiff and others were being violently attacked and assaulted by ANTIFA members, nearly 100 campus police and SWAT members waited in the Student Union building, within eyesight of the violence happening outside on the alleged direction of the Individual Regents Defendants. They did nothing except watch the chaos and violence unfold outside. Am. Comp. ¶ 57.

It is undisputable that the Individual Regents Defendants oversee and are responsible for the actions and inactions of UC Berkeley, as well as its police force, UCPD. It is also undisputable that those in positions of power and authority at UC Berkeley have made their ultra-leftist beliefs, which happen to oppose Plaintiff and Yiannopoulos, widely known. For instance, Defendant Dirks, the former Chancellor of UC Berkeley, has called Milo Yiannopoulos "a troll and provocateur who uses odious behavior in part to 'entertain,' but also to deflect any serious engagement with ideas. Am. Comp. ¶ 76. Furthermore, as set forth in the Amended

2

1    Complaint "UC Berkeley regularly provides police protection for politically charged events and
2    protests on its campus without incident." Am. Comp. at 5. However, even though it was more
3    than "reasonably foreseeable" – it was almost certain – that violence would erupt at the
4    Yiannopoulos event, the Individual Regents Defendants, acting in their individual capacities,
5    ordered the withholding of police protection and left UC Berkeley's students and invitees who
6    happen to fall within the minority, such as Plaintiff, to be violently assaulted by ANTIFA
7    members with no assistance. Am. Comp. ¶ 16. The Individual Regents Defendants, in their
8    individual capacities, made an affirmative choice and took affirmative action to withhold police
9    protection – in effect ordering a stand-down – knowing full well that persons attending the
10   Yiannopoulos event would be severely injured. Am Comp. ¶ 30.

11       In furtherance of this patent bias against those who do not proscribe to their own ultra-
12   leftist, radical beliefs, the Individual Regents Defendants, in their individual capacities, now have
13   directly caused the serious injuries suffered by Plaintiff and others at the Mr. Yiannopoulos event
14   by directing and ordering the conscious withholding of police protection with the actual
15   knowledge, if not intent, that they would be severely injured by ANTIFA rioters. Am. Comp. ¶
16   16. This behavior is not only unconstitutional, as it effectively cuts off First Amendment rights,
17   but is also extremely dangerous. While fortunately no one was killed by ANTIFA rioters this
18   time, it is only a matter of time before someone is, given that their assaults are carried out with
19   deadly weapons, such as flagpoles. It is shocking to think that the Individual Regents
20   Defendants, who are entrusted with administering to the safety of UC Berkeley students and
21   invitees, would think so little of those that happen to hold different beliefs that they would dare
22   risk their lives. This callous, tortious, and discriminatory behavior must be put to an end, and
23   those who have been injured, such as Plaintiff, must be given legal recourse.

24   **II.   LEGAL STANDARD**

25       Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain
26   statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To
27   defeat a motion to dismiss under Rule 12(b)(6), a claim must contain "enough factual matter
28   (taken as true) to suggest that an agreement was made," explaining that "[a]sking for plausible

1  grounds to infer an agreement does not impose a probability requirement at the pleading state; it
2  simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence
3  of illegal agreement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The *Twombly*
4  Court also explained, more generally, that ". . . a complaint attacked by a Rule 12(b)(6) motion
5  to dismiss does not need detailed factual allegations," yet "must be enough to raise a right to
6  relief above the speculative level" and give the defendant fair notice of what the claim is and the
7  grounds upon which it rests. *Id*. at 555. In other words, Plaintiffs here need only allege "enough
8  facts to state a claim to relief that is plausible on its face" and to "nudge[] the[] claims[] across
9  the line from conceivable to plausible." *Id*. at 570.

10  Subsequently, in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the U.S. Supreme Court
11  elaborated. There, the Court held that a pretrial detainee alleging various unconstitutional actions
12  in connection with his confinement failed to plead sufficient facts to state a claim of unlawful
13  discrimination. The Court stated that the claim for relief must be "plausible on its face," *i.e.*, the
14  plaintiff must plead "factual content that allows the court to draw the reasonable inference that
15  the defendant is liable for the misconduct alleged." *Id*. at 1949. In this regard, determining
16  whether a complaint states a plausible claim for relief is necessarily "a context-specific task." *Id*.
17  at 1950. Therefore, if a complaint alleges enough facts to state a claim for relief that is plausible
18  on its face, such as here, a complaint <u>may not be dismissed</u> for failing to allege additional facts
19  that the plaintiff would need to prevail at trial. *Twombly*, 550 U.S. at 570; *see also Erickson v.*
20  *Pardus*, 551 U.S. 89, 93 (2007) (plaintiff need not allege specific facts, the facts alleged must be
21  accepted as true, and the facts need only give defendant "fair notice of what the *** claim is and
22  the grounds upon which it rests" (quoting *Twombly*, 550 U.S. at 555). grounds upon which it
23  rests" (quoting *Twombly*, 550 U.S. at 555).

24  Where the requirements of Rule 8(a) are satisfied, even "claims lacking merit may be
25  dealt with through summary judgment." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).
26  In this regard, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual
27  proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*,
28  550 U.S. at. 556. Indeed, "[t]he Federal Rules of Civil Procedure erect a powerful presumption

against rejecting pleadings for failure to state a claim." *Cotrell, Ltd. V. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999).

## III. THE LAW

### a. The First Amended Complaint Properly Alleges that the Individual Regents Defendants Were Acting in their Individual Capacities

Robles' First Amended Complaint ("FAC") only brings claims against the Individual Regents Defendants in their individual capacities. *See* Am. Comp. ¶¶ 6-7. This amendment therefore complies with this Court's order of June 4, 2018, saying, "Robles may attempt to avoid Eleventh Amendment immunity by alleging these claims against individual actors in their personal capacities." ECF No. 51 at 10:1-4. Furthermore, as set forth above in footnote 1, Robles dismisses without prejudice all claims against UCPD.

The Amended Complaint states:

> The Individual Regents Defendants, in their individual capacity, in furtherance of their own political and other beliefs, abused their authority under state law to intentionally withhold police protection of the UCPD and BPD for Plaintiff Robles, despite the fact that it was, at a minimum, reasonably foreseeable that the Milo Yiannopolous event would erupt in violence from "protestors." Am. Comp. ¶ 16.
> Despite all of this, the Individual Regents Defendants, acting in their individual capacities, and in furtherance of their own personal political and other beliefs, abused their authority under state law to intentionally withhold police support—in concert with each and every named Defendant—at the Milo Yiannopoulos event that Plaintiff Robles attended, as Milo Yiannopoulos's conservative viewpoint conflicts with the radical, leftist viewpoint shared by the Regents and the majority of the UC Berkeley student body and administration. Am. Comp. ¶ 45

These allegations are not conclusory. Indeed, the FAC alleges that the Individual Regents Defendants were acting pursuant to "their own political and other beliefs." The FAC alleges that Defendant Dirks has gone on record in the media to express his disdain for Yiannopoulos. He called Yiannopoulos, "a troll and provocateur who uses odious behavior in part to 'entertain,' but also to deflect any serious engagement with ideas." Am. Comp. ¶ 76. Furthermore, this personal animosity and bias is also evidenced by the Individual Regents Defendants' conduct after the Yiannopoulos event:

> Even after Plaintiff Robles was violently assaulted at the Milo Yiannopolous event, the Individual Regents Defendants refused to provide a "proper time and venue" for conservative pundit Ann Coulter to speak at UC Berkeley. Ann Coulter stated on The Sean Hannity Show, "You cannot impose arbitrary and

harassing restrictions on the exercise of a constitutional right….None of this has to do with security." Indeed, the Individual Regents Defendants, on information and belief, cancelled Ann Coulter's scheduled speech because they disagree with her politically conservative viewpoints, in furtherance of their pattern and practice of squashing free speech that they disagree with. The Individual Regents Defendants disingenuously offered Ann Coulter a speaking time on May 2, during Dead Week, where there are no classes and students are studying for final exams. Am. Comp. ¶¶ 77-80.

Given the fact that the Amended Complaint has alleged that the Individual Regents Defendants were acting pursuant to their own personal biases and political beliefs, it follows that the Amended Complaint has properly alleged that they were acting in their individual capacities. Indeed, the Individual Regents Defendants would be hard-pressed to seriously argue that the allegations set forth in the Amended Complaint, whereby the Individual Regents Defendants coordinated with and worked in concert with a domestic terrorist group, ANTIFA, to allow the students to be brutally and viciously attacked, were actually performed in their "official" capacities. This defies logic and reason. Thus, Robles has properly alleged that the Individual Regents Defendants were acting in their individual, personal capacities.

**b.    The Eleventh Amendment Does Not Apply to Individual Capacity Suits**

The Supreme Court has held that, "it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." *Hafer v. Melo*, 112 S. Ct. 358, 363 (1991). "That is, the Eleventh Amendment does not erect a barrier against suits to impose "individual and personal liability" on state officials under § 1983." *Id*.   Thus, the Individual Regents Defendants cannot assert the Eleventh Amendment as a shield to escape individual liability.

**c.    The Individual Regents Defendants Do Not Enjoy Qualified Immunity**

The Individual Regents Defendants concede that state officials are not entitled to qualified immunity when their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Krainski v. Nev. ex rel. Bd. of Regents of the Nev. Sys. Of Higher Educ*., 616 F.3d 963, 968 (9th Cir. 2010).

The Amended Complaint clearly alleges a violation of Robles' constitutional rights by

harassing restrictions on the exercise of a constitutional right….None of this has to do with security." Indeed, the Individual Regents Defendants, on information and belief, cancelled Ann Coulter's scheduled speech because they disagree with her politically conservative viewpoints, in furtherance of their pattern and practice of squashing free speech that they disagree with. The Individual Regents Defendants disingenuously offered Ann Coulter a speaking time on May 2, during Dead Week, where there are no classes and students are studying for final exams. Am. Comp. ¶¶ 77-80.

Given the fact that the Amended Complaint has alleged that the Individual Regents Defendants were acting pursuant to their own personal biases and political beliefs, it follows that the Amended Complaint has properly alleged that they were acting in their individual capacities. Indeed, the Individual Regents Defendants would be hard-pressed to seriously argue that the allegations set forth in the Amended Complaint, whereby the Individual Regents Defendants coordinated with and worked in concert with a domestic terrorist group, ANTIFA, to allow the students to be brutally and viciously attacked, were actually performed in their "official" capacities. This defies logic and reason. Thus, Robles has properly alleged that the Individual Regents Defendants were acting in their individual, personal capacities.

**b.    The Eleventh Amendment Does Not Apply to Individual Capacity Suits**

The Supreme Court has held that, "it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." *Hafer v. Melo*, 112 S. Ct. 358, 363 (1991). "That is, the Eleventh Amendment does not erect a barrier against suits to impose "individual and personal liability" on state officials under § 1983." *Id*.   Thus, the Individual Regents Defendants cannot assert the Eleventh Amendment as a shield to escape individual liability.

**c.    The Individual Regents Defendants Do Not Enjoy Qualified Immunity**

The Individual Regents Defendants concede that state officials are not entitled to qualified immunity when their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Krainski v. Nev. ex rel. Bd. of Regents of the Nev. Sys. Of Higher Educ*., 616 F.3d 963, 968 (9th Cir. 2010).

The Amended Complaint clearly alleges a violation of Robles' constitutional rights by

the Individual Regents Defendants. The crux of the Individual Regents Defendants' motion to dismiss this portion of the Amended Complaint is misguided, as they assert that Robles' constitutional rights were not violated because they had no duty to protect her from the brutal attack that she suffered. Regardless of whether this legal assertion is true, it is not relevant to the facts alleged in the Amended Complaint. The Amended Complaint sets forth facts that allege that the Individual Regents Defendants <u>actively</u> worked in concert with each and every Defendant to shut down the Yiannopoulos event, which resulted in Robles' injuries:

> Thus, each and every Defendant worked in concert, jointly and severally, to organize and cultivate the riots and violent assaults that led to Plaintiff Robles injuries. The Individual Regents Defendants worked in concert with the BPD and UCPD to withhold police support to the attendees of the Milo Yiannopoulos who were brutally attacked by ANTIFA members and violent protestors, including, but not limited to, Miller and Mirabdal, and Does 1-20.  Am. Comp. ¶ 84.

As such the relevant inquiry is not whether the Individual Regents Defendants had a duty to protect Robles and the other attendees of the Yiannopoulos event, but rather, whether their acting in concert, in their individual capacities, with ANTIFA and the other co-Defendants to shut down the Yiannopoulos event violated Robles' rights and caused her harm. Under this inquiry, there is no doubt that Robles' claims against the Individual Regents Defendants are properly pled and therefore cannot be dismissed particularly at this preliminary stage of the case.

### i. First Amendment Claim

The Individual Regents Defendants misstate the facts that clearly give rise to a valid First Amendment claim. This was not a mere failure to protect Robles' rights. Instead, the Amended Complaint clearly alleges that the Individual Regents Defendants took affirmative steps to <u>prevent</u> Plaintiff from exercising her First Amendment rights.

> Thus, each and every Defendant worked in concert, jointly and severally, to organize and cultivate the riots and violent assaults that led to Plaintiff Robles injuries. The Individual Regents Defendants worked in concert with the BPD and UCPD to withhold police support to the attendees of the Milo Yiannopoulos who were brutally attacked by ANTIFA members and violent protestors, including, but not limited to, Miller and Mirabdal, and Does 1-20.  Am. Comp. ¶ 84.

The Individual Regents Defendants did not simply sit by while Robles was deprived of her First Amendment rights. To the contrary, it is alleged that the Individual Regents Defendants, acting

7

in their individual capacities, and as part of a conspiracy and in concert with each and every Defendants, took affirmative steps to actively ensure that Plaintiff would not be able to exercise her First Amendment rights by shutting down the Yiannopoulos event. The withholding of police protection was simply the Individual Regents Defendants' role in this conspiracy. The distinction is critical and it mandates the survival of Robles's First Amendment claims against the Individual Regents Defendants in their individual capacities.

### ii. Equal Protection Claim

The Individual Regents Defendants falsely claim that Plaintiff fails to properly allege a claim for Equal Protection because Plaintiff alleges no "no facts whatsoever with respect to the UC Defendants' provision of police protection or enforcement of university anti-discrimination policies in any similar circumstances involving individuals with either the same or different sexual orientations or political viewpoints." This is not true.

The Amended Complaint alleges:

> …the Individual Regents Defendants— in concert with each and every named Defendant, jointly and severally— also intentionally withheld proper security for the Milo Yiannopoulos event because Milo Yiannopoulos himself is gay and a large number of his supporters identify as gay. The Individual Regents Defendants—in concert with each and every named Defendant, jointly and severally—acting under color of state law, intentionally discriminated against Plaintiff Robles as a gay individual and a female individual—a member of an identifiable class— in violation of Plaintiff Robles' constitutional rights. Am. Comp. at 6:2-8.

Thus, Plaintiff properly alleged how the Individual Regents Defendants, acting in their individual capacities, discriminated against Plaintiff based on her political beliefs, gender, and sexual orientation.

Furthermore, the Amended Complaint alleges UC Berkeley "regularly provides adequate police protection for politically charged events and protests on its campus without incident. But on this day, the Individual Regents Defendants—in concert with each and every named Defendant, jointly and severally—willfully withheld their police manpower from protecting students and event attendees because the speaker and his supporters went against the political beliefs of the majority of UC Berkeley's students and its administration." Am. Comp. at 5:13-6:1. Indeed, the City of Berkley, who are the Individual Regents Defendants' co-Defendants, and

1  alleged co-conspirators, provided excellent police protection just recently, arresting 20 people
2  and confiscating numerous weapons and explosives at so-called "alt-right" protests in Berkeley.[4]

3  Lastly, Plaintiff pleads in her Amended Complaint that "[i]t was the intentional and
4  conscious decision and direction of the Regents […] to withhold effective police protection of
5  politically conservative attendees of the Milo Yiannopolous event because Milo Yiannopolous
6  and a large number of his supporters, including Plaintiff Robles, are gay and female." Am.
7  Comp. ¶ 96. The Individual Regents Defendants knew that Milo Yiannopolous supporters would
8  clearly be politically conservative, and that they would very likely be gay or support the gay
9  community, as he is a conservative, gay activist. Therefore, they chose to withhold proper police
10 protection for these attendees that were at odds with the beliefs of the majority of UC Berkeley's
11 students and administration. As such, Plaintiff has properly pled facts sufficient to support its
12 Equal Protection Claim and the Individual Regents Defendants' motion in this regard should be
13 denied.

### iii. State Law Claims

The Individual Regents Defendants erroneously assert that Plaintiff's claims are precluded by Cal. Gov't Code § 815(a) and Cal. Gov't Code § 845 and that Plaintiff did not properly allege a cause of action under the Bane Act.

*First*, to any extent that Cal. Gov't Code § 815(a) applies, it clearly is limited solely to Plaintiff's tort claims. As such, Plaintiff's claims for violation of 42 U.S.C. ¶ 1983 and the Bane Act against the Individual Regents Defendants are excluded.

*Second*, Cal. Gov't Code § 845 is inapplicable, as the Amended Complaint sets clearly sets forth that the "failure to provide police services" involved here "do not involve the kind of 'budgetary and political decisions which are involved in hiring and deploying a police force." *Zuniga v. Hous. Auth.*, 41 Cal. App. 4th 82, 100 (1995) (internal quotations omitted). Indeed, as pled in the Amended Complaint, the police officers were actually <u>physically present</u> at the scene,

---

[4] Robert Gearty, *Berkeley police arrest 20, seize 'dozens of weapons' at opposing protests*, Fox News, Aug. 5, 2018, available at: http://www.foxnews.com/us/2018/08/05/berkeley-police-warn-against-weapons-masks-ahead-2-protests.html

Am. Comp. ¶¶ 57-58, but on order and direction from the Individual Regents Defendants, stood there and simply watched individuals, including Plaintiff, get violently assaulted and did nothing. Thus, the fundamental purpose of Section 845, to "protect the budgetary and political decisions which are involved in hiring and deploying a police force" is simply not at play here. *Lopez v. S. Cal. Rapid Transit Dist.,* 40 Cal. 3d 780, 792 (1985).

In fact, in *Lopez*, the Supreme Court of California found that Section 845 was not implicated when the complaint pled more than the simple fact that the public entity was "negligent in failing to provide police personnel or armed guards on board its buses." *Id*. "Rather, the gravamen of plaintiffs' complaint is that the bus driver, who was already hired by RTD and was present on the scene and aware of the violent disturbance, did absolutely nothing to protect plaintiffs, but simply continued to drive the bus as if nothing was was wrong." *Id*. This is precisely the situation that was pled in the Amended Complaint. UCPD was present at the scene and witnessed Plaintiff being violently assaulted, but still simply stood in the Student Union Building and did nothing. Comp. ¶ 53. Thus, Section 845 is inapplicable.

*Third*, the Individual Regents Defendants' assertion that Plaintiff's Bane Act claim should be dismissed because Plaintiff does not make any allegation that the Individual Regents Defendants threatened or committed violent acts against her must fail. It is clearly alleged that the Individual Regents Defendants acted in concert with each and every Defendant to threaten or commit violent acts against her. Am. Comp. ¶ 84. This allegation is far from conclusory. It is clearly set forth in the Amended Complaint that the Individual Regents Defendants intentionally furthered violence against Plaintiff and others because they happened to harbor different political and other viewpoints from Plaintiff. Am Comp. ¶ 75. This is no secret. "Nicholas Dirks, the former Chancellor of UC Berkeley, has called Milo Yiannopoulos 'a troll and provocateur who uses odious behavior in part to "entertain," but also to deflect any serious engagement with ideas.'" Comp. ¶ 76. Thus, the Amended Complaint not only sets forth not only <u>how</u> the Regents furthered violence against Plaintiff – by ordering UCPD to withhold police protection while she was violently assaulted – but also sets forth in extreme detail the why – a long, disturbing history of curtailing viewpoints that they do not agree with. Thus, Plaintiff's Bane Act claim is pled with

more than the requisite specificity and must be allowed to proceed.

### d. Plaintiff is Entitled to Punitive Damages

As conceded by the Individual Regents Defendants, punitive damages against them can be awarded in their personal capacities if their conduct was ""motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of [Plaintiff]" as required to support a claim for punitive damages under section 1983. *Smith v. Wade*, 461 U.S. 30, 56 (1983); Cal. Civ. Code § 3294." This is exactly what was alleged here.

The Amended Complaint sets forth an abundance of facts that clearly show that the Individual Regents Defendants, at a minimum, should have known that violence was very likely to erupt at the Yiannopoulos event, given the past course of events. Am. Comp. ¶¶ 30-45. Thus, the alleged intentional withholding of police protection, in concert with each and every named Defendant, in order to shut down an event that they did not personally agree with shows, <u>at a minimum</u>, reckless or callous indifference to Robles' federally protected rights. Indeed, what was alleged in the Amended Complaint goes far beyond mere recklessness, but instead intentional and willful misconduct. Robles has clearly alleged that the conduct of the Individual Regents Defendants was intentional:

> …the Individual Regents Defendants, acting in their individual capacities, and in furtherance of their own personal political and other beliefs, abused their authority under state law to intentionally withhold police support—in concert with each and every named Defendant—at the Milo Yiannopoulos event that Plaintiff Robles attended, as Milo Yiannopoulos's conservative viewpoint conflicts with the radical, leftist viewpoint shared by the Regents and the majority of the UC Berkeley student body and administration. Am. Comp. ¶ 45.

As such, Robles is entitled to punitive damages.

### IV. CONCLUSION

At the heart and soul of this Amended Complaint is this: should public universities, such as UC Berkeley, be safe places for <u>all</u> individuals to express their ideological viewpoints, or should only those who are in the leftist majority be tolerated? The answer to this question would and should seem simple, but the environment fostered and carefully crafted by the Individual Regents Defendants has become one of exclusion, not inclusion. Even then, it is one thing for those in the ideological minority to face social backlash. It is another thing altogether for them to

face violent assault and the possibility of death for simply exercising their views under the First Amendment.

It is now therefore incumbent upon this Court to act. America's universities have long been places where individuals can express ideological differences safely and freely exchange thoughts and ideas with people from different backgrounds and cultures. When espousing views dissimilar to the Individual Regents Defendants' leftist ideology and practice, this no longer appears to be the case at UC Berkeley. Plaintiff must therefore be allowed her due process to pursue her claims, or otherwise, Sproul Plaza - the birthplace of what came to be known as the Free Speech Movement in 1964 – will regrettably, in 2017 become its final resting place.

DATED: August 6, 2018                    Respectfully submitted,

Larry Klayman, Esq.
Freedom Watch, Inc.
2020 Pennsylvania Ave N.W. #345
Washington, D.C. 20006
Tel: (561) 558-5336
Attorneys for Plaintiff
KIARA ROBLES



Michael D. Kolodzi
THE KOLODZI LAW FIRM
433 North Camden Drive, Suite 600
Beverly Hills, California 90210
Telephone: 310.279.5212
Facsimile: 866.571.6094
Email: mdk@mdklawfirm.com


*/s/ Larry Klayman*
LARRY KLAYMAN, ESQ.
Attorneys for Plaintiff
KIARA ROBLES