1    BRADLEY S. PHILLIPS (SBN 85263)           CHARLES F. ROBINSON (SBN 113197)
     brad.phillips@mto.com                      charles.robinson@ucop.edu
2    MUNGER, TOLLES & OLSON LLP                 MARGARET L. WU (SBN 184167)
     350 South Grand Avenue                     margaret.wu@ucop.edu
3    Fiftieth Floor                             UNIVERSITY OF CALIFORNIA
     Los Angeles, California 90071-3426         Office of the General Counsel
4    Telephone:    (213) 683-9100               1111 Franklin Street, 8th Floor
     Facsimile:    (213) 687-3702               Oakland, CA  94607-5200
5                                               Telephone:    (510) 987-9800
     BRYAN H. HECKENLIVELY (SBN 279140)         Facsimile:    (510) 987-9757
6    bryan.heckenlively@mto.com
     ELIZABETH A. KIM (SBN 295277)
7    elizabeth.kim@mto.com
     MUNGER, TOLLES & OLSON LLP
8    560 Mission Street
     Twenty-Seventh Floor
9    San Francisco, California 94105-2907
     Telephone:    (415) 512-4000
10   Facsimile:    (415) 512-4077

11   Attorneys for Defendants THE REGENTS OF
     THE UNIVERSITY OF CALIFORNIA, JANET
12   NAPOLITANO, AND NICHOLAS DIRKS

13                        UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

15

16   KIARA ROBLES,                          Case No. 4:17-cv-04864 CW

17          Plaintiff,                       **REPLY IN SUPPORT OF MOTION TO
                                             DISMISS FIRST AMENDED
18     vs.                                   COMPLAINT**

19   IN THE NAME OF HUMANITY, WE             Date:      Sept. 4, 2018
     REFUSE TO ACCEPT A FASCIST              Time:      2:30 p.m.
20   AMERICA (A.K.A. ANTIFA), et al.,        Judge:     Hon. Claudia Wilken

21          Defendants.
                                             Trial Date:      None Set
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT .........................................................................................................1

        A.      Plaintiff's Section 1983 Claims and State-Law Claims Against UCPD and
                the UC Defendants in Their Official Capacities Are Barred....................................1

        B.      Plaintiff's Claims Against UC Defendants in Their Personal Capacities
                Must Be Dismissed with Prejudice ...........................................................................2

                1.      Plaintiff Does Not Allege Facts Sufficient to Show that UC
                        Defendants Acted in Their Personal Capacities ...............................................2

                2.      The UC Defendants Are Entitled to Qualified Immunity from
                        Damages Claims ..............................................................................................5

        C.      Plaintiff's State-Law Claims Must Be Dismissed Under State Law.........................6

        D.      Plaintiff Fails to Plead Facts Sufficient to State a First Amendment Claim .............9

        E.      Plaintiff Fails to Plead Facts Sufficient to State an Equal-Protection Claim ............9

        F.      Plaintiff Fails to State a Claim for Punitive Damages...............................................10

        G.      Plaintiff's Claims Should Be Dismissed with Prejudice ..........................................11

III.    CONCLUSION .....................................................................................................11

# <u>TABLE OF AUTHORITIES</u>

<b><u>Page(s)</u></b>

**FEDERAL CASES**

*Alexander v. Univ. of N. Fla.*,
   39 F.3d 290 (11th Cir. 1994)................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................4

*Brown v. Contra Costa Cnty.*, No. C12-1923 PJH, 2013 WL 1091844 (N.D. Cal.
   Mar. 14, 2013)................................................................................8

*Burns v. Cnty. of King*,
   883 F.2d 819 (9th Cir. 1989).................................................................4

*Carvalho v. Equifax Info. Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010)...............................................................11

*Clark v. Cal. Dep't of Forestry & Fire Prot.*,
   212 F. Supp. 3d 808 (N.D. Cal. 2016) ........................................................2

*Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*,
   644 F. Supp. 2d 1177 (N.D. Cal. 2009) .......................................................5

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014).................................................................8

*Herguan Univ. v. Immigration & Customs Enf't*,
   258 F. Supp. 3d 1050 (N.D. Cal. 2017) ......................................................10

*Hernandez v. City of San Jose*,
   --- F.3d ----, 2018 WL 3597324 (9th Cir. July 27, 2018)......................................6

*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005).................................................................1

*Icon Groupe, LLC v. Wash. Cnty.*,
   948 F. Supp. 2d 1202 (D. Or. 2013).........................................................10

*Lacey v. Maricopa*,
   693 F.3d 896 (9th Cir. 2012).................................................................4

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014)................................................................8

1

## **TABLE OF AUTHORITIES**
### (Continued)

2

Page(s)

3

*Mandel v. Bd. of Trustees of Cal. St. Univ.,*
No. 17-cv-03511-WHO, 2018 WL 1242067 (N.D. Cal. Mar. 8, 2018) .................................3, 4

4

5

*Melendez-Garcia v. Sanchez,*
629 F.3d 25 (1st Cir. 2010) ..........................................................................................................6

6

7

*Moss v. U.S. Secret Serv.,*
572 F.3d 962 (9th Cir. 2009) .......................................................................................................8

8

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984) ........................................................................................................................2

9

10

*Peralta v. Cal. Franchise Tax Bd.,*
124 F. Supp. 3d 993 (N.D. Cal. 2015) .........................................................................................2

11

*Porter v. Osborn,*
546 F.3d 1131 (9th Cir. 2008) .....................................................................................................6

12

13

*Saucier v. Katz,*
533 U.S. 194 (2001) ..................................................................................................................5, 6

14

15

*Scott v. Cal. State Lotto,*
19 F.3d 1441 (9th Cir. 1994) .......................................................................................................2

16

17

*Smith v. Wade,*
461 U.S. 30 (1983) ......................................................................................................................11

18

*Steshenko v. Gayrard,*
44 F. Supp. 3d 941 (N.D. Cal. 2014) ..........................................................................................4

19

20

*Switzer v. Weaver,*
No. 5:12cv00057, 2012 WL 6964863 (W.D. Va. Nov. 5, 2012), *aff'd,* 521 F.
App'x 208 (4th Cir. 2013) ..........................................................................................................10

21

22

*Taylor v. List,*
880 F.2d 1040 (9th Cir. 1989) .....................................................................................................3

23

24

*Will v. Mich. Dep't of State Police,*
491 U.S. 58 (1989) ....................................................................................................................1, 2

25

26

*Yassin v. Corr. Corp. of Am.,*
No. 11cv0421 LAB (JMA), 2011 WL 4501403 (S.D. Cal. Sept. 27, 2011) .............................10

27

**STATE CASES**

28

*Gates v. Superior Court,*
32 Cal. App. 4th 481 (1995) ........................................................................................................7

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Lopez v. Southern California Rapid Transit District*,
    40 Cal.3d 780 (1985)................................................................................7

*Zelig v. Cnty. of L.A.*,
    27 Cal.4th 1112 (2002)............................................................................7

**STATE STATUTES**

Cal. Civ. Code § 52.1 ..................................................................................8

Cal. Civ. Code § 3294 ................................................................................11

Cal. Gov't Code § 845................................................................................7, 8

1    I.      **INTRODUCTION**

2           Plaintiff Kiara Robles ("Plaintiff") has abandoned her claims against the University of

3    California Police Department ("UCPD") and she does not dispute that all of her official-capacity

4    claims against Defendants Janet Napolitano, the President of the University of California, and

5    Nicholas Dirks, the former Chancellor of the University of California, Berkeley, are barred.

6    Instead, Plaintiff asserts—without any factual basis—that Napolitano and Dirks should be held

7    liable in their "individual" capacities.  But, as made plain by Plaintiff's Opposition ("Opp."), the

8    FAC alleges no facts showing that either of those two Defendants acted in anything other than

9    their official capacities.  Despite being afforded an opportunity to amend, Plaintiff has not and

10   cannot state a claim against the UC Defendants.  Even if she could, the individual UC Defendants

11   are entitled to qualified immunity and each of Plaintiff's claims is also legally insufficient on the

12   merits.  The claims should therefore be dismissed with prejudice.

13   II.     **ARGUMENT**

14          A.      **Plaintiff's Section 1983 Claims and State-Law Claims Against UCPD and the**
                    **UC Defendants in Their Official Capacities Are Barred**
15

16          Plaintiff does not dispute that all of her claims against UCPD and the UC Defendants in

17   their official capacities are barred.  These claims must be dismissed with prejudice.

18          First, Plaintiff purports to voluntarily dismiss UCPD "without prejudice," but she does not

19   dispute that she has no claim against UCPD as a matter of law.  State entities are not "persons"

20   subject to suit under section 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

21   Plaintiff does not and cannot contest that The Regents is an arm of the State of California and that

22   UCPD is the same legal entity as The Regents.  (Mot. at 6.)  Indeed, Plaintiff's continued pursuit

23   of these meritless claims against UCPD despite being repeatedly informed in briefing and this

24   Court's June 4, 2018 Order that such claims are legally untenable is improper under Federal Rule

25   of Civil Procedure 11.  *See, e.g.*, *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (affirming

26   Rule 11 sanctions where claim and plaintiff's arguments in support of claim lacked legal merit).

27          Second, Plaintiff does not dispute that her section 1983 claims against the individual UC

28   Defendants in their official capacities are also barred under controlling Supreme Court precedent.

(Mot. at 7 (citing *Will*, 491 U.S. at 71).)  Nor does Plaintiff dispute that she fails to plead any claim for prospective injunctive relief against the individual UC Defendants.  (Mot. at 7, n.1.) Plaintiff's section 1983 claims against the individual UC Defendants in their official capacities should be dismissed with prejudice.

Third, Plaintiff also does not dispute that her state-law claims against The Regents and the individual UC Defendants in their official capacities are barred by the Eleventh Amendment. (Mot. at 7-8 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984)).) Plaintiff's third, fourth, fifth, and eighth claims for relief against the UC Defendants must therefore be dismissed with prejudice.

> **B.    Plaintiff's Claims Against UC Defendants in Their Personal Capacities Must Be Dismissed with Prejudice**
>
> > **1.    Plaintiff Does Not Allege Facts Sufficient to Show that UC Defendants Acted in Their Personal Capacities**

Having "dismisse[d]" UCPD from the FAC in her Opposition, Plaintiff now purports to sue Napolitano and Dirks *only* in their "individual" capacities (FAC ¶¶ 5-6; Opp. at 1, n.1, 5-6.) But Plaintiff cannot avoid dismissal simply by saying that, as her bare assertions of wrongdoing by Napolitano and Dirks are insufficient as a matter of law.  Plaintiff fails to set forth factual allegations "from which the court can infer that the individuals acted in their individual capacities."  *Peralta v. Cal. Franchise Tax Bd.*, 124 F. Supp. 3d 993, 1001 (N.D. Cal. 2015) (citing *Scott v. Cal. State Lotto*, 19 F.3d 1441 (9th Cir. 1994)).  Because Plaintiff has not and demonstrably cannot plead "specific facts regarding each individual Defendant's conduct sufficient to plausibly state a cause of action against that Defendant individually," *Clark v. Cal. Dep't of Forestry & Fire Prot.*, 212 F. Supp. 3d 808, 814-15 (N.D. Cal. 2016), Plaintiff's claims against Napolitano and Dirks should be dismissed with prejudice.

Plaintiff identifies only two allegations purportedly specific to the individual UC Defendants: (1) that "[t]he Individual Regents Defendants, in their individual capacity, in furtherance of their own political and other beliefs, abused their authority under state law to intentionally withhold police protection"; and (2) "the Individual Regents Defendants, on information and belief, cancelled Ann Coulter's scheduled speech because they disagree with her

politically conservative viewpoints, in furtherance of their pattern and practice of squashing free speech that they disagree with."  (Opp. at 5-6.)  These conclusory allegations—barely amended from nearly identical allegations *against The Regents* in the original Complaint—are not enough.[1] Plaintiff fails to identify a single fact demonstrating that either Napolitano or Dirks "directly engaged in culpable conduct."  *Mandel v. Bd. of Trustees of Cal. St. Univ.*, No. 17-cv-03511-WHO, 2018 WL 1242067, at *11 (N.D. Cal. Mar. 8, 2018); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").

In *Mandel*, for example, the court dismissed First Amendment claims against university officials in their personal capacities where the plaintiffs asserted that defendants had issued a "stand down" order to the police and failed to protect the plaintiffs from violent protestors. *Mandel*, 2018 WL 1242067, at *12.  The *Mandel* plaintiffs relied on similarly conclusory assertions that the individual university defendants discriminated against them in withholding police protection.  *See, e.g.*, No. 17-cv-03511-WHO, Dkt. #57, ¶ 14 ("Plaintiffs Mandel and Volk have been repeatedly targeted and placed in threatening situations on SFSU's campus, *because* they are Jewish, and specifically *because of* clear actions and decisions executed by SFSU, and further permitted, if not endorsed, by its administrators and faculty—who have fostered, fomented, and systematically instilled an anti-Jewish animus at SFSU.").  These bare allegations of alleged wrongdoing and wrongful intent were insufficient to survive a motion to dismiss because they were not allegations of *fact* plausibly supporting an inference of individual culpability.  *Mandel*, 2018 WL 1242067, at *12-13.  Indeed, even more specific allegations regarding the individual

---

[1] In her original Complaint, Plaintiff asserted that "the Regents intentionally withheld police support—in concert with each and every named Defendant—at the Milo Yiannopoulos event that Plaintiff Robles attended, as Milo Yiannopoulos's conservative viewpoint conflicts with the radical, leftist viewpoint shared by the Regents and the majority of the UC Berkeley student body and administration."  (Compl. ¶ 42; *see also* ¶ 67 (same).)  Plaintiff merely substitutes her conclusory allegations against The Regents with substantially similar and equally conclusory allegations against the individual UC Defendants.  Even Plaintiff's reference to the Ann Coulter event merely swapped out "the Regents" with the "Individual Regents Defendants."  (*See* Compl. ¶ 71 ("the Regents, on information and belief, cancelled Ann Coulter's scheduled speech because they disagree with her politically conservative viewpoints, in furtherance of their pattern and practice of squashing free speech that they disagree with").)

1   defendants' purported advanced knowledge of wrongful conduct by third parties were insufficient:

2   "simply having knowledge and failing to act will not suffice to impose personal liability on

3   defendants in either an official capacity … or in a personal capacity."  *Id.* at 13.

4          Here too, Plaintiff pleads no facts supporting a plausible inference regarding either

5   Napolitano's or Dirks' culpable conduct or specific intent.  Instead, Plaintiff relies only on vague

6   assertions that the individual UC Defendants disagree with conservative viewpoints, that Dirks

7   once criticized Yiannopoulos in the media, and that they "intentionally with[e]ld police support."

8   (Opp. at 5; FAC ¶ 45.)  But Plaintiff has not alleged any facts demonstrating that either Napolitano

9   or Dirks personally participated in Plaintiff's alleged deprivation of rights, much less that either

10  acted with the specific intent to deprive Plaintiff of her rights because of her sexual orientation or

11  political beliefs.

12         Nor can Plaintiff rely on her bare assertions that Napolitano and Dirks acted "in concert

13  with each and every named Defendant."  (Opp. at 5); *see Bell Atl. Corp. v. Twombly*, 550 U.S.

14  544, 567–67 (2007) ("an allegation of parallel conduct and a bare assertion of conspiracy" are

15  insufficient to plead antitrust conspiracy); *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir.

16  1989) (section 1983 plaintiff "must state specific facts to support the existence of the claimed

17  conspiracy").  Plaintiff does not allege a single fact to support the existence of this fantastical

18  conspiracy.  Plaintiff fails to allege any facts (nor could she) detailing the specific agreement

19  between the alleged conspirators; the scope of the conspiracy; the role of President Napolitano or

20  former-Chancellor Dirks in the conspiracy; or when or how the conspiracy operated.  *See Lacey v.*

21  *Maricopa*, 693 F.3d 896, 937 (9th Cir. 2012) (conspiracy allegations insufficient when plaintiff

22  did not plead the scope of the conspiracy, what role the defendant had, or when and how the

23  conspiracy operated*); see also Steshenko v. Gayrard*, 44 F. Supp. 3d 941, 954-55 (N.D. Cal. 2014)

24  (dismissing section 1983 claim based on purported conspiracy where plaintiff failed to allege facts

25  demonstrating specific agreement, scope of conspiracy, and role of defendants.)

26         Plaintiffs' claims against the UC Defendants in their individual capacities should therefore

27  be dismissed with prejudice.

28

**2.      The UC Defendants Are Entitled to Qualified Immunity**

Even if Plaintiff had sufficiently pled claims against the individual UC Defendants in their individual capacities (which she has not), the individual UC Defendants are entitled to qualified immunity.  Plaintiff cannot satisfy either step of the *Saucier* analysis because (1) she fails to allege facts demonstrating that either Napolitano or Dirks violated any of Plaintiff's rights and (2) it was not clearly established that university officials owed Plaintiff any duty to protect her from third-party interference with her rights.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); (Mot. at 11-13).

First, Plaintiff fails to allege sufficient facts demonstrating that either Napolitano's or Dirks' conduct violated a constitutional right.  Plaintiff does not dispute that the individual UC Defendants owed her no duty to protect her from third-party violence or interference with her rights.  (*See* Opp. at 9-10.)  Instead, Plaintiff asserts that the individual UC Defendants "worked in concert with the [Berkeley Police Department] and UCPD to withhold police support to the attendees of the Milo Yiannopoulos who were brutally attacked by ANTIFA members and violent protestors."  (*Id.* at 7, 10; FAC ¶ 84.)  But this attempted sleight of hand only highlights the fatal problem with Plaintiff's allegations.  The only purportedly wrongful conduct by Napolitano and Dirks that Plaintiff identifies is the decision to *withhold* police protection, but the law is clear that the individual UC Defendants owed Plaintiff no duty to provide police protection in the first instance.  Nor can Plaintiff avoid this fundamental flaw by asserting the existence of a conspiracy. The individual UC Defendants' alleged decision to *coordinate* policing with UCPD and the City of Berkeley hardly demonstrates that they conspired with ANTIFA members and violent protestors to injure Plaintiff.  *See, e.g.*, *Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F. Supp. 2d 1177, 1201-02 (N.D. Cal. 2009) ("[P]laintiffs' vague and conclusory assertions of wrongdoing … are insufficient to establish the requisite factual predicate to demonstrate that the … defendants personally violated any of the plaintiffs' constitutional rights" under *Saucier*); *see supra* at 2-4; (Mot. at 17-22).

Second, Plaintiff also cannot satisfy the second step under *Saucier* because she has not alleged that any UC Defendant violated any clearly established right.  Plaintiff all but concedes that a reasonable official in the position of either of the individual UC Defendants would have had

1   no reason to think his or her conduct violated any constitutional rights.  Plaintiff fails to even

2   acknowledge, much less respond to, the line of cases finding that university officials have

3   qualified immunity from claims based on an alleged failure to protect plaintiffs from violent

4   interference with their rights by third parties.  *See, e.g.*, *Melendez-Garcia v. Sanchez*, 629 F.3d 25

5   (1st Cir. 2010) (qualified immunity from claims arising from violent protest on campus);

6   *Alexander v. Univ. of N. Fla.*, 39 F.3d 290, 292 (11th Cir. 1994) (per curiam) (qualified immunity

7   from claims arising from school shooting); (*see also* Mot. at 11-13 (citing additional cases)).

8   Plaintiff cannot avoid this authority by arguing that the individual UC Defendants "took

9   affirmative steps to prevent" Plaintiff's exercise of her rights.  The only "affirmative steps"

10  Plaintiff alleges is the decision to *withhold* police protection, which is by definition not affirmative

11  and, in any event, it is a decision that no reasonable official could believe would violate any

12  rights.[2]  Plaintiff's conclusory conspiracy allegations fare no better, as she fails to allege a single

13  fact to support her conspiracy claim.  *See supra* at 4.

14         Because the individual UC Defendants are entitled to qualified immunity under either step

15  of the *Saucier* analysis, Plaintiff's claims should be dismissed with prejudice.

16         **C.    Plaintiff's State-Law Claims Must Be Dismissed Under State Law**

17         First, Plaintiff concedes that her state-law tort claims against the individual UC Defendants

18  are barred by California's Government Claims Act.  (Opp. at 9; Mot. at 8-11.)  Plaintiff does not

19  dispute that section 820.2 immunizes the individual UC Defendants for claims arising from their

20  exercise of the discretion vested in them as the President of the University of California and

21  former Chancellor of the University of California, Berkeley.  Those claims should therefore be

22  dismissed with prejudice.

23

24  [2] Unlike in *Hernandez v. City of San Jose*, --- F.3d ----, 2018 WL 3597324 (9th Cir. July 27,
    2018), which Plaintiff does not rely upon, there are no allegations in this case of *affirmative* steps

25  taken by the police to create a further danger to Plaintiff.  *See infra* at 7-10.  Even if there had been
    such allegations, they would be insufficient to defeat qualified immunity or create a viable claim

26  here because Plaintiff would need to make factual allegations demonstrating a purpose to cause
    harm.  *Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008) ("When an officer encounters fast

27  paced circumstances presenting competing public safety obligations, the purpose to harm standard
    must apply.")  The *Hernandez* court applied a deliberate indifference standard, but the

28  circumstances alleged there were not fast-paced in the same way as the riot conditions alleged here
    and the city apparently did not argue that a purpose-to-harm standard should apply under *Porter*.

REPLY I/S/O MOTION TO DISMISS FAC

1    Second, even absent Plaintiff's apparent concession, all of her state-law claims are barred

2    by Cal. Gov't Code § 845, which provides absolute immunity for failure to provide adequate

3    police protection.   Plaintiff asserts that the bar does not apply because "'failure to provide police

4    services' involved here" does not implicate the "budgetary and political decisions which are

5    involved in hiring and deploying a police force."  (Opp. at 9-10.)  California courts have

6    overwhelmingly rejected Plaintiff's position.

7    In *Gates v. Superior Court*, 32 Cal. App. 4th 481, 495-96 (1995), the court held that the

8    county was "immune from liability for its failure to deploy its numerous *available* on-duty police

9    officers to provide protection to persons injured during a riot."  *Zelig v. Cnty. of L.A.*, 27 Cal.4th

10   1112, 1143 (2002) (discussing *Gates*).  The *Gates* plaintiffs alleged that defendants knowingly

11   *withdrew* police officers from certain areas based on race, directed officers not to respond to calls

12   for assistance, and ordered that available officers not be deployed in response to calls for help.  *Id.*;

13   *Gates*, 32 Cal. App. 4th at 490.  None of this conduct was sufficient to defeat the absolute

14   immunity provided by section 845, as these decisions "squarely fall[] within the ambit of a 'failure

15   to provide sufficient police protection service[s].'"  *Gates*, 32 Cal. App. 4th at 503-04.  Plaintiff

16   may take issue with the University's alleged decision of "whether and how to equip and deploy

17   available police personnel," but this decision falls within the immunity provided by section 845.

18   *Zelig*, 27 Cal.4th at 1144; *Gates*, 32 Cal. App. 4th at 502-03.  A decision not to risk the safety of

19   police personnel or provoke even greater violence is precisely the type of political and policy

20   judgment that section 845 reserves for policymakers.

21   Nor can Plaintiff rely on *Lopez v. Southern California Rapid Transit District*, 40 Cal.3d

22   780 (1985).  The California Supreme Court already rejected the same argument in *Zelig*.   As the

23   *Zelig* Court explained, *Lopez* dealt with "statutory and common law special relationships between

24   the operator of a common carrier and its passengers that established a duty of care on the part of

25   the bus driver to take *some* action to protect passengers from assaults by fellow passengers."

26   *Zelig*, 27 Cal.4th at 1145.  *Lopez* had nothing to do with "police services," as the plaintiffs' theory

27   of liability was based on the *bus driver's* inaction, not any action by a police officer.  *Lopez*, 40

28   Cal.3d at 792.  *Lopez* is therefore inapposite.  There is no comparable special relationship or duty

1    here, and the gravamen of Plaintiff's FAC is that the individual UC Defendants withheld *police*

2    *services* by allegedly issuing a stand-down order.

3        Third, even if Cal. Gov't Code § 845 did not bar her Bane Act claim, Plaintiff fails to plead

4    a claim under the Act.  Plaintiff again relies on her conclusory conspiracy allegations, but she fails

5    to identify a single fact demonstrating that either Napolitano or Dirks personally threatened or

6    committed violent acts against her.  Plaintiff's conclusory assertion that Napolitano and Dirks

7    "act[ed] in concert with each and every Defendant" to threaten or commit violent acts against her

8    is insufficient to demonstrate that they engaged in any wrongful conduct.  *Ashcroft v. Iqbal*, 556

9    U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere

10   conclusory statements, do not suffice."); *see supra* at 2-4.  Nor does the fact that Dirks once

11   criticized Yiannopoulos have any relevance to Plaintiff's Bane Act claim; it does not demonstrate

12   that Dirks (or any other University official) ever threatened or committed violent acts against

13   Plaintiff.

14       Conclusory allegations of fact, just like conclusory allegations of law, are not "factual

15   content" supporting a plausible claim for relief.  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th

16   Cir. 2009) ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual

17   content,' and reasonable inferences from that content, must be plausibly suggestive of a claim

18   entitling the plaintiff to relief."); *see also Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135-36 (9th Cir.

19   2014) (allegations that defendant was the author of negative online reviews were insufficient

20   because they were not supported by facts; the only factual allegations in the complaint generally

21   alleged that *some* reviews on the website were authored by the defendant but "nothing connect[ed]

22   these general allegations to the specific, negative reviews complained of" by the plaintiffs);

23   *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998-99 (9th Cir. 2014)

24   (rejecting allegation that property at issue in the case had a certain value because allegation was

25   conclusory and not supported by facts and, in fact, was inconsistent with the facts that were

26   alleged); *Brown v. Contra Costa Cnty.*, No. C12-1923 PJH, 2013 WL 1091844, at *1 (N.D. Cal.

27   Mar. 14, 2013) (dismissing as insufficient allegation that "[d]efendants, acting in concert with one

28

1   another and under color of law, have denied [p]laintiff his full rights and equal benefits of the

2   law"). Plaintiff's Bane Act claim should be dismissed.

3       **D.**    **Plaintiff Fails to Plead Facts Sufficient to State a First Amendment Claim**

4       Plaintiff does not attempt to distinguish—or even address—the great weight of authority

5   holding that government actors are not liable for failure to protect individuals from interference by

6   third parties with their exercise of First Amendment rights. (Mot. at 11-13 (citing cases); Opp. at

7   7-8.) Even if Plaintiff had sufficiently pled personal participation and specific intent by

8   Napolitano or Dirks (which she has not), or qualified immunity did not apply (which it does),

9   Plaintiff has not and cannot state a First Amendment claim on the merits. The individual UC

10  Defendants had no duty under the Constitution to protect Plaintiff from interference by third

11  parties with her First Amendment rights. Plaintiff cannot save her claim with conclusory

12  allegations that the individual UC Defendants "shut[] down the Yiannopoulos event," because the

13  *only action* Plaintiff alleges the UC Defendants took was to withhold police protection. As the

14  individual UC Defendants had no duty to provide police protection in the first place, the alleged

15  withholding of such protection cannot state a cognizable constitutional claim.

16      **E.**    **Plaintiff Fails to Plead Facts Sufficient to State an Equal-Protection Claim**

17      Plaintiff's Opposition only highlights the complete absence of factual allegations to

18  support Plaintiff's equal-protection claim. (Opp. at 11.) Plaintiff fails to identify any facts—

19  alleged in the FAC or otherwise—showing that the individual UC Defendants provided *different*

20  police protection or enforced university anti-discrimination policies *differently* in any similar

21  circumstances involving individuals with either the same or different sexual orientations or

22  political viewpoints. The only allegation that Plaintiff makes is that UC Berkeley has "hosted

23  countless politically-charged rallies and protests in the past, and provided effective police presence

24  at said rallies and protests without incident." (FAC ¶ 88.) But that allegation says nothing about

25  whether those events involved over 1,500 violent protestors, whether UC Berkeley provided

26  *different* police presence, or whether liberal or heterosexual protestors or attendees were treated

27  differently than alleged here. And it certainly says nothing about whether liberal or heterosexual

28  protestors or attendees were treated differently *because* they were liberal or heterosexual.

1    Plaintiff asserts that the individual UC Defendants withheld police protection "because the

2    speaker and his supporters went against the political beliefs of the majority of UC Berkeley's

3    students and its administration," (Opp. at 8), but this conclusory allegation is plainly insufficient.

4    *See, e.g., Yassin v. Corr. Corp. of Am.*, No. 11cv0421 LAB (JMA), 2011 WL 4501403, at *6 (S.D.

5    Cal. Sept. 27, 2011) ("[C]onclusory allegations of discrimination are insufficient to withstand a

6    motion to dismiss, unless they are supported by facts that may prove invidious discriminatory

7    intent or purpose."); (Mot. at 13-15).   Plaintiff's failure to allege any facts demonstrating that

8    there are other similarly situated groups and that the individual UC Defendants treated those

9    similarly situated groups differently is fatal to her Equal Protection claim.  *See, e.g., Herguan*

10   *Univ. v. Immigration & Customs Enf't*, 258 F. Supp. 3d 1050,  1072 (N.D. Cal. 2017) (dismissing

11   a Chinese-owned university's Equal Protection claim with prejudice because the plaintiff failed to

12   "allege that any non-Chinese-owned universities were similarly situated to Plaintiff or were treated

13   differently").  Because Plaintiff has failed to "set forth non-conclusory allegations of

14   discrimination supported by reference to particular acts, practices, or policies demonstrating that

15   [she] has been treated differently from others with whom [she] is similarly situated and that such

16   unequal treatment was the result of intentional or purposeful discrimination," her Equal Protection

17   claim should be dismissed.  *Switzer v. Weaver*, No. 5:12cv00057, 2012 WL 6964863, at *6 (W.D.

18   Va. Nov. 5, 2012), *aff'd*, 521 F. App'x 208 (4th Cir. 2013); *see also Icon Groupe, LLC v. Wash.*

19   *Cnty.*, 948 F. Supp. 2d 1202, 1207 (D. Or. 2013) ("[T]o state a claim under the Equal Protection

20   Clause, a plaintiff must establish that he [or she] was treated differently from other similarly

21   situated individuals with respect to a governmental act, statute, or regulation.").

22        **F.    Plaintiff Fails to State a Claim for Punitive Damages**

23    Plaintiff fails to respond to controlling case law holding that punitive damages are

24   unavailable against The Regents (and, by extension, UCPD) under either section 1983 or state law.

25   (Mot. at 18-19).  The Court should dismiss Plaintiff's punitive damages claim against The Regents

26   and UCPD with prejudice.

27        Nor does Plaintiff allege any facts sufficient to show the requisite malice or evil intent to

28   support such a claim against Napolitano and Dirks in their individual capacities.  Plaintiff fails to

1  allege that the individual UC Defendants' conduct was "motivated by evil motive or intent, or . . .

2  involves reckless or callous indifference to the federally protected rights of [Plaintiff]" as required

3  to support a claim for punitive damages under section 1983. *Smith v. Wade*, 461 U.S. 30, 56

4  (1983); Cal. Civ. Code § 3294.  Even if Plaintiff could state a substantive claim against the

5  individual UC Defendants (which she cannot), Plaintiff makes nothing more than the same

6  conclusory allegations about the individual UC Defendants' conduct and motivations.   (Opp. at

7  11.)  Plaintiff's punitive damages claim should be dismissed with prejudice.

8  > ### G.   **Plaintiff's Claims Should Be Dismissed with Prejudice**

9  The Court should dismiss all of Plaintiff's claims with prejudice.  Plaintiff does not and

10  cannot dispute that she has had notice of each of the asserted grounds for dismissal since UC filed

11  its motion to dismiss in *Robles I* on July 18, 2017.  Plaintiff's continued failure to add any factual

12  content to the FAC that would support plausible inferences in her favor demonstrates that

13  amendment has been and will continue to be futile.   The Court should therefore dismiss Plaintiff's

14  claims with prejudice.  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir.

15  2010).

16  **III.   CONCLUSION**

17  For the reasons set forth above, and because Plaintiff has already had not just one, but two

18  opportunities to cure the deficiencies in her pleadings based on the prior motions to dismiss in

19  *Robles I* and in the instant action, all of Plaintiff's claims against the UC Defendants should be

20  dismissed with prejudice.

21  DATED:  August 20, 2018                     MUNGER, TOLLES & OLSON LLP

22                                                                        BRADLEY S. PHILLIPS
                                                                          BRYAN H. HECKENLIVELY

23                                                                        ELIZABETH A. KIM

24

25                                                       By:        */s/ Bryan H. Heckenlively*

26                                                                 BRYAN H. HECKENLIVELY
                                                          Attorneys for The Regents of the University of

27                                                        California, Janet Napolitano, and Nicholas Dirks

28