1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KIARA ROBLES,

        Plaintiff,

    v.

IN THE NAME OF HUMANITY, WE
REFUSE TO ACCEPT A FASCIST
AMERICA, et al.,

        Defendants.

Case No. 17-cv-04864-CW

ORDER ON MOTIONS TO DISMISS
FIRST AMENDED COMPLAINT

(Dkt. Nos. 60, 61, 62)

On July 9, 2018, Defendants Janet Napolitano, Nicholas
Dirks, and The Regents of the University of California (the
Regents)[1] (collectively, the Regents Defendants) brought a motion
to dismiss the First Amended Complaint (FAC).  On the same day,
Defendant the City of Berkeley (Berkeley) brought its own motion
to dismiss the FAC.  On July 16, 2018, Defendant Raha Mirabdal
also brought a motion to dismiss the FAC.  Plaintiff Kiara Robles

_____

[1] The Regents responds to the FAC on behalf of the University
of California Police Department (UCPD).  The Regents' position is
that the UCPD is not a separate legal entity from the Regents.

opposes all three motions.  The Court found these motions to dismiss suitable for disposition on the papers.  Having reviewed the papers and the record, the Court GRANTS the Regents Defendants' motion to dismiss, GRANTS Berkeley's motion to dismiss, and GRANTS in part Mirabdal's motion to dismiss.

BACKGROUND

I.  Factual Background

Unless otherwise noted, the factual background is taken from the FAC, which is assumed to be true for purposes of Defendants' motions to dismiss.  Docket No. 58 (FAC).

Robles is a resident of Oakland, California.  Id. at 3.  On February 1, 2017, she planned to attend a speech by Milo Yiannopoulos, a conservative gay media personality and political commentator, which was hosted at the University of California Berkeley (UC Berkeley) by a registered student organization.  Id. Robles and others arrived at UC Berkeley's Sproul Plaza to hear Yiannopoulos speak.  Id.

Around 1,500 protestors associated with Defendant In the Name of Humanity, We Refuse to Accept a Fascist America (hereinafter ANTIFA) also gathered at Sproul Plaza.  Id. According to Robles, ANTIFA is "a radical American, left wing, anti-Trump, non-profit organization that organizes demonstrations to achieve its political agenda."  Id. at 4.  ANTIFA protestors soon "erupted into violence."  Id. at 3.  ANTIFA orchestrated the violence in order to disrupt the Yiannopoulos event.  Id. ¶ 51. While Robles was being interviewed by news station KGO-TV about her thoughts related to the event, protestors surrounded her "combatively" and yelled that she was a "fascist."  Id. ¶ 52.

United States District Court
Northern District of California

United States District Court
Northern District of California

At the time of the attack, there were "no campus police" present near Robles. Id. at 3, ¶ 56. Robles alleges that "nearly 100 campus police and SWAT members waited in the Student Union building, within eyesight of the violence happening outside, watching the protestors become more belligerent and dangerous." Id. at 3-4 (emphasis omitted). Robles alleges that officers from UCPD and the City of Berkeley Police Department (BPD) could see the attacks, yet they did not act to protect any of the victims. Id. at 10-11, ¶ 58. Robles claims that the Regents Defendants, "acting in furtherance of their own political and other beliefs, intentionally withheld the police support of UCPD and BPD . . . from pro-President Trump/pro-Milo Yiannopoulos attendees at an event which it knew could likely become hostile and violent, because these . . . attendees represented political beliefs that went against their own radical, leftist belief." Id. ¶ 75.

Soon after, Robles and others were again attacked by protestors. Ian Dabney Miller, an ANTIFA protestor, "struck" Robles "in the face and body with flagpoles" until she "was forced to escape by jumping over a metal barrier." Id. ¶ 59. Mirabdal, another ANTIFA protestor, and several unknown assailants "surrounded" her "combatively," and Mirabdal "shined a flashlight aggressively" in Robles' face, "blinding" her and "placing her in fear and apprehension of harm." Id. ¶ 69. Robles claims that Mirabdal was shining flashlights in the eyes of Yiannopoulos supporters "to incapacitate them" so others could physically assault them. Id. ¶ 70. Robles was attacked by other masked and unmasked assailants with pepper spray and bear mace.

3

1   Id. at 3, ¶ 53.  Mirabdal claims that, as a result of the pepper

2   spray, bear mace, and bright light being directed at her by

3   various ANTIFA members, she "suffered significant trauma and

4   injury to her eyes."  Id. ¶ 73.  As a result of being beaten by

5   flagpoles, she "suffered significant injuries to her body."  Id.

6   ¶ 74.  Again, neither the UCPD or BPD assisted Robles or

7   apprehended her attackers.  Id. ¶ 66.

8   II.  Procedural Background

9       On June 5, 2017, Robles filed a related suit, Robles I,

10  against the Regents, UCPD, BPD, ANTIFA, Miller, Napolitano,

11  Dirks, and several other defendants.  Robles v. Regents et al.

12  (Robles I), Case No. 17-3235, Docket No. 1.  Id.  In her Robles I

13  complaint, she asserted claims for: (1) violation of First

14  Amendment rights under 42 U.S.C. § 1983; (2) violation of Equal

15  Protection rights under 42 U.S.C. § 1983; (3) negligence;

16  (4) gross negligence; (5) premises liability; (6) negligent

17  infliction of emotional distress; (7) intentional infliction of

18  emotional distress; (8) assault; (9) battery; and (10) violation

19  of the Bane Act, California Civil Code section 52.1.  Id.  In

20  July 2017, several defendants moved to dismiss the complaint.

21  Id., Docket Nos. 46, 51, 52.  Before the motions could be

22  decided, Robles requested that the undersigned voluntarily recuse

23  from the case.  Id., Docket No. 50.  The Court denied this

24  request on July 25, 2017.  Id., Docket No. 56.  On that same day,

25  Robles voluntarily dismissed the case.  Id., Docket No. 57.

26      Less than a month later, on August 22, 2017, Robles filed

27  the instant suit, Robles II, against the Regents, Berkeley, UCPD,

28  ANTIFA, Miller, and Mirabdal.  Docket No. 1.  Robles II involves

4

United States District Court
Northern District of California

the same set of facts as <u>Robles I</u> and nearly the same set of asserted claims, adding only one additional claim for a violation of the Ralph Act, California Civil Code section 51.7.  <u>Id.</u> Berkeley filed a motion to relate the two cases, which the Court granted.  <u>Robles I</u>, Case No. 17-3235, Docket Nos. 58, 59. Berkeley, the Regents, and Mirabdal all moved to dismiss or strike the complaint.  Docket Nos. 11, 16, 43.  On June 4, 2018, the Court granted the Regents and Berkeley's respective motions to dismiss and granted in part Mirabdal's motion to dismiss. Docket No. 51.  The Court gave Robles leave to file an amended complaint within twenty-one days.  <u>Id.</u>  Robles did so on June 25, 2018.  FAC.  The present motions followed.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. <u>Twombly</u>, 550 U.S. at 555.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and

5

United States District Court
Northern District of California

construe them in the light most favorable to the plaintiff. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1061 (9th Cir. 2008).  The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and facts of which the court may take judicial notice. Id. at 1061.  However, the court need not accept legal conclusions, including threadbare "recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile.  Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).  "Leave to amend may [] be denied for repeated failure[s] to cure deficiencies by previous amendment." Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

DISCUSSION

I.   The Regents Defendants' Motion to Dismiss

Robles asserts six claims against the Regents Defendants: (1) violation of her First Amendment rights based on their alleged withholding of police protection, (2) violation of equal protection based on her gender and sexual orientation,

6

(3) negligence, (4) gross negligence, (5) intentional infliction of emotional distress, and (6) violation of California's Bane Act, California Civil Code section 52.1.  The Regents Defendants contend that all these claims should be dismissed.

A.  Claims against UCPD

In its June 4, 2018 Order, the Court held that the Eleventh Amendment bars all of Robles' claims against the Regents, which are dismissed from the case.  See Order at 7-10; see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 68 (1989); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 (1984). The Court held that the "Regents, a corporation created by the California constitution, is an arm of the state for Eleventh Amendment purposes, and therefore is not a 'person' within the meaning of section 1983."  Id. at 7 (quoting Armstrong v. Meyers, 964 F.2d 948, 949-50 (9th Cir. 1992)).  The Court further held that the Regents was immune against state law claims brought into federal court under pendent jurisdiction.  Pennhurst State Sch. & Hosp., 465 U.S. at 121.  The UCPD, which is part of the Regents and not a distinct legal entity, is also an arm of the state for Eleventh Amendment purposes.  Thus, Robles' § 1983 and state law claims against the UCPD also cannot be sustained.

In Robles' opposition, she asks to dismiss without prejudice the claims against UCPD from her FAC.  Opp. at 1 n.1.  Because this is the second time that Robles attempted to sue UCPD on nearly identical grounds, Robles' claims against UCPD are dismissed with prejudice and without leave to amend.  See Fed. R. Civ. P. 41(a)(1)(B); see also Robles I, Case No. 17-3235, Docket No. 1.

United States District Court
Northern District of California

B.   Claims against Individual Defendants

The Court did grant Robles leave to amend to attempt to avoid Eleventh Amendment immunity by alleging her claims against individual actors in their personal capacities.  Robles now names Napolitano, the President of the University of California, and Dirks, the Chancellor of UC Berkeley (the Individual Defendants) instead of the Regents.  FAC ¶¶ 5-6.

The Individual Defendants move to dismiss Robles' claims against them, arguing that Robles does not allege any actions or decisions made by the Individual Defendants in their personal capacities.  "To determine whether the defendants are sued in their personal capacities, the court must examine the specifics of the conduct involved and not merely look at the caption of the complaint." Peralta v. California Franchise Tax Bd., 124 F. Supp. 3d 993, 1001 (N.D. Cal. 2015).  The "complaint must set forth allegations from which the court can infer that the individuals acted in their individual capacities." Id.

Robles points to her allegations that, even though it was reasonably foreseeable that violence would erupt at the Yiannopoulos event, the Individual Defendants ordered the withholding of police protection.  FAC ¶ 16.  According to Robles, the Individual Defendants did so because "Yiannopoulos' conservative viewpoint conflicts with the radical, leftist viewpoint shared by the Regents and the majority of the UC Berkeley student body and administration." Id. ¶ 45.  In other words, the Individual Defendants acted pursuant to their own political beliefs.  In support, Robles points to one instance when Dirks called Yiannopoulos "a troll and provocateur who uses

odious behavior in part to 'entertain,' but also to deflect any serious engagement with ideas," id. ¶ 76, and another instance where the Individual Defendants allegedly "offered Ann Coulter a speaking time on May 2, during Dead Week, where there are no classes and students are studying for final exams," id. ¶¶ 77-80.

1.    Section 1983 – First Amendment claim

Robles' allegations do not amount to a claim for violation of the First Amendment pursuant to § 1983.  Robles' theory of liability is essentially that the Individual Defendants' "refusal to adequately secure and monitor a known hostile campus environment" allowed third parties to interfere with her First Amendment rights of freedom of speech and freedom of assembly. Id. ¶ 99.

To state a claim for infringement of free speech, "a plaintiff must allege facts showing that by his actions the defendant deterred or chilled the plaintiff's speech and such deterrence was a substantial motivating factor in the defendant's conduct."  Mandel v. Bd. of Trustees of California State Univ., No. 17-CV-03511, 2018 WL 1242067, at *10 (N.D. Cal. Mar. 9, 2018) (quoting Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283, 1300 (9th Cir. 1999)) (internal punctuation marks omitted).  To state a claim for infringement of free assembly, "a plaintiff must show that the defendant imposed a serious burden upon, or affected in a significant way, or substantially restrained the plaintiff's ability to associate."  Id. (quoting San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1033 (9th Cir. 2004)) (internal punctuation marks omitted).  Robles alleges no affirmative acts by the Individual Defendants that deterred

her speech or imposed a serious burden upon her ability to associate.  Instead, her allegation is that they stood idly by as third parties interfered with her rights.  But the First Amendment does not require the Individual Defendants to protect Robles against the actions of others.  See Haitian Refugee Ctr., Inc. v. Baker, 953 F.2d 1498, 1513 (11th Cir. 1992) (holding that "associational freedom in no way implies a right to compel the Government to provide access to those with whom one wishes to associate); see also DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989) (the Due Process Clause "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.").

2.   Section 1983 – Fourteenth Amendment claim

The same is true of Robles' claim for equal protection.  The plaintiff must allege "that the defendant acted in a discriminatory manner and that the discrimination was intentional." Fed. Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991).  Robles alleges that the Individual Defendants discriminated against her on the basis of sexual orientation and gender because she is a gay woman.  FAC ¶¶ 94-96. But Robles has not pled any facts showing that it is plausible that the Individual Defendants knew that she was a gay woman and intentionally discriminated against her on this basis.  Thus, this claim must be dismissed.

United States District Court
Northern District of California

3.    State-law tort claims

The Individual Defendants assert that Robles' state-law tort claims (negligence, gross negligence, and intentional infliction of emotional distress) are barred under California Government Code.

California Government Code section 815(a) provides: "Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." It is well-settled that this section "abolishes common law tort liability for public entities," including the Regents. Miklosy v. Regents of Univ. of California, 44 Cal. 4th 876, 899 (2008). This statutory immunity to common-law tort claims extends to the employees of public entities under certain circumstances. California Government Code section 820.2 states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Thus, the Court must determine whether the acts in question are discretionary acts covered by the statute. "Generally speaking, a discretionary act is one which requires the exercise of judgment or choice." Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist., 964 F. Supp. 1369, 1389 (N.D. Cal. 1997) (distinguishing between discretionary and ministerial acts).

Here, the state-law tort claims are based on the allegation that the Individual Defendants withheld effective police

11

protection from Robles.  FAC ¶¶ 105, 111, 116.  The decision of
how to manage safety on campus is a discretionary act.  See
Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch.
Dist., 964 F. Supp. at 1389 (maintenance of safety of the
educational environment "necessarily" required "the exercise of
judgment or choice," and so claims for negligence and intentional
infliction of emotional distress were barred).  Robles does not
contest this, arguing only that this argument is "erroneously"
asserted and, to the "extent that Cal. Gov't Code § 815(a)
applies, it is clearly limited solely to Plaintiff's tort
claims."  Accordingly, Robles' state-law tort claims against the
Individual Defendants are barred.

> 4.   Bane Act claim

The Individual Defendants contend that Robles' Bane Act
claim must also fail.

The Bane Act authorizes a civil action for damages,
injunctive relief, and other appropriate equitable relief against
a person who "interferes by threat, intimidation, or coercion, or
attempts to interfere by threat, intimidation, or coercion, with
the exercise or enjoyment by any individual or individuals of
rights secured by the Constitution or laws of the United States,
or of the rights secured by the Constitution or laws of this
state."  Cal. Civ. Code § 52.1(a) and (b).

Robles' Bane Act claim against the Individual Defendants
rests on the same allegations and theory of liability as her
§ 1983 claims.  Specifically, Robles asserts that the Individual
Defendants violated her First and Fourteenth Amendment rights by
withholding police protection because of their own political

United States District Court
Northern District of California

beliefs.  For the same reasons stated above with respect to the
§ 1983 claims, Robles' Bane Act claim fails as well.  Because the
FAC fails to state a claim for First and Fourteenth Amendment
violations, it also does not state a claim for a violation of the
Bane Act on the same basis.

II.  Berkeley's Motion to Dismiss

Robles asserts the following causes of action against
Berkeley: (1) 42 U.S.C. § 1983 claim alleging violation of her
First Amendment right to freedom of speech and assembly, (2) 42
U.S.C. § 1983 claim alleging violation of the equal protection
clause for discrimination based on sexual orientation,
(5) intentional infliction of emotional distress, and
(6) violation of the Bane Act, California Civil Code § 52.1.
Berkeley moves to dismiss these claims based on the following
grounds.  With respect to the first and second claims, the § 1983
claims, Berkeley contends that Robles fails to state a claim with
respect to Monell liability and the underlying constitutional
violations.  With respect to the fifth and eighth claims, the
state law claims, Berkeley contends that Robles failed to exhaust
administrative remedies.

The Court previously dismissed these claims on similar
grounds.  The Court dismissed the § 1983 claims for failure to
state a claim for Monell liability.  June 4, 2018 Order at 10-11.
The Court did, however, grant Robles leave to amend these claims
to attempt to state a claim for Monell liability.  Id. at 12.
The Court also dismissed her state law claims for failure to
exhaust administrative remedies.  Id. at 11-12.  The Court noted
that Robles had already conceded that she did not present her

claims to the city pursuant to the California Tort Claims Act, and so amendment would appear to be futile. Id. The Court then stated that it would not grant leave to amend these claims, but Robles could seek leave to amend if she could allege "new facts showing compliance with the California Tort Claims Act." Id. at 13, see also n.2.

Robles did not seek leave to amend her state law claims. In her opposition, she confirms that those claims should be dismissed. Opp. at 2. Again, because this is the second time that Robles attempted to sue Berkeley on nearly identical grounds, Robles' claims against Berkeley are dismissed with prejudice and without leave to amend. See Fed. R. Civ. P. 41(a)(1)(B); see also Robles I, Case No. 17-3235, Docket No. 1.

A.    Monell liability

Berkeley again moves to dismiss Robles' § 1983 claims for failure to state a claim.

It is well-established that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). A municipality only faces liability under § 1983 when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. While the Ninth Circuit previously allowed "plaintiffs in civil rights actions against local government to set forth no more than a bare allegation that government officials' conduct conformed to some unidentified government policy or custom," now, Iqbal and Twombly's heightened pleading

14

United States District Court
Northern District of California

standards apply to <u>Monell</u> claims.   <u>AE ex rel. Hernandez v. Cty.</u>
<u>of Tulare</u>, 666 F.3d 631, 637 (9th Cir. 2012).  This means that
"the factual allegations that are taken as true must plausibly
suggest an entitlement to relief, such that it is not unfair to
require the opposing party to be subjected to the expense of
discovery and continued litigation."  <u>Id.</u> (citation omitted).

Robles' FAC alleges that Berkeley failed to provide police
protection to Robles "pursuant to its policy and custom of
selectively providing police support and withholding police
support to conservative events, rallies, and protests."  FAC
¶ 82.  In support, Robles alleges that in August 2017, Berkeley
provided "500 officers" for a protest against President Trump.
<u>Id.</u> ¶ 83.  Robles contrasts this with the Yiannopoulos event, a
conservative event for which Berkeley did not provide adequate
police presence.  Opp. at 5.[2]

Robles has not stated sufficient factual allegations to
plausibly suggest an entitlement to relief.  There are simply not
enough factual allegations to show that it is plausible that
Berkeley has an official policy or custom of "selectively
providing police support and withholding police support to
conservative events, rallies, and protests."  Robles' description
of the policy itself is vague: she does not allege what
"conservative" means, nor does she allege how Berkeley determines
an event is "conservative."  <u>See</u> <u>Bagley v. City of Sunnyvale</u>, No.

---

[2] Robles also adds allegations that were not in the FAC, but
appear to be from an article that she referenced in a footnote in
the FAC.  Because the FAC does not include these facts, or even
incorporate the facts of the article by reference, the Court does
not consider these facts.

United States District Court
Northern District of California

16-CV-02250-LHK, 2017 WL 344998, at *16 (N.D. Cal. Jan. 24, 2017)
(a court in this district found that plaintiff's allegation that
the city of Sunnyvale has a policy to "use or tolerate the use of
excessive and/or unjustified force" was too vague to sufficiently
allege a policy under A.E.").

Indeed, Robles' only allegation in support of her conclusory
claim is an incident where Berkeley provided 500 officers for a
protest against President Trump.  Robles states nothing about how
many Berkeley officers were present at the Yiannopoulos event.
She also states nothing about whether the police officers at the
protest against President Trump faced violence by third parties
and whether police did anything to intervene.  This is
insufficient to state a claim for Monell liability.  As the Ninth
Circuit has previously stated, "Liability for improper custom may
not be predicated on isolated or sporadic incidents; it must be
founded upon practices of sufficient duration, frequency and
consistency that the conduct has become a traditional method of
carrying out policy."  Trevino v. Gates, 99 F.3d 911, 918 (9th
Cir. 1996).  Although a plaintiff does not have to allege more
than one constitutional violation if her claim is based on
improper custom rather than improper policy, even then, the
plaintiff must allege the violation "was caused by an existing,
unconstitutional municipal policy, which policy can be attributed
to a municipal policymaker."  La v. San Mateo Cty. Transit Dist.,
No. 14-CV-01768-WHO, 2014 WL 4632224, at *8 (N.D. Cal. Sept. 16,
2014) (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808,
823-24 (1985)).

B.   Failure to state a claim

Berkeley also argues that Robles' § 1983 causes of action for violations of the First and Fourteenth Amendments fail to state a claim for the underlying constitutional violations.

For the same reasons stated above with respect to Robles' First Amendment claim against the Individual Defendants, Robles' First Amendment claim against Berkeley also fails.  Robles alleges conclusorily that Berkeley, "with each and every named Defendant, jointly and severally, worked in concert to deny numerous individuals who attended the Milo Yiannopolous event, including Plaintiff Robles, their constitutional right of freedom of speech and freedom of assembly . . ."  FAC ¶ 15.  The FAC also alleges that Berkeley withheld aid to attendees of the event.  Id. ¶¶ 28, 58.  The FAC's allegations with respect to Berkeley are merely conclusory and must be dismissed.  Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").  Moreover, Robles does not allege any facts showing that Berkeley took any affirmative acts to burden or infringe upon Robles' First Amendment rights.  As stated previously, the First Amendment does not require Berkeley to protect Robles against the actions of others.

Robles' claim for equal protection violation also fails.  The plaintiff must allege "that the defendant acted in a discriminatory manner and that the discrimination was intentional."  Fed. Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991).  Robles asserts the same bare allegations against Berkeley as she did against the Individual

Defendants: that they discriminated against her on the basis of sexual orientation and gender because she is a gay woman.  FAC ¶¶ 94-96.  Because Robles has not pled any facts showing that it is plausible that Berkeley knew that she was a gay woman and intentionally discriminated against her on this basis, this claim must be dismissed.

III. Mirabdal's Motion to Dismiss or Strike

    A.   Motion to Dismiss

    Mirabdal again asserts that the complaint fails sufficiently to plead the assault and battery claims, which were previously dismissed with leave to amend.  She renews her motion to dismiss the Bane Act claims asserted, which the Court previously denied.

    Previously, Robles essentially alleged that Mirabdal "surrounded" her "combatively" and "shined a flashlight aggressively" in her face, "blinding" her and "placing her in fear and apprehension of harm."  Now, Robles has added allegations that "Mirabdal was shining flashlights in Yiannopoulos supporters' eyes in order to incapacitate them, so that her fellow ANTIFA members . . . could physically assault Yiannopoulos supporters, including Plaintiff Robles."  Id. ¶ 70. Mirabdal also stated that, as a "result of the pepper spray, bear mace, and bright light being directed at her" by various ANTIFA members, she "suffered significant trauma and injury to her eyes."  Id. ¶ 73.

        1.   Battery

    In California, the elements of battery are: "(1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent

to the touching; (3) plaintiff was harmed or offended by
defendant's conduct; and (4) a reasonable person in plaintiff's
position would have been offended by the touching." Lawrence v.
City & Cty. of San Francisco, 258 F. Supp. 3d 977, 998 (N.D. Cal.
2017) (quoting So v. Shin, 212 Cal. App. 4th 652, 669 (2013)).
Citing Adams v. Virginia, 33 Va. App. 463, 469-70 (2000), the
Court previously noted:

> [B]ecause the contact here was effected by an
> intangible substance, light, the Court will closely
> scrutinize whether the substance "made objectively
> offensive or forcible contact with the victim's person
> resulting in some manifestation of a physical
> consequence or corporeal hurt," which goes to the third
> and fourth elements of battery.  It is conceivable that
> an intangible substance could cause "some manifestation
> of physical consequence or corporeal hurt"; for
> example, a high-intensity laser directed at a person's
> eye could cause lasting physical harm to the eye.
> Where an intangible substance causes no physical harm,
> however, it is unlikely to be offensive in a reasonably
> objective way.

June 4, 2018 Order at 16.

Previously, Robles alleged that Mirabdal shined a flashlight
beam at her, "blinding" her.  Id.  The Court noted that if Robles
could truthfully allege that she was "blinded" such that she
suffered serious, permanent physical eye injury, she could
satisfy the third and fourth elements of battery.  Id.  Because
the allegation of "blinding" appeared to be figurative rather
than literal, the Court held that the requirements for battery
were not satisfied.  Id.

Robles' amended allegations fare no better.  She does not
allege that the light directed by Mirabdal itself caused her
harm.  She alleges only that the combination of the pepper spray,
bear mace, and bright light harmed her eyes.  But assailants

19

other than Mirabdal inflicted the pepper spray and bear mace.
FAC ¶ 53.  Robles' allegations that Mirabdal was motivated to
shine "flashlights in Yiannopoulos supporters' eyes in order to
incapacitate them" also does not show that Mirabdal inflicted
harm on Robles.  It is not clear whether Robles alleges, or can
allege, that Mirabdal's shining of her flashlight at Robles led
directly to other individuals causing her physical harm.  Even if
this were true, in the context of battery, the harm must be "by
defendant's conduct."  <u>Lawrence</u>, 258 F. Supp. 3d at 998.
Accordingly, Robles has not alleged that Mirabdal's conduct
either harmed or offended her such that a reasonable person in
her position would have been offended.

> 2.   Assault

In California, a claim for assault requires a plaintiff to
show: "(1) defendant acted with intent to cause harmful or
offensive contact, or threatened to touch plaintiff in a harmful
or offensive manner; (2) plaintiff reasonably believed she was
about to be touched in a harmful or offensive manner or it
reasonably appeared to plaintiff that defendant was about to
carry out the threat; (3) plaintiff did not consent to
defendant's conduct; (4) plaintiff was harmed; and
(5) defendant's conduct was a substantial factor in causing
plaintiff's harm."  <u>Id.</u> (quoting <u>So</u>, 212 Cal. App. 4th at 668–
69).

Mirabdal contends that the FAC still does not allege the
elements of assault.  Indeed, the FAC does not allege that
Mirabdal acted with intent to cause harmful or offensive contact.
As stated previously, Robles' allegation that Mirabdal was

motivated to shine the flashlight at Yiannopoulos supporters to incapacitate them so others could attack them is vague and not necessarily relevant to Mirabdal's conduct towards Robles.  In any event, this allegation does not show that Mirabdal herself intended to cause harmful or offensive contact; at best, it shows that Mirabdal intended to help others to cause harmful or offensive contact.  See Plotnik v. Meihaus, 208 Cal. App. 4th 1590, 1603-04 (2012) (describing assault as a "demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present").  Thus, this claim must be dismissed.

        3.  Bane Act

As noted above, the Bane Act authorizes a civil action for damages, injunctive relief, and other appropriate equitable relief against a person when there is "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion. Allen v. City of Sacramento, 234 Cal. App. 4th 41, 66 (2015); see also Cal. Civ. Code § 52.1(a) and (b).  The Bane Act "was intended to address only egregious interferences with constitutional rights, not just any tort." Shoyoye v. Cty. of Los Angeles, 203 Cal. App. 4th 947, 959 (2012).  "The act of interference with a constitutional right must itself be deliberate or spiteful." Id.

Robles alleges that Mirabdal's acts of surrounding her, preventing her escape, and shining a flashlight at her interfered with her right to assemble peacefully.  The Court previously

rejected Mirabdal's argument that these allegations are not serious enough to constitute "threat, intimidation, or coercion" sufficient under the Bane Act.  June 4, 2018 Order at 19. Mirabdal now argues that these allegations are "purely conclusory" and insufficient under Iqbal and Twombly.

Robles has not sufficiently alleged that Mirabdal engaged in "a volitional act intended to interfere with the exercise or enjoyment of the constitutional right," as opposed to merely tortious activity.  Shoyoye, 203 Cal. App. 4th at 957-58.  Robles does not allege specific facts demonstrating Mirabdal's intent to prevent Robles from exercising her First Amendment right of free association.  Robles argues that she alleged that Mirabdal, as a member of ANTIFA, fomented a riot "as part of a conspiracy to violently shut down the Yiannopolous event."  FAC 21-22.  But this allegation is conclusory and not supported by factual content.  Robles does not explain why Mirabdal is likely to be a member of ANTIFA, stating this fact only on "information and belief."  She also does not allege facts showing that Mirabdal acted in concert with other members of ANTIFA.

IV.  Leave to Amend

Because the Court already gave Robles a chance to amend all of her claims except the Bane Act claim against Mirabdal, all claims except the Bane Act claim against Mirabdal are dismissed with prejudice and without leave to amend.  Abagninin, 545 F.3d at 742.

V.  Other Defendants

ANTIFA has not filed an answer or motion to dismiss.  In its June 4, 2018 Order, the Court ordered Robles to file proof of

United States District Court
Northern District of California

United States District Court
Northern District of California

1  service for ANTIFA within fourteen days.  Because Robles has not

2  done so, her claims against ANTIFA are DISMISSED with prejudice.[3]

3                              CONCLUSION

4        The Court GRANTS the Regents' motion to dismiss (Docket No.

5  61) with prejudice and without leave to amend.  The Court GRANTS

6  Berkeley's motion to dismiss (Docket No. 60) with prejudice and

7  without leave to amend.  The Court GRANTS Mirabdal's motion to

8  dismiss (Docket No. 62) with respect to the assault and battery

9  claims without leave to amend.  With respect to the Bane Act

10 claim against Mirabdal, Plaintiff shall have twenty-one days to

11 file her Second Amended Complaint if she elects to amend her Bane

12 Act claim against Mirabdal.

13       IT IS SO ORDERED.

14

15 Dated: September 14, 2018         _____

16                                   CLAUDIA WILKEN
                                     United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

[3] The Court also ordered Robles to file proof of service on UCPD within fourteen days.  Robles also failed to comply with this order and provided no explanation for her failure to do so. Robles' noncompliance provides another ground for dismissing the claims against UCPD.

23